# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

JANE DOE, a pseudonym,

     *Plaintiff,*

   v.

BAKER COUNTY
BAKER COUNTY CORRECTIONS
MANAGEMENT CORPORATION,
SHARON PADGETT, CHAIRMAN
SCOTTY RHODEN , SHERIFF,
RANDY CREWS, UNDERSHERIFF,
EVELYN BLUE, CAPTAIN,
JAMES MESSER, LIEUTENANT,
PEYTON PRESCOTT, SHERIFF'S
DEPUTY,
BRIAN LOUIS ROBINSON,
ASSAILANT ROES 1-X,
CARDELL C. SMITH, and
UNITED STATES.

     *Defendants.*

Jury Trial Demanded

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Jane Doe,[1] by and through her undersigned counsel, hereby files this Complaint for damages and Demand for Jury Trial against Defendants Baker County, Baker County Corrections Management Corporation ("BCMCC"), Chairman Sharon Padgett ("Padgett"), Sheriff Scotty Rhoden ("Rhoden"), Undersheriff Randy Crews ("Crews"), Captain Evelyn Blue ("Blue"), Lieutenant James Messer ("Messer"), Sheriff's Deputy Peyton Prescott ("Prescott"), Brian Louis Robinson ("Robinson"), Assailant Roes 1-X, Cardell C. Smith ("Smith"), the United States of America, the Department of Homeland Security, U.S. Immigration and Customs Enforcement (collectively "Defendants" and each a "Defendant").

---

[1] Plaintiff Jane Doe will file a separate Application to Proceed Under a Pseudonym on or before May 22, 2023.

1.      This matter stems from the forcible rape, sexual assault, battery, and commercial sex trafficking of Plaintiff Jane Doe, while she was in the custody and control of the U.S. Immigration and Customs Enforcement agency ("ICE") at Baker County Detention Center ("BCDC"), which is located at 1 Sheriff's Office Drive, Macclenny, FL 32063. Defendants' conduct and the systemic dysfunction at BCDC were the direct cause of these of these heinous acts, which resulted in the violation of Plaintiff's constitutional rights and severe and permanent injuries.

## PARTIES

2.      Plaintiff is a resident of the State of Florida. At the time of the events alleged herein, Plaintiff was a detainee incarcerated at BCDC.

3.      Defendant Baker County is a political subdivision of the State of Florida located within the Middle District of Florida. At all relevant times, Baker County, by and through the Baker County Sheriff's Office ("BCSO"), acting pursuant to Florida law and a Memorandum of Agreement ("MOA") between the BSCO and BCCMC, contracted directly with and received federal funds from ICE for the housing of federal detainees at Baker County Detention Center ("BCDC"), a detention facility for individuals held in both criminal and immigration detention. Baker County is a "person" for purposes of 42 U.S.C. 1983.

4.      Defendant BCCMC is a Florida nonprofit corporation headquartered in Baker County, Florida. The BCCMC board is appointed by the Baker County Board of County Commissioners. BCCMC owns BCDC and is responsible for the facility's operations and management.

5.      At all times material to this Complaint, Defendant Padgett was the Chairman of BCCMC and was responsible for supervising Sheriff Deputy's at BCDC, as required by the MOA. Plaintiff is suing Defendant Padgett in her official and individual capacities.

6.      At all times material to this Complaint, Defendant Rhoden was the Sheriff of BCSO, a law enforcement agency for Baker County, Florida. Defendant Rhoden is the chief law enforcement official in Baker County. Under Florida law, Defendant Baker County has also designated Defendant Rhoden the chief custodian of BCDC. Plaintiff is suing Defendant Rhoden in his official and individual capacities.

7.      At all times material to this Complaint, Defendant Crews was the Undersheriff of Baker County. His responsibilities included providing administrative and management assistance to the Sheriff, establishing, coordinating, and implementing departmental policies and procedures, negotiating and interfacing with ICE officials, and ensuring compliance with federal, state, and local laws. Plaintiff is suing Defendant Crews in his official and individual capacities.

8.      At all times material to this Complaint, Defendant Blue was the Captain of the Corrections Division of the BCSO. Defendant Blue was responsible for day-to-day operations, personnel, facilities, and programs within the BCDC. Plaintiff is suing Defendant Blue in her official and individual capacities.

9.      At all times material to this Complaint, Defendant Messer was a Lieutenant of the BCSO. Defendant Messer was responsible for overseeing detainees in BCDC, including Plaintiff.

10.      At all times material to this Complaint, Defendant Prescott was a Sheriff's Deputy of the BCSO. Defendant Prescott was responsible for overseeing detainees in BCDC, including Plaintiff.

11.     At all times material to this Complaint, Defendant Robinson was a Sheriff's Deputy of the BCSO. Defendant Robinson was responsible for overseeing detainees in BCDC, including Plaintiff.

12.     Defendant Assailants Does 1-X (collectively "Assailant Defendants"), are individuals whose names are unknown to Plaintiff and who, at all times material to this Complaint, engaged in retaliatory conduct against Plaintiff at BCDC after she reported the sexual assaults described further herein, and either acted at the direction of Defendants Rhoden, Crews, Blue and Robinson, or with their knowledge.

13.     Defendants Baker County, BCCMC, Rhoden, Crews, Blue, Messer, Prescott and Robinson are hereafter collectively referred to as the "Baker County Defendants".

14.     At all times material to this Complaint, Defendant Smith was an Assistant Field Office Director for ICE and stationed at the Jacksonville ICE Field Office. Defendant Smith managed the day-to-day operations and procedures of the enforcement and removal activity throughout the Jacksonville Field Office area of responsibility, including at BCDC.

15.     Defendant United States of America ("United States")[2] is a sovereign that has waived its immunity for certain claims, including the claims set forth herein, and is liable for the acts of its employees and/or agents.

16.     At all times material to this Complaint, Defendants were acted under color of state and/or federal law.

17.     At all times material to this Complaint, Defendants were law enforcement officers duly sworn under 8 C.F.R. § 287.

---

[2] The United States of America, DHS and ICE are collectively referred to as the "United States" in this paragraph and Counts V and VII of the Complaint.

## JURISDICTION AND VENUE

18.    This action is brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §2671, *et seq.*; the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1581 *et. seq.*, 28 U.S.C. §1346, *et seq.*; 42 U.S.C § 1983; Fifth and Fourteenth Amendments of the United States Constitution; and pendent state common and statutory laws.

19.    Any and all state law claims contained herein form part of the same case or controversy as gives rise to Plaintiff's federal law claims and therefore fall within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

20.    The amount in controversy in this matter exceeds the jurisdictional minimum limits set forth in 28 U.S.C. § 1332(a).

21.    Jurisdiction is appropriate pursuant to 28 U.S.C. §§ 1331, 1332, and 1346.

22.    The acts and omissions giving rise to this Complaint occurred in the State of Florida.

23.    Venue is proper in the Middle District of Florida, as the acts complained of occurred in this district.

## GENERAL ALLEGATIONS

### A.  The Agreement Between ICE and the BCSO

24.    In August 2009, Defendants Baker County, BCCMC and the BCSO signed an Intergovernmental Service Agreement ("IGSA") with ICE to house people in immigration detention at the newly constructed BCDC.

25.    The IGSA required ICE to pay Defendants Baker County, BCCMC and the BCSO a fixed amount per detained individual per day—an amount described in the contract as the "detainee day rate."

26.     In exchange, Defendants Baker County, BCCMC and the BCSO must provide detained individuals with "safekeeping, housing, subsistence, medical and other services."

27.     Defendants Baker County, BCCMC and the BCSO are contractually "required to house detainees and perform related detention services in accordance with the most current edition of ICE National Detention Standards"—presently, the 2019 PBNDS.[3]

### B. Prison Rape Elimination Act

28.     In 2003, Congress enacted the Prison Rape Elimination Act ("PREA"), in which it specifically found, among other things, that (1) "[m]ost prison staff are not adequately trained or prepared to prevent, report, or treat inmate sexual assaults," (2) "[p]rison rape often goes unreported, and inmate victims often receive inadequate treatment for the severe physical and psychological effects of sexual assault--if they receive treatment at all," and (3) "[v]ictims of prison rape suffer severe physical and psychological effects that hinder their ability to integrate into the community and maintain stable employment upon their release from prison." 34 U.S.C. § 30301. Congress further found that "[t]he high incidence of sexual assault within prisons involves actual and potential violations of the United States Constitution," and "[s]tates that do not take basic steps to abate prison rape" demonstrate "indifference" to those constitutional rights. *Id*.

29.     The Department of Homeland Security and ICE expressly adopted PREA into their standards in 2007 and, in 2012, DHS issued its PREA National Standards, 6 CFR 115.

30.     Additionally, recognizing the inherent power dynamics between immigration officers/staff and the detainees in their custody, ICE further prohibited officers/staff from "[e]ngaging in, or attempting to engage in a sexual act with any resident or the intentional

---

[3] ICE, National Detention Standards for Non-Dedicated Facilities (rev. 2019), available at https://www.ice.gov/doclib/detention-standards/2019/nds2019.pdf

touching of an resident's genitalia, anus, groin, breast, inner thigh, or buttocks with the intent to abuse, humiliate, harass, degrade, arouse, or gratify the sexual desire of any person" and further noted that "[s]exual acts or contacts between a resident and a staff member, even when no objections are raised, are always illegal." *Id*.

31.    Congress promulgated PREA regulations in 2012. *See* 28 C.F.R. §§ 115 *et seq.* Section 2.11 was added to 2019 PBNDS to comply with DHS PREA standards.

32.    Federal law requires ICE to inspect detention facilities like Baker for PREA compliance and complete inspection reports. BCDC's ICE PREA inspection reports inexplicably do not appear on ICE's website.

33.    At all times relevant, the Baker County Defendants were contractually responsible for complying with the IGSA and all applicable federal laws incorporated by it, including, but not limited to, PREA, the Federal Acquisition Regulations (FAR), Homeland Security Acquisition Regulations (HSAR), OMB Circular A-87, and the Federal Records Act.

**C.  ICE's Detention Standards Governing Sexual Assault Within BCDC**

34.    In October 2012, BCDC incorporated the 2011 PBNDS 2.11 – Sexual Abuse and Assault Prevention and Intervention – into its IGSA by way of contract modification, which remained applicable at all relevant times.

35.    As particularly relevant here, 2011 PBNDS 2.11 requires "facilities that house detainees act affirmatively to prevent sexual abuse and assaults on detainees; provide prompt and effective intervention and treatment for victims of sexual abuse and assault; and control, discipline and prosecute the perpetrators of sexual abuse and assault." 2011 PBNDS 2.11.

36.    Recognizing the inherent power dynamics between immigration officers/staff and the detainees in their custody, PBNDS 2.11 explicitly prohibits sexual abuse and assault of a

detainee by a staff member, including and among other things, (1) [c]ontact involving the penis upon penetration, however slight; (2) [c]ontact between the mouth and the penis, vulva or anus; (3) [p]enetration, however slight, of the anal or genital opening of another person by a hand or finger or by any object that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

37.    ICE further prohibited officers/staff from "intentional touching of the genitalia, anus, groin, breast, inner thigh, or buttocks, either directly or through the clothing, that is unrelated to official duties or with a staff member, contractor, or volunteer as the intent to abuse, arouse, or gratify sexual desire." *Id*.

38.    Furthermore, "[s]taff, contractors, volunteers, and detainees shall not retaliate against any person, including a detainee, who reports, complains about, or participates in an investigation into an allegation of sexual abuse and assault, or for participating in sexual abuse and assault as a result of force, coercion, threats, or fear of force." *Id.*

39.    As noted, 2011 PBNDS 2.11 is incorporated into the IGSA and therefore impose contractual obligations on BCSO.

**D. Defendant Robinson Sexually Assaulted And Raped Plaintiff, Gave Plaintiff Goods In Exchange For The Sexual Acts, And With The Help Of Defendants Retaliated Against Plaintiff And Also Placed Her In Solitary Confinement At BCDC**

40.    At all times relevant hereto, Defendants Rhoden, Crews, Blue and Robinson were employed by Baker County and they were assigned to the BCDC.

41.    Plaintiff arrived at BCDC on or about February 25, 2019.

42.    From February 25, 2019 through July 30, 2019, Defendant Robinson assaulted Plaintiff on several occasions while she was under the custodial, supervisory, and disciplinary authority of ICE and detained at BCDC.

43.    Defendant Robinson inappropriately intimidated, coerced, victimized, and sexually battered Plaintiff by, among other things, putting his hands underneath Plaintiff's clothes and underwear, and inserting his finger into Plaintiff's vagina on at least three occasions in April 2019, with one instance being on or about April 22, 2019.

44.    On May 25, 2019, Defendant Robinson inappropriately intimidated, coerced, victimized, and sexually battered Plaintiff by, among other things, ordering her to go to the library, where he forced Plaintiff's pants down and penetrated her vaginally with his penis.

45.    In an attempt to fight off this violent rape, Plaintiff first physically resisted Defendant Robinson, but she was unable to stop him because he was physically stronger than Plaintiff.

46.    As a last-ditch effort, Plaintiff told Defendant Robinson that she could become pregnant if he continued this heinous act and, upon hearing this, Defendant Robinson ordered Plaintiff to perform oral sex and then ejaculated in Plaintiff's mouth and on her bra.

47.    Defendant Robinson committed sexual abuse in violation of FL ST § 951.221.1 (Sexual Misconduct by a Detention Facility Employee) and FL ST § 94.011.4b (Sexual Battery), by engaging in sexual acts with Plaintiff, who was under the custodial, supervisory, and/or disciplinary authority of Defendants. Defendant Robinson is criminally charged with three counts of each in connection with his illegal actions. *See State of Florida v. Brian Louis Robinson*, Case No. 02-2019-CF-000382-CFAM (8th Judicial District, Baker County, Florida)

48.    From approximately February 25, 2019 through July 30, 2019, Defendant Robinson verbally demanded sexual favors and verbally harassed Plaintiff.

49.    From approximately February 25, 2019 through July 30, 2019, Defendant Robinson represented to Plaintiff that he would fabricate criminal charges against her to ensure she was removed from the United States.

50.    From approximately February 25, 2019 through July 30, 2019, Defendant Robinson gave Plaintiff commercial goods of value in connection with the sexual acts he performed on Plaintiff and/or ordered Plaintiff to perform on him.

51.    The commercial goods of value included toilet paper, feminine pads, cleaning supplies, gum, books, pictures, fruits and cookies. The commercial goods were items of value that detainees at BCDC would need to purchase from the commissary, some of which were sold in limited capacity by the comissary. At all times, toilet paper and feminine pads were of extreme value in BCDC and often used as a form of currency by detainees.

52.    The commercial goods Defendant Robinson exchanged Plaintiff were intended to groom Plaintiff for sexual acts, act as payment in exchange for the sexual acts and to purchase her silence for the sexual acts.

53.    As evidenced by Plaintiff's resistance to Defendant Robinson's violent rape and continued demands for sexual favors, Plaintiff did not consent at any time to these sexual acts and assaults.

54.    Moreover, under PREA National Standards, 6 CFR 115, any sexual act perpetrated by Defendant Robinson would always be considered illegal, and thus Plaintiff could never offer consent, nor could Defendant Robinson reasonably construe any action or inaction on her part as evidencing consent.

55.    At all times, Plaintiff feared further abuse, feared retaliation, and feared for her life if she reported Defendant Robinson.

56.     Prior to the May 25, 2019 forcible vaginal and oral rape, Plaintiff developed an infection. Plaintiff requested medical assistance, which was denied to her by Defendants. Plaintiff's untreated infection worsened resulting in swelling to her face, pain and discomfort.

57.     Thereafter, Plaintiff appeared for a hearing before an immigration judge, where Plaintiff could have been released from BCDC.

58.     Given Plaintiff's ill appearance, the immigration judge determined that Plaintiff needed urgent medical attention and could not proceed with the hearing in her current state. The immigration judge suspended the hearing, in which Plaintiff could have been released, ordering that she be taken for medical treatment. Plaintiff was then returned to BCDC to wait for her next hearing and during this time she was forcibly raped by Defendant Robinson, vaginally and orally, on May 25, 2019.

59.     In the days that followed May 25, 2019 forcible vaginal and oral rape, Plaintiff was so traumatized by what had occurred that she could not eat for three to four days; instead, she remained in her cell until she was forcibly taken to be fed by detention officers.

60.     Sometime after the May 25, 2019 forcible vaginal and oral rape, Plaintiff reported all prior acts to ICE in an immigration proceeding.

61.     Thereafter, Defendants Messer, Prescott, and the Assailant Defendants retaliated against Plaintiff for reporting her rape to ICE by taking her to the location of the May 25, 2019 forcible vaginal and oral rape and locking her in same location for at least two hours, causing Plaintiff to have a mental breakdown, experience heart palpitations, and trouble breathing.

62.     Defendants Messer, Prescott, and the Assailant Defendants also retaliated against Plaintiff for reporting her rape to ICE by placing her in solitary confinement and in isolation, without charge or adjudication, until she was released from BCDC on July 30, 2019.

63.    While in solitary confinement, Plaintiff was denied basic needs, including water, food, the ability to communicate with her family, bedding, clothing, her right to counsel, right to movement, sleep and the ability to shower.

64.    Defendants Messer, Prescott, and the Assailant Defendants threatened Plaintiff with additional punishment, torture and the use of pepper spray, which Defendants knew Plaintiff to be allergic to.

65.    Upon information belief, Defendant Smith became aware of Plaintiff's sexual assault and battery after she reported it to ICE.

66.    Plaintiff's report included the fact that she had been denied medical treatment and was unable to participate in an immigration hearing that could have secured her release and prevented the rape.

67.    Plaintiff's report included the fact that she was being retaliated against, as a result of the rape, by being placed in solitary confinement.

68.    Defendant Smith declined Plaintiff's request to meet with her and/or investigate the conduct she had endured, including her sexual assault and battery, and her denial of medical care.

69.    Further, Defendants knew areas of BCDC were unsupervised and camera-less, and knew or should have known that detention officers and guards, including Defendant Robinson, took detainees, such as the Plaintiff, to unsupervised, camera-less areas of BCDC for inappropriate, improper, and illegal purposes.

70.    Defendants, and each of them, failed to safekeep, care, and protect the Plaintiff, who was under the custodial, supervisory, and/or disciplinary authority of Defendants.

71.     As a direct and/or proximate result of Defendants' actions and/or omissions, Plaintiff suffered and continues to suffer from severe and permanent injuries, including, but not limited to, damage to her right shoulder and breast, including the rupturing and deflation of a breast implant placed in her right breast and permanent deformity of the right breast, damage to her neck from choking, head pain from her hair being pulled, strains from the twisting of her arms, disfigurement, physical impairments, mental anguish, distress, embarrassment, humiliation, shock, emotional distress with physical manifestations, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, lost wages, future earning capacity and damages in an amount to be proven at trial.

72.     As a direct and/or proximate result of Defendants' actions and/or omissions, stated above, Plaintiff was and will continue to be prevented from performing daily activities, and has and will continue to incur medical expenses in an effort to treat her aforesaid conditions.

## CAUSES OF ACTION

### Count I
### Negligence
### *Against: Defendants Baker County, BCCMC, Padgett, Rhoden, Crews and Blue*

73.     Plaintiff incorporates by this reference, her claims, facts, and allegations in the Paragraphs 1 through 72, as if set forth fully herein.

74.     Defendants Baker County, Padgett, BCCMC, Rhoden, Crews, and Blue, through their employees, agents, or servants, owed a legal duty to keep Plaintiff reasonably free from injury and harm while Plaintiff was in their custody and control.

75.     Defendants Baker County, Padgett, BCCMC, Rhoden, Crews, and Blue, through their and their employees, agents, or servants, breached the duty they owed to Plaintiff.

76.     The negligence and/or recklessness of Defendants Baker County, BCCMC, Padgett, Rhoden, Crews, and Blue, jointly and severally, through their employees, agents, or servants, includes, but is not limited to:

a.  failing to control detention officers' and staffs' access to female detainees in isolating settings at BCDC;

b.  failing to install and maintain adequate and functioning video surveillance and security systems;

c.  failing to have sufficient policies, practices, and/or oversight in place to detect and prevent physical and sexual abuse of immigration detainees;

d.  failing to staff BCDC at levels that were sufficient to deter sexual assaults by detention officers and other staff;

e.  failing to select and hire qualified detention officers and staff;

f.  failing to conduct reasonable background checks and investigation into prospective and current detention officers and staff;

g.  failing to appropriately supervise detention officers and staff to reduce the inherent risk of sexual assault within a detention facility setting;

h.  failing to appropriately train detention officers and staff on the inherent risks of sexual assaults within a detention facility setting;

i.  failing to appropriately discipline and report detention officers and staff who were known or suspected of having engaged, participated in, and/or concealed sexual assault;

j.  failing to properly investigate allegations of sexual assault by detainees, staff, or detention officers;

k.  failing to properly control access to female detainees at BCDC;

l.  failing to provide any manner of medical treatment to Plaintiff following her sexual assaults;

m.  failing to recognize that isolated and unmonitored sections of BCDC posed an unreasonable risk of harm to detainees;

n.  failing to hold detention officers and staff accountable for not recognizing and preventing sexual assaults;

o.  maintaining an unacceptable practice and/or custom of allowing male agents, officers and staff to interact with, move, transport, and/or female individuals alone;

p.  failing to appropriately guard detainees from sexual assault;

q.  violating the BCDC's applicable contracts, policies, and standards designed to prevent physical and sexual assault;

r.  failing to exercise the requisite care and skill ordinarily exercised by similar detention facilities, institutions, agencies, agents, guards, correctional officers, and staff members to detect, deter, and prevent sexual assault and abuse; and

s.  violating the federal and state statutes, regulations and standards governing sexual assaults in detention facility settings, including, but not limited to, 34 U.S.C. § 30301, *et seq.*; 28 C.F.R. §§ 115 *et seq.*; FL ST § 951.221.1; FL ST § 94.011.4b; 2011 PBNDS 2.11.

77.     As a direct and proximate result of Defendants' and their employees', agents', and servants' negligent and/or reckless acts and omissions, Plaintiff has suffered the aforesaid damages.

**Count II**
**Assault & Battery**
***Against: Defendants Robinson, Messer, Prescott, and the Assailant Defendants***

78.     Plaintiff incorporates by this reference, her claims, facts, and allegations in the Paragraphs 1 through 72, as if set forth fully herein.

79.     Defendant Robinson intentionally, knowingly, or recklessly made a harmful and/or offensive contact with Plaintiff's person. Defendant Robinson encountered Plaintiff in isolated areas of BCDC with specific the intent to physically and sexually assault Plaintiff and/or to cause a reasonable apprehension of immediate bodily harm.

80.     Defendant Robinson intentionally, knowingly, or recklessly physically attacked Plaintiff and touched her person in a sexual manner, where Plaintiff did not consent to the sexual touching.

81.     Further, Defendant Robinson intentionally, knowingly, or recklessly caused a reasonable apprehension of immediate bodily harm to Plaintiff.

82.     Defendants Messer, Prescott, and the Assailant Defendants intentionally, knowingly, or recklessly made a harmful and/or offensive contact with Plaintiff's person. The Assailant Defendant encountered Plaintiff with specific the intent to physically assault the Plaintiff and/or to cause a reasonable apprehension of immediate bodily harm.

83.     Defendants Messer, Prescott, and the Assailant Defendants intentionally, knowingly, or recklessly physically attacked Plaintiff and touched her person, where Plaintiff did not consent to the touching.

84.     Further, Defendants Messer, Prescott, and the Assailant Defendants intentionally, knowingly, or recklessly caused a reasonable apprehension of immediate bodily harm to Plaintiff.

85.    The conduct of Defendants Robinson, Messer, Prescott, and the Assailant Defendants was harmful and offensive and caused bodily injury to Plaintiff. Defendant Messer, Crews, Robinson, and the Assailant Defendants knew or reasonably should have known that their contact with Plaintiff's body was harmful and offensive.

86.    As a direct and proximate result of the conduct of Defendants Robinson, Messer, Prescott, and the Assailant Defendants, Plaintiff suffered the aforesaid damages.

**Count III**
**False Imprisonment**
***Against: Defendants Robinson, Messer, Prescott, and the Assailant Defendants***

87.    Plaintiff incorporates by this reference, her claims, facts, and allegations in the Paragraphs 1 through 72, as if set forth fully herein.

88.    As detailed throughout this Complaint, Defendant Robinson falsely imprisoned Plaintiff by willfully detaining her without her consent and in the absence of any legal authority or justification for doing so, by moving Plaintiff to the isolated area of BCDC and/or holding Plaintiff in the isolated area to facilitate his physical and sexual assaults on Plaintiff.

89.    Plaintiff knew that she was willfully and unlawfully detained by Defendant Robinson at the time his physical and sexual assaults upon her, and she did not consent to it.

90.    As detailed throughout this Complaint, Defendants Messer, Prescott, and the Assailant Defendants falsely imprisoned Plaintiff by willfully detaining her in solitary confinement without her consent and in the absence of any legal authority or justification for doing so, and solely to retaliate against her for reporting her physical and sexual assaults.

91.    Plaintiff knew that she was willfully and unlawfully detained by Defendants Messer, Prescott, and the Assailant Defendants at the time they placed her in solitary confinement for reporting her physical and sexual assaults.

92.     Defendants engaged in this conduct with malice and reckless or callous indifference to the rights of Plaintiff.

93.     As a direct and proximate result of the conduct of the conduct of Defendants Robinson, Messer, Prescott, and the Assailant Defendants , Plaintiff suffered the aforesaid damages.

**Count IV**
**Intentional Infliction of Emotional Distress**
**_Against: Defendants Robinson, Messer, Prescott, and the Assailant Defendants_**

94.     Plaintiff incorporates by this reference, her claims, facts, and allegations in the Paragraphs 1 through 72, as if set forth fully herein.

95.     Plaintiff's injuries were a direct and/or proximate result of Defendant Robinson's and the Assailant Defendants' intentional infliction of emotional distress.

96.     Defendants Robinson, Messer, Prescott, and the Assailant Defendants acted intentionally or recklessly and inflicted emotional distress on Plaintiff.

97.     Defendant Robinson brutally attacked and sexually assaulted Plaintiff in an isolated area in an immigration detention center.

98.     Defendants Messer, Prescott, and the Assailant Defendants falsely imprisoned Plaintiff with specific intent by willfully detaining her in solitary confinement without her consent and in the absence of any legal authority or justification for doing so, and solely to retaliate against her for reporting her physical and sexual assaults.

99.     The conduct of Defendants Robinson, Messer, Prescott, and the Assailant Defendants was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.

100.    The emotional distress suffered by Plaintiff as a result of the conduct of Defendants Robinson, Messer, Prescott, and the Assailant Defendants was severe.

101.    Defendants engaged in this conduct with malice and reckless or callous indifference to the rights of Plaintiff.

102.    The conduct of Defendants Robinson, Messer, Prescott, and the Assailant Defendants proximately caused Plaintiff's emotional distress. As a direct and proximate result of the conduct of Defendant Messer, Crews, Robinson, and the Assailant Defendants, Plaintiff suffered the aforesaid damages.

**Count V**
**Federal Tort Claims Act – Negligence**
**_Against: Defendant United States_**

103.    Plaintiff incorporates by this reference, her claims, facts, and allegations in the Paragraphs 1 through 72, as if set forth fully herein.

104.    All conditions precedent to bring suit against the United States under the Federal Tort Claims Act have occurred or been performed.

105.    The United States has waived its sovereign immunity pursuant to 28 U.S.C. §§ 1346(b) and 2674. As set forth in this Complaint, Plaintiff suffered personal injury and incurred damages proximately caused by the negligent or wrongful acts or omissions of employees, agents, and/or servants of the United States government, including but not limited to employees, agents, and/or servants of the ICE, the DHS, and/or BCCMC. These employees and agents were acting in the course and scope of their employment or agency with the United States government when they committed acts or omissions that perpetrated, allowed, and/or failed to prevent the attack and sexual assault of Plaintiff while she was in the custody, care, and control of the United States government and BCCMC at BCDC. At all times relevant, these employees, agents, and/or

servants constituted investigative or law enforcement officers. The United States government, if it were an individual person, would be liable to Plaintiff under the law of the state of Florida for these acts and omissions as set forth herein.

106.    Upon information and belief, Defendants Robinson, Messer, Prescott, and the Assailant Defendants were employees, agents, and/or servants of the United States or was under its control or active supervision at all relevant times alleged above. At all times relevant, Defendants Robinson, Messer, Prescott, and the Assailant Defendants were acting in the course and scope of their employment, agency, or representation with the United States. Further, at all times relevant, Defendant United States' employees, agents, or servants within BCDC were acting as investigative or law enforcement officers

107.    Defendant United States, by and through its employees, agents, or servants, owed a legal duty to keep Plaintiff reasonably free from injury and harm while Plaintiff was in its custody and control.

108.    Defendant United States, by and through its employees, agents, or servants, breached the duty it owed to Plaintiff.

109.    The negligence and/or recklessness of Defendant United States, by and through its employees, agents, or servants, includes, but is not limited to:

    a.  failing to control detention officers' and staffs' access to female detainees in isolating settings at BCDC;

    b.  failing to require the installation and maintenance of adequate and functioning video surveillance and security systems;

    c.  failing to have sufficient policies, practices, and/or oversight in place to detect and prevent physical and sexual abuse of immigration detainees;

d.  failing to ensure staffing levels at BCDC were sufficient to deter sexual assaults by detention officers and other staff;

e.  failing to conduct reasonable background checks and investigation into prospective and current detention officers and staff;

f.  failing to appropriately supervise detention officers and staff to reduce the inherent risk of sexual assault within a detention facility setting;

g.  failing to appropriately train detention officers and staff on the inherent risks of sexual assaults within a detention facility setting;

h.  failing to appropriately discipline and report detention officers and staff who were known or suspected of having engaged, participated in, and/or concealed sexual assault;

i.  failing to properly investigate allegations of sexual assault by detainees, staff, or detention officers;

j.  failing to properly control access to female detainees at BCDC;

k.  failing to provide any manner of medical treatment to Plaintiff following her sexual assaults;

l.  failing to recognize that isolated and unmonitored sections of BCDC posed an unreasonable risk of harm to detainees;

m.  failing to hold detention officers and staff accountable for not recognizing and preventing sexual assaults;

n.  maintaining an unacceptable practice and/or custom of allowing male agents, officers and staff to interact with, move, transport, and/or female detainees alone;

o.  failing to appropriately guard detainees from sexual assault;

21

p.  failing to ensure that detention officers did not violate BCDC's applicable contracts, policies, and standards designed to prevent physical and sexual assault;

q.  failing to exercise the requisite care and skill ordinarily exercised by similar detention facilities, institutions, agencies, agents, guards, correctional officers, and staff members to detect, deter, and prevent sexual assault and abuse; and

r.  violating the federal and state statutes, regulations and standards governing sexual assaults in detention facility settings, including, but not limited to, 34 U.S.C. § 30301, *et seq.*; 28 C.F.R. §§ 115 *et seq.*; FL ST § 951.221.1; FL ST § 94.011.4b; 2011 PBNDS 2.11.

110.  As a direct and proximate result of Defendant United States' and its employees', agents', and servants' negligent and/or reckless acts and omissions, Plaintiff suffered the aforesaid damages.

**Count VI**
**Federal Tort Claims Act – False Imprisonment**
**_Against: Defendant United States_**

111.  Plaintiff incorporates by this reference, her claims, facts, and allegations in the Paragraphs 1 through 72, as if set forth fully herein.

112.  As set forth in this Complaint, the United States has waived its sovereign immunity pursuant to 28 U.S.C. §§ 1346(b) and 2674.

113.  Upon information and belief, Defendants Robinson, Messer, Prescott, and the Assailant Defendants were employees, agents, and/or servants of the United States or was under its control or active supervision at all relevant times alleged above. At all times relevant, Defendants Robinson, Messer, Prescott, and the Assailant Defendants were acting in the course and scope of their employment, agency, or representation with the United States.

114.    At all times relevant, Defendant United States' employees, agents, or servants within BCDC were acting as investigative or law enforcement officers.

115.    As detailed throughout this Complaint, Defendant Robinson falsely imprisoned Plaintiff by willfully detaining her without her consent and in the absence of any legal authority or justification for doing so, by moving Plaintiff to the isolated area of BCDC and/or holding Plaintiff in the isolated area to facilitate his physical and sexual assaults on Plaintiff.

116.    Plaintiff knew that she was willfully and unlawfully detained by Defendant Robinson at the time his physical and sexual assaults upon her, and she did not consent to it.

117.    As detailed throughout this Complaint, the Defendants Messer, Prescott, and the Assailant Defendants falsely imprisoned Plaintiff by willfully detaining her in solitary confinement without her consent and in the absence of any legal authority or justification for doing so, and solely to retaliate against her for reporting her physical and sexual assaults.

118.    As a direct and proximate result of the conduct of the conduct of Defendants Robinson, Messer, Prescott, and the Assailant Defendants , Plaintiff suffered the aforesaid damages.

**Count VII**
**Violation of the TVPA, 18 U.S.C. § 1581 *et. seq***
***Against: Defendants Baker County, BCCMC, Padgett, Rhoden, Crews, Blue and Robinson***

119.    Plaintiff incorporates by this reference, her claims, facts, and allegations in the Paragraphs 1 through 72, as if set forth fully herein.

120.    The exploitation of vulnerable people is so common that Congress has passed the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1581 *et. seq.*, a comprehensive statutory framework imposing both criminal and civil liability, *see* 18 U.S.C. § 1595, on any

persons engaging or *attempting to engage* or benefit from sexual exploitation and trafficking or obstructing anti-trafficking enforcement.

121.    Specifically, the TVPA punishes anyone who "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or . . .benefits, financially or by receiving anything of value, from participation in a [trafficking] venture" while knowing "that means of force, threats of force, fraud, coercion . . . will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a); *see* 18 U.S.C. § 1594 (prohibiting attempted trafficking and conspiracy to traffic).

122.    Coercion means "threats of serious harm to or physical restraint against any person . . . any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person" or "the abuse or threatened abuse of law or the legal process." 18 U.S.C. § 1591(e)(2).

123.    The TVPA allows "[a] individual who is a victim of a violation of this chapter [to] bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys' fees." 18 U.S.C. § 1595(a).

124.    "Serious harm" means "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm." 18 U.S.C. § 1591(e)(5).

125.    Commercial sex act "means any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C § 1591(e)(3).

126.    The TVPA also punishes anyone who "obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section," 18 U.S.C. § 1591(d), and makes it a separate offense to violate the TVPA while "possesse[ing] any actual or purported passport or other immigration document, or any other actual or purported government identification document, of another person." 18 U.S.C. § 1592(a).

127.    Congress grants a plaintiff up to ten years in which to bring a civil action under 18 U.S.C. § 1595(c).

128.    Defendant Robinson engaged in sex trafficking of Plaintiff as prohibited under 18 U.S.C. § 1591; § 1594(a).

129.    Defendant Robinson coerced Plaintiff to engage in sexual acts by means of force as well as giving her commercial goods at BCDC, which constitute things of value. In this way, Defendant Robinson's conduct constitutes the attempt to engage in sex in exchange for things of value, the definition of commerciality under the TVPA. Because he is attempting to engage the Plaintiff in commercial sex using force, fraud, and/or coercion, he is attempting to engage her in sex trafficking.

130.    Defendant Robinson coerced Plaintiff with his threats of harm. Defendant Robinson's promises and threats were a plan designed to make Plaintiff believe that she would suffer serious harm should she not obey to his sexual advances.

131.    Defendant Robinson also used the coercive power of his status as a Sheriff's Deputy, as well as physical force in his attempt to have Plaintiff engage in commercial sexual acts with him.

132.    These acts constitute civil wrongs inflicted on Plaintiff and actionable under 18 U.S.C. § 1595.

133.    Because Defendant Robinson acted at all times in his role as Sheriff's Deputy, he acted as an agent of the Defendants Baker County and BCMCC, they are vicariously liable for his trafficking of Plaintiff.

134.    Defendants Baker County and BCMCC knew that Defendant Robinson had assaulted Plaintiff. Defendants Baker County and BCMCC knew that the Assailant Defendants were obstructing and attempting to obstruct enforcement efforts against Defendant Robinson.

135.    The Defendants Baker County and BCMCC gained numerous financial and valuable benefits from protecting, participating, and aiding these TVPA violations.

136.    Defendants' conduct warrants the Court's imposition of punitive damages against the Defendants.

137.    Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for the Defendants' wrongful conduct.

### Count VIII
### 42 U.S.C. § 1983 — 14th Amendment Substantive Due Process Violation
### *Against: Defendants Robinson, Rhoden, Crews Blue, Messer, Prescott,*
### *and the Assailant Defendants*

138.    Plaintiff incorporates by this reference, her claims, facts, and allegations in the Paragraphs 1 through 72, as if set forth fully herein.

139.    As detailed throughout this Complaint, Defendant Robinson subjected Plaintiff to repeated sexual assault and sex-trafficked her while she was in custody at BCDC, and then attempted to conceal this nightmarish conduct.

140.    Defendants Rhoden, Crews Blue, Messer, Crews, and the Assailant Defendants knew or should have known that Plaintiff had been subject to the aforementioned abusive

conduct by Defendant Robinson, but failed to intervene on behalf of Plaintiff and/or aided Defendant Robinson in his effort to conceal the abuse.

141.    Defendants Robinson, Rhoden, Crews Blue, Messer, Prescott, and the Assailant Defendants knew that, by engaging in this conduct, they were certain to cause physical and mental injury to Plaintiff.

142.    Defendants Robinson, Rhoden, Crews Blue, Messer, Prescott, and the Assailant Defendants intentionally disregarded the obvious risk to Plaintiff despite the fact that their conduct could not justify any legitimate government interest.

143.    The conduct of Defendants Robinson, Rhoden, Crews Blue, Messer, Prescott, and the Assailant Defendants constitutes a state created danger and rises to a level of egregiousness that shocks the conscious.

144.    As a result of the above actions, Defendants Robinson, Rhoden, Crews, Blue, Messer, Prescott, and the Assailant Defendants caused Plaintiff to be deprived of her clearly established right to intimate bodily integrity and have therefore violated Plaintiff's Fourteenth Amendment right under the United States Constitution to substantive due process of law.

**Count IX**
**42 U.S.C. § 1983 — MONELL LIABILITY**
***Against: Defendants BCCMC and Baker County***

145.    Plaintiff incorporates by this reference, her claims, facts, and allegations in the Paragraphs 1 through 72 and 73 through 77 as if set forth fully herein.

146.    Defendants Robinson, Rhoden, Crews Blue, Messer, Prescott, and the Assailant Defendants acted under the color of law, and under the authority of one or more interrelated *de facto* policies, practices, and/or customs of the BCCMC and Baker County to violate Plaintiff's rights as set forth herein.

147.    Prior to April 2019, it was a *de facto* policy, practice, and/or custom of the BCCMC and Baker County, through their Sheriff's department personnel and elected and appointed county officials, to inadequately supervise and train their Sheriff's Deputies and BCDC staff, including the those specifically identified herein, to appropriately prevent and identify sexual assaults and sexually exploitative conduct occurring to female detainees within BCDC, thereby failing to adequately discourage constitutional violations on the part of the Sheriff's Deputies and staff members.

148.    Prior to April 2019, it was a *de facto* policy, practice, and/or custom of the BCCMC and Baker County, through their Sheriff's department personnel and elected and appointed county officials, to inadequately supervise and train their Sheriff's Deputies and BCDC staff, including the those specifically identified herein, to intervene and/or report constitutional violations and/or misconduct committed by their fellow Sheriff's Deputies and/or BCDC staff.

149.    BCCMC and Baker County, acting through their Sheriff's department personnel and elected and appointed county officials, have adopted and continue to maintain recognized and accepted policies, customs, and/or practices of systematically failing to prevent and identify sexual assaults and sexually exploitative conduct occurring to female detainees within BCDC, failing to investigative reports of sexual assault and sexually exploitative conduct to occurring to female detainees within BCDC, disregarding and/or devaluing reports of sexual assault and sexually exploitative conduct to occurring to female detainees within BCDC, concealing sexual assaults and sexually exploitative conduct occurring to female detainees within BCDC, and retaliating against those who sought to expose sexual assaults and sexually exploitative conduct

occurring to female detainees within BCDC, which has resulted in subjecting other persons, including Plaintiff, to unjustifiable risks of personal injury.

150.    BCCMC and Baker County, acting through their Sheriff's department personnel and elected and appointed county officials, were fully aware of the propensity for sexual assaults and sexually exploitative conduct at BCDC, the risks posed by such conduct, and the resultant need for proper training and supervision of their Sheriff's Deputies and BCDC staff, but BCCMC and Baker County were deliberately indifferent to those risks and failed to properly train and supervise these actors regarding those risks.

151.    As a result of the above-described practices, policies, and/or customs, Sheriff's deputies and BCDC staff, including those identified herein, believed that their actions would not be properly monitored by supervisors and/or other employees of BCCMC and Baker County, and that their improper conduct would not be investigated or sanctioned, but would be tolerated and condoned by BCCMC and Baker County.

152.    As a result of the above actions, BCCMC and Baker County caused Plaintiff to be deprived of her right to intimate bodily integrity and have therefore violated Plaintiff's Fourteenth Amendment right under the United States Constitution to substantive due process of law.

**Count X**
**5th Amendment Due Process Violation — BIVENS LIABILITY**
***Against: Defendant Smith***

153.    Plaintiff incorporates by this reference, her claims, facts, and allegations in the Paragraphs 1 through 72, as if set forth fully herein.

154.    At all relevant times, Plaintiff was a civil detainee at BCDC.

155.    As detailed throughout this Complaint, Defendant Smith, acting in his official capacity, knew that Plaintiff had been subject to sexual assaults.

156.    Defendant Smith knew that sexual assaults require prompt medical and mental health treatment and, further, that the sexual assaults Plaintiff had been subjected to resulted in physical injury, such as the rupture of Plaintiff's right breast implant.

157.    Additionally, Defendant Smith, acting in his official capacity and under color of federal law, knew that Plaintiff had developed an infection that precluded her ability to participate in an immigration hearing, in which she could have been released from BCDC, and thus subjected her to continued sexual assault.

158.    Defendant Smith, acting in his official capacity and under color of federal law, knew that Plaintiff's conditions were serious medical needs requiring prompt medical treatment, but nevertheless denied her treatment because he was deliberately indifferent to her serious medical needs.

159.    By displaying deliberate indifference to Plaintiff's serious medical needs, Defendant Smith caused Plaintiff to be subjected to conduct that is tantamount to cruel and unusual punishment and thus, in the context of a civil detainee, caused Plaintiff to be deprived of her Fifth Amendment right under the United States Constitution to substantive due process of law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests damages and judgment against Defendants which includes the following:

a)    Compensatory damages in an amount to be determined as fair and just under the circumstances, by the trier of fact including, but not limited to pain and suffering, medical

expenses, loss of earnings, mental anguish, anxiety, humiliation, and embarrassment, psychological and emotional pain, suffering, distress, injury, violation of Plaintiff's Federal and State rights, loss of social pleasure and enjoyment, and other damages to be proved;

b)    Punitive and/or exemplary damages in an amount to be determined as reasonable or just by the trier of fact;

c)    Reasonable and statutory attorney fees, pre-judgment and post-judgment interest, and costs; and

d)    Other declaratory, equitable, and/or injunctive relief, including, but not limited to implementation of institutional reform and measures of accountability to ensure the safety and protection of women and other individuals within the United States immigration system, as appears to be reasonable and just;

e)    Other and further relief which may seem just and reasonable under the circumstances.

## **<u>DEMAND FOR TRIAL BY JURY</u>**

Plaintiff respectfully requests a trial by jury as to all matters so triable.

Respectfully submitted this 19th day of May, 2023.

Respectfully Submitted,

*/s/ Barbara J. Hart*
Barbara J. Hart *(pro hac vice forthcoming)*
**GRANT & EISENHOFER P.A.**
485 Lexington Ave, 29th Floor
New York, NY 10017
Tel: (646) 722-8512
bhart@gelaw.com

Steven A. Medina (*pro hac vice forthcoming*)
Samuel Mukiibi (*pro hac vice forthcoming*)
**GRANT & EISENHOFER P.A.**
123 Justison Street, 7th Floor

Wilmington, DE 19801
Tel: (302) 622-7086
smedina@gelaw.com
smukiibi@gelaw.com

James C. Poindexter
**DELEGAL & POINDEXTER, P.A.**
424 East Monroe Street,
Jacksonville, FL 32202
Tel: (904) 633-5000
james@delegal.net

*Attorneys for Plaintiff, Jane Doe*