UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| JANE DOE, a pseudonym,<br><br>    *Plaintiff,*<br> v.<br><br>BAKER COUNTY<br>BAKER COUNTY CORRECTIONS<br>MANAGEMENT CORPORATION,<br>SHARON PADGETT, CHAIRMAN<br>SCOTTY RHODEN , SHERIFF,<br>RANDY CREWS, UNDERSHERIFF,<br>EVELYN BLUE, CAPTAIN,<br>JAMES MESSER, LIEUTENANT,<br>RANDY CRUZ, SHERIFF'S DEPUTY,<br>BRIAN LOUIS ROBINSON,<br>ASSAILANT ROES 1-X,<br>CARDELL C. SMITH, and<br>UNITED STATES.<br><br>    *Defendants*. | Jury Trial Demanded<br><br>Case No.: 3:23-cv-00609-MMH-LLL |

**PLAINTIFF JANE DOE'S MOTION TO PROCEED
UNDER PSEUDONYM AND INCORPROATED MEMORANDUM OF LAW**

    COMES NOW, Plaintiff Jane Doe ("Plaintiff" or "Jane"), by and through the undersigned counsel, and files this Motion to Proceed Under Pseudonym seeking an order of the Court permitting her to proceed in the above-captioned case (the "Action") as pseudonymous Plaintiff "Jane Doe." In furtherance of her motion, Plaintiff states the following:

    Jane is a survivor of forcible rape, sexual assault, battery, and commercial sex trafficking, while she was in the custody and control of the U.S. Immigration and Customs Enforcement agency ("ICE") at Baker County Detention Center ("BCDC"), which is located at 1 Sheriff's Office Drive, Macclenny, FL 32063. The conduct and systemic dysfunction at BCDC were the direct cause of these of these heinous acts, which resulted in the violation of Jane's constitutional

rights and severe and permanent injuries. Accordingly, Jane has filed this Action against Defendants Baker County, Baker County Corrections Management Corporation ("BCMCC"), Chairman Sharon Padgett ("Padgett"), Sheriff Scotty Rhoden ("Rhoden"), Undersheriff Randy Crews ("Crews"), Captain Evelyn Blue ("Blue"), Lieutenant James Messer ("Messer"), Sheriff's Deputy Peyton Prescott ("Prescott"), Brian Louis Robinson ("Robinson"), Assailant Roes 1-X, Cardell C. Smith ("Smith"), the United States of America, the Department of Homeland Security, U.S. Immigration and Customs Enforcement (collectively "Defendants" and each a "Defendant"). *See* Complaint., ECF Doc. 1, ("Complaint" or "Compl.").

To protect herself from retaliation and to prevent harm to her mental health, reputation, and career prospects, Jane respectfully seeks leave of this Court to shield her true identity from public disclosure at this time.

I. **STATEMENT OF FACTS**

Jane was detained at BCDC from February 25, 2019 through July 30, 2019. *See* Declaration of Jane Doe, attached as Exhibit A, ¶ 3. Throughout her Detention, Defendant Robinson assaulted Jane on several occasions while she was under the custodial, supervisory, and disciplinary authority of ICE and detained at BCDC. *Id.* at ¶ 4. Defendant Robinson inappropriately intimidated, coerced, victimized, and sexually battered Jane by, among other things, putting his hands underneath Jane's clothes and underwear, and inserting his finger into Jane's vagina on at least three occasions in April 2019, with one instance being on or about April 22, 2019. *Id.* at ¶ 5. On May 25, 2019, Defendant Robinson inappropriately intimidated, coerced, victimized, and sexually battered Jane by, among other things, ordering her to go to the library, where he forced Jane's pants down and penetrated her vaginally with his penis. *Id.* at ¶ 6.

2

Defendant Robinson committed sexual abuse in violation of FL ST § 951.221.1 (Sexual Misconduct by a Detention Facility Employee) and FL ST § 94.011.4b (Sexual Battery), by engaging in sexual acts with Jane, who was under the custodial, supervisory, and/or disciplinary authority of Defendants. *Id.* at ¶ 7. Defendant Robinson is criminally charged with three counts of each in connection with his illegal actions. *See State of Florida v. Brian Louis Robinson*, Case No. 02-2019-CF-000382-CFAM (8th Judicial District, Baker County, Florida). *Id.* Throughout her detention at BCDC, Defendant Robinson verbally demanded sexual favors and verbally harassed Jane and represented to Jane that he would fabricate criminal charges against her to ensure she was removed from the United States. *Id.* at ¶ 8-9. Jane did not consent at any time to these sexual acts and assaults and feared further abuse, feared retaliation, and feared for her life if she reported Defendant Robinson. *Id.* at ¶ 11-12.

In the days that followed the May 25, 2019 forcible vaginal and oral rape, Jane was so traumatized by what had occurred that she could not eat for three to four days; instead, she remained in her cell until she was forcibly taken to be fed by detention officers. *Id.* at ¶ 16. Sometime after the May 25, 2019 forcible vaginal and oral rape, Jane reported all prior acts to ICE in an immigration proceeding. *Id.* at ¶ 17. Thereafter, Defendants Messer, Prescott, and the Assailant Defendants retaliated against Jane for reporting her rape to ICE by taking her to the location of the May 25, 2019 forcible vaginal and oral rape and locking her in same location for at least two hours, causing Jane to have a mental breakdown, experience heart palpitations, and trouble breathing. *Id.* at ¶ 18.

Defendants Messer, Prescott, and the Assailant Defendants also retaliated against Jane for reporting her rape to ICE by placing her in solitary confinement and in isolation, without charge or adjudication, until she was released from BCDC on July 30, 2019. *Id.* at ¶ 19. While in

3

solitary confinement, Jane was denied basic needs, including water, food, the ability to communicate with her family, bedding, clothing, her right to counsel, right to movement, sleep and the ability to shower. *Id.* at ¶ 20. Defendants Messer, Prescott, and the Assailant Defendants threatened Jane with additional punishment, torture and the use of pepper spray, which Defendants knew Plaintiff to be allergic to. *Id.* at ¶ 21.

Defendant Smith, an Assistant Field Office Director for ICE and stationed at the Jacksonville ICE Field Office, became aware of Jane's sexual assault and battery after she reported it to ICE. *Id.* at ¶ 22. Jane's report included the fact that she had been denied medical treatment and was unable to participate in an immigration hearing that could have secured her release and prevented the rape. *Id.* at ¶ 23. Jane's report included the fact that she was being retaliated against, as a result of the rape, by being placed in solitary confinement. *Id.* at ¶ 24. Defendant Smith declined Jane's request to meet with her and/or investigate the conduct she had endured, including her sexual assault and battery, and her denial of medical care. *Id.* at ¶ 25.

The forcible rape, sexual assault, battery, and commercial sex trafficking perpetrated against Jane caused her to suffer and she continues to suffer from severe and permanent injuries, including, but not limited to, damage to her right shoulder and breast, including the rupturing and deflation of a breast implant placed in her right breast and permanent deformity of the right breast, damage to her neck from choking, head pain from her hair being pulled, strains from the twisting of her arms, disfigurement, physical impairments, mental anguish, distress, embarrassment, humiliation, shock, emotional distress with physical manifestations, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, lost wages, future earning capacity and damages in an amount to be proven at trial. *Id.* at ¶ 25.

Based on the foregoing, Jane has a significant interest in maintaining her privacy and in avoiding any public association between herself and the Defendants she believes are responsible for what happened to her. *Id*. at ¶ 29. Given the highly sensitive and personal nature of the conduct at issue here, Jane believes proceeding with this lawsuit under her real name will cause immediate and irreparable effect on her reputation, employment opportunities, and personal relationships. *Id*. at ¶ 30. Jane s public identification would needlessly interfere with her efforts to process, cope with, and recover from the conduct described in the Complaint. *Id*. at ¶ 31. Jane is also concerned about her public safety. *Id.* Because she resides in the State of Florida, Jane is concerned that she may suffer retaliation and reputational harm if her true identity is revealed. *Id*. at ¶ 32. Jane also worries for family's safety and fears that her family will suffer severe emotional distress if her name is publicly disclosed. *Id*. at ¶ 33. Jane has taken great care to protect the nature of her identity and has not revealed her identity or otherwise sought publicity in this matter. *Id*. at ¶ 35.

II.     **ARGUMENT**

   A.  **Standard of Law**

Although a complaint must usually state the names of all parties pursuant to Fed. R. Civ. P 10(a), Courts have nevertheless "carved out a limited number of exceptions to the general requirement of disclosure, which permit plaintiffs to proceed anonymously." *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678, 685 (11th Cir. 2001). The Eleventh Circuit embraces a balancing test evaluating "whether the plaintiff has a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Aware Woman Ctr. for Choice, Inc.*, 253 F.3d at 685. The various Courts of Appeals have applied a number of specific factors in employing this balancing test. Overall, the

district court must "exercise its discretion in the course of weighing competing interests" whilst using a factor-driven balancing approach. *Sealed*, 537 F.3d 185, 190 (2d Cir. 2008) citing *James v. Jacobson*, 6 F.3d 233, 239 (4th Cir. 1993).

The factors from the "non-exhaustive" list of competing factors compiled by Second Circuit in *Sealed v. Sealed* 1, 537 F.3d 185, 190 (2d Cir. 2008) from the decisions of its sister Circuit Courts, which are relevant to the Plaintiff's application for anonymity include: (1) "whether the litigation involves matters that are 'highly sensitive and [of a] personal nature,'" *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998); *see also Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992), and *Jacobson*, 6 F.3d at 239 (4th Cir. 1993); (2) "whether identification poses a risk of retaliatory physical or mental harm to the…party [seeking to proceed anonymously]," *Jacobson*, 6 F.3d at 239 (4th Cir. 1993); (3) "whether the plaintiff is particularly vulnerable to the possible harms of disclosure," *see Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d at 1068; (4) "whether identification presents other harms and the likely severity of those harms" including whether "the inquiry litigated against would be incurred as a result of the disclosure of the Plaintiff's identity," *Sealed*, 537 F.3d 185, 190 (2d Cir. 2008) citing *Advanced Textile Corp.*, 214 F.3d at 1068 and *Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998); (5) "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities," *Doe v. Del Rio*, 241 F.R.D. 154, 157 ; and (6) "whether the defendant is prejudiced by allowing the plaintiff to press her claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court," *see Advanced Textile Corp.*, 214 F. 3d at 1068. Balancing the factors above strongly favors protecting Jane throughout the instant litigation with the use of a pseudonym.

### B. Disclosure Of Jane's Identity Would Reveal Information That Is Of A Highly Sensitive And Personal Nature Putting Her At A Substantial Risk Of Discrimination And Harassment.

Jane has a substantial privacy right in guarding the sensitive information about her past abuse that she must disclose in this Action. "The issue of pseudonymity requires weighing the scales between the public's interest and the rights to privacy advanced by the movant […and] [o]f course privacy interests are recognized in particular circumstances to be in the public interest." *Zavaras*, 139 F.3d at 803. A plaintiff is only permitted to "proceed anonymously in those exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *Frank*, 951 F.2d 320 (11th Cir. 1992)

Here, at issue in this action will be Jane's discussion of how, while a detainee in ICE custody, she was intimidated, coerced, victimized, raped, sexually battered, retaliated against and placed in solitary confinement for reporting rape and other incidents by Defendants acting under the color of law. The subject matter of this Action involves highly sensitive and intimate facts, which by themselves, favor anonymity. *See also Doe v. Va. Polytechnic Inst. & State Univ.*, No. 19-249, 2020 WL 1287960, at *3 (W.D. Va. Mar. 18, 2020) (finding that allegations of sexual misconduct "involve sensitive and highly personal facts"); *Doe v. Purdue*, 321 F.R.D. 339, 342 (N.D. Ind. 2017) (stating that "this litigation requires the disclosure of 'information of the utmost intimacy,' . . . including information regarding Jane Doe's allegations of sexual misconduct"); *Doe v. Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 593 (E.D. Va. 2016) (stating that "the litigation here focuses on 'a matter of sensitive and highly personal nature'").

Fortunately, Jane is now able to live a drastically different life. However, inherent in publicly categorizing Jane as a survivor of rape and sexual assault in a detention center is the

revelation that Jane as a federal detainee was subject to such heinous acts. While it is certainly misguided, a great deal of stigma and scrutiny follow such a disclosure not just to the sexual assault, including rape, that Jane endured, but that she was in ICE detention during these acts. Detainees in ICE custody subject to removal from the United States, especially women, have been found to be denied basic human rights even though their detention is supposed to be civil and not criminal.[1] If her identity is revealed, Jane is likely to experience harm ranging from humiliation or other discrimination to physical violence.

### C. As A Survivor Of Rape, Sexual Assault And Commercial Sex Acts, Jane Is Particularly Vulnerable To The Likely Harms Of Disclosure And Disclosure Of Her Identity Would Subject Her To Other Harms Including The Harms Being Litigated.

Jane is particularly vulnerable to the harms inherent in disclosure, not only in her fear of retaliation, but given her repeated past victimization. Jane stands to suffer if her identity is released as a result of her seeking to hold those who allowed her exploitation accountable. In *Doe v. Stegall*, the Fifth Circuit weighed the "gravity of the danger posed by the threats of retaliation … in light of the special vulnerability of [the] child-plaintiffs." 653 F.2d 180, 186 (5th Cir. 1981). Survivors of rape, sexual assault and commercial sex acts who speak openly about the offenses that they were subject to, explain that it took a lot of difficult work to reach that point. Even at the most advanced stages of recovery many survivors are not willing to go public with their story. Survivors are just barely surviving, and are therefore uniquely vulnerable. They are struggling with reliving the traumas over again through flashbacks, overwhelming intrusive and negative thoughts, feeling consumed by feelings of shame and guilt, thinking that they are living in hiding and unable to let themselves to truly be seen, and experiencing fleeting feelings

---

[1] https://www.americanprogress.org/article/immigration-detention-dangerous-womens-health-rights/ (accessed, May 22, 2023).

of dignity and respect.[2] Jane does not speak openly about her past victimization and instead tries to maintain the normal life she has worked hard to regain. Jane has taken measures to keep for identity secret. She has not revealed her identity or otherwise sought publicity in this matter, because she is not open about her past, the disclosure of her true identity can decimate her recovery and the life she has built for herself.

Furthermore, Jane fears retaliation, harassment, or other harms if identified. *See* Ex. A. "To proceed anonymously for fear of retaliation and harassment a 'plaintiff must demonstrate that . . . retaliation is not merely hypothetical but based in some real-word evidence; a simple fear is insufficient.'" *Does v. Snyder*, 2012 WL 1344412 (E.D. Mich. April 18, 2012). Where a moving party evidences anticipated psychological damage if her identity is disclosed, "courts generally find a risk of retaliatory harm." *Doe v. Sessions*, No. CV 18-0004 (RC), 2018 WL 4637014, at *4 (D.D.C. Sept. 27, 2018); *Doe v. Cabrera*, 307 F.R.D. 1, 7 (D.D.C. 2014) ("[P]ublic disclosure of the plaintiff's true identity is very likely to result in psychological trauma."). "Were the Court to force the plaintiff to reveal her identity, [it] would risk undermining the psychological treatment the plaintiff has already undergone since the alleged incident and potentially retard the progress the plaintiff has made." *Id.*; *E.E.O.C. v. Spoa, LLC*, 2013 WL 5634337, at *3 (D. Md. Oct. 15, 2013) (holding public disclosure of plaintiff's legal name in sexual harassment suit would "pose[] needless risk of mental harm").

Here, Jane fears retaliation and reputational harm if her identity is known. *See* Ex. A, ¶¶ 30, 32.  Thus, Jane's public identification would needlessly interfere with her efforts to process, cope with, and recover from the conduct described in the Complaint. *Id*. at ¶ 31.  The risk of

---

[2] Courtney E. Ahrens, Being Silenced: *The Impact of Negative Social Reactions on the Disclosure of Rape*, American Journal of Community Psychology, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1705531/ (accessed, May 22, 2023)

9

further emotional harm to Jane strongly weighs in favor of shielding her identity from public disclosure. If Jane must litigate this case using her real name, not only is there a high probability that her reputations may be significantly harmed, but also there is a great risk that her future employment prospects will be harmed and that her families could suffer severe emotional distress. *See* Ex. A., at ¶¶ 32-33. Survivors of rape and sexual assault are especially vulnerable in the current age of technology wherein every opinion waged is an opinion heard. To subject Jane to such unsolicited feedback, when all she seeks from the instant litigation is to come a step closer to being made whole again, is cruel and unduly burdensome.

Jane also has a significant interest in maintaining her privacy and in avoiding any public association between herself and the Defendants she believes are responsible for what happened to her. *Id*. at ¶ 29. The insidiousness of the offense of rape, sexual assault and commercial sex acts is that the abusers steal from the victims their sense of privacy, autonomy, and normalcy. A litigation pursued to recover for constitutional violations, including the Trafficking Victims Protection Act ("TVPA"), such as this one, is an important step for survivors to recover what was taken from them. To demand that these survivors publicly disclose their identity and their history in order to pursue a legal opportunity statutorily provided to them specifically as victims of sex trafficking only continues to harm them. To require that Jane disclose her identity as woman who has been raped, sexual assaulted, retaliated against, tortured and deprived of basic human rights only serves to again deprive her of privacy, autonomy, and normalcy.

> **D. There Is An Atypically Weak Public Interest In Knowing Jane's Identity, Allowing Her Privacy Rights To Outweigh The Presumption Of Openness In Judicial Proceedings.**

"The equation linking the public's right to attend trials and the public's right to know the identity of the parties is not perfectly symmetrical." *Stegall*, 653 F. 2d 180 at 185 (5th Cir. 1981)

"The public right to scrutinize governmental functioning, is not so completely impaired by a grant of anonymity to a party as it is by closure of the trial itself, as the assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name." *Richmond Newspapers, Inc. v. Virginia*, 448 US 555 (1980). The public interest is not harmed by allowing Jane to proceed anonymously, and the interest itself is an atypically weak one. While the presumptive openness of proceedings is a cornerstone of the American legal system, there is a greater interest in affording victimized plaintiffs such as Jane their day in court without the bullying of those who hope to deter her litigation through the force of identification. *See Doe v. Del Rio*, 241 F.R.D. 154, 157 (S.D.N.Y. 2006). The enforcement of federal sex trafficking laws benefits the public, and the identification of the individual plaintiffs does little, if not nothing, to further community welfare. The particular identity of Roe in *Roe v. Wade* has little bearing on the nature of the dispute or the merits of the case.

Instead, the greater public interest would be significantly harmed if identifying Jane, and other victims like her looking to pursue this cause of action provided by the TVPA, resulted in an overall chilling effect upon litigation involving commercial sex acts. Measures that may have a chilling effect on a party's willingness to litigate "violations of statutes are generally considered against public policy." *See Advanced Textile*, 214 F. 3d at 1073. Denying survivors anonymity in the appropriate circumstances – such as here – would only further allow the offenders to continue without consequence of civil remedy.

> **E. There Is An Atypically Weak Public Interest In Knowing Jane's Identity, Allowing Jane's Privacy Rights To Outweigh The Presumption Of Openness In Judicial Proceedings.**

Defendants suffer no prejudice from Jane's anonymity—Defendants and this Court will be provided with Jane's personal identifying information on a confidential basis and are not

11

otherwise prejudiced by her public anonymity in this Action. *See, e.g.*, *S.Y. v. Choice Hotels Int'l, Inc.*, No. 2:20-CV-602-FTM-29MRM, 2021 U.S. Dist. LEXIS 174121, 2021 WL 4167677, at *2 (M.D. Fla. Sept. 14, 2021) (finding there was little risk of prejudice to defendants from allowing the use of a pseudonym in pretrial public filings); *A. D. v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-cv-00120, 2020 WL 5269758, at *2 (E.D. Va. Mar. 20, 2020) ("There is very little risk of prejudice to Defendant in allowing Plaintiff to proceed under pseudonym [because] Plaintiff 'is willing to provide her [identity] to the Defendant.'"). Jane's willingness to disclose her identity to this Court and Defendants for purposes of investigation lowers the severity of her anonymity in this Action.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff Jane Doe respectfully requests that this Honorable Court grant this Motion. The totality of the circumstances of this case, including the sensitive nature of the issues alleged in the Complaint, the potential risk of harm to Jane, the minimal risk of unfair prejudice to the Defendants, and the public's access to all relevant information on the docket, warrant granting the instant Motion to allow Jane Doe to proceed under a pseudonym as to pretrial public filings.

Dated: May 22, 2023                                Respectfully Submitted,

                                                   */s/ James C. Poindexter*

                                                   Barbara J. Hart *(pro hac vice forthcoming)*
                                                   **GRANT & EISENHOFER P.A.**
                                                   485 Lexington Ave, 29th Floor
                                                   New York, NY 10017
                                                   Tel: (646) 722-8512
                                                   bhart@gelaw.com

                                                   Steven A. Medina (*pro hac vice forthcoming*)
                                                   Samuel Mukiibi (*pro hac vice forthcoming*)
                                                   **GRANT & EISENHOFER P.A.**

123 Justison Street, 7th Floor
Wilmington, DE 19801
Tel: (302) 622-7086
smedina@gelaw.com
smukiibi@gelaw.com

James C. Poindexter
**DELEGAL & POINDEXTER, P.A.**
424 East Monroe Street,
Jacksonville, FL 32202
Tel: (904) 633-5000
james@delegal.net

*Attorneys for Plaintiff, Jane Doe*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of MOTION OF PLAINTIFF JANE DOE TO PROCEED UNDER PSEUDONYM was filed and served via First Class Mail on the following:

Baker County
C/o Florida Department of
Financial Services
200 E Gaines St,
Tallahassee, FL 32301

Baker County Corrections
Management Corporation
c/o Chairman Sharon Padgett
1 Sheriffs Office Drive
Macclenny, FL 32063-8833

Sharon Padgett
Chairman, Baker County
1 Sheriff's Office Drive
Macclenny, FL 32063

Evelyn Blue
Captain, Corrections Division,
Baker County
1 Sheriff's Office Drive
Macclenny, FL 32063

Peyton Prescott
Sheriff's Deputy, Baker County
1 Sheriff's Office Drive
Macclenny, FL 32063

United States
c/o Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Scotty Rhoden
Sheriff, Baker County
1 Sheriff's Office Drive
Macclenny, FL 32063

Randy Crews
Undersheriff, Baker County
1 Sheriff's Office Drive
Macclenny, FL 32063

Brian Louis Robinson
3697 Mindy Ashley LN
Jacksonville, FL 32218-2965

James Messer
Lieutenant, Baker County
1 Sheriff's Office Drive
Macclenny, FL 32063

Cardell C. Smith
Jacksonville ICE Field Office
13077 Veveras Drive
Jacksonville, FL 32258

By: _/s/ James C. Poindexter_
James C. Poindexter

Dated: May 22, 2023