# UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF FLORIDA

# JACKSONVILLE DIVISION

| | |
|---|---|
| JANE DOE, a pseudonym, | |
| Plaintiff, | |
| v. | |
| BAKER COUNTY, BAKER COUNTY CORRECTIONS MANAGEMENT CORPORATION, SCOTT RHODEN, RANDY CREWS, JAMES MESSER, PEYTON PRESCOTT, BRIAN LOUIS ROBINSON, ASSAILANT ROES 1-X. CARDELL C. SMITH and UNITED STATES, | 3:23-cv-00609-CRK-LLL |
| Defendants. | |

## INTRODUCTION

Plaintiff Ms. Jane Doe ("Ms. Doe") commenced this action against several Defendants in connection with their actions leading to her "rape, sexual assault, battery, torture, retaliation, and commercial sex trafficking" while at Baker County Detention Center ("BCDC"). Second Am. Compl., May 6, 2024, ECF No. 79 ("SAC"). Before the Court are two motions to dismiss claims in Ms. Doe's SAC. First, Sheriff Scotty Rhoden in his official capacity as the Sherriff of the Baker County Sherriff's Office ("Sheriff Rhoden"), and Baker County Corrections Management Corporation

("BCCMC") seek to dismiss Ms. Doe's claims of (1) negligence, (2) violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), and (3) violations under 42 U.S.C. § 1983.  Defs. Sheriff Rhoden and BCCMC's Mot. to Dismiss SAC, Jun. 11, 2024, ECF No. 90 ("Defs. Sheriff Rhoden & BCCMC's MTD").  Second, the Board of County Commissioners of Baker County ("Baker County") moves to dismiss the SAC claims of violations of the TVPRA and 42 U.S.C. § 1983.  Def. Baker Cnty's Mot. to Dismiss SAC and Memo. of Law, Jun. 6, 2024, ECF No. 86 ("Def. Baker Cnty. MTD").

## BACKGROUND[1]

In 2018, BCCMC entered into an Inmate Housing and Care Agreement ("IHCA") with Baker County,[2] to arrange for the detention and care of "persons awaiting trial in state court or sentenced to serve county jail time in Baker County."[3]

---

[1] The Background is taken from Ms. Doe's Second Amended Complaint, see SAC, and the documents attached to the SAC, including the Inmate Housing and Care Agreement ("IHCA"), Operation, Management, and Maintenance Agreement ("OMMA"), the 11062.2: Sexual Abuse and Assault Prevention and Intervention ("ICE SAAPI Directive"), and the Solitary Confinement Directive.  On a motion to dismiss, the court considers the complaint and documents it incorporates, and any matters the court decides to judicially notice.  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  The Court assumes the well-pled allegations to be true for the purpose of this Opinion and Order.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Financial Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007).

[2] Throughout the SAC, Ms. Doe refers to the Baker County Sherriff's Office as both the BCSO and the BSCO.  See generally SAC.  The Court understands the references to BSCO to mean the BCSO, and for both of those terms to refer to Sherriff Rhoden, sued in his official capacity.

[3] Ms. Doe refers to the IHCA agreement as being between the BCSO, i.e., Sherriff Rhoden, and the BCCMC.  However, the actual agreement indicates that it is an agreement between Baker County and the BCCMC.  IHCA at 1.

3:23-cv-00609-CRK-LLL

Inmate Housing and Care Agreement at Art I(A), May 6, 2024, ECF No. 79-1 ("IHCA"). Under the IHCA, BCCMC would certify to Baker County that any employees were appropriately screened. IHCA at Art 6(A). BCCMC maintained an Operation, Management, and Maintenance Agreement with the Baker County Sheriff's Office ("BCSO").[4] See Operation, Management, and Maintenance Agreement, May 6, 2024, ECF No. 79-2 ("OMMA").[5] Under the OMMA, BCCMC authorized Sheriff Rhoden to detain, house and control prisoners at BCDC. SAC at ¶ 31. Sheriff Rhoden was paid a management fee by BCCMC. Id. at ¶ 33.

BCCMC maintained unlimited access to BCDC, had office space at BCDC, and maintained the right to inspect the facility. SAC at ¶¶ 36—37. Defendant BCCMC supervised the Sheriff Deputies of the BCSO at the BCDC, as required by the OMMA. Id. at ¶ 4. Revenue collected by Sheriff Rhoden belonged to BCCMC. Id. at ¶ 38. There had been at least one prior sexual assault of an inmate at BCDC before Ms. Doe's assault. Id. at ¶ 100. In 2014, a BCSO Deputy, Tarrece Darnell Givens ("Givens"), was convicted of three counts of sexual abuse for having made an inappropriate sexual advance, and ultimately sexually assaulting a female detainee over several days at BCDC. Id. at ¶¶ 101—03. Givens had committed these actions after leading the victim to an area of BCDC lacking security cameras. Id. at ¶ 102.

---

[4] The OMMA was previously entered into by the Baker Correctional Department Corporation and the BCSO, but that agreement was assigned to the BCCMC when the BCCMC purchased the Baker Correctional Department Corporation. OMMA at 1.

[5] Both the IHCA and the OMMA were attached to the complaint and therefore may be considered by the Court at this stage. Financial Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007).

3:23-cv-00609-CRK-LLL

The BCSO 2019 Prison Rape Elimination Act Annual Statistical Report identified the need for additional cameras.  Id. at ¶ 106.  At the time of Ms. Doe's sexual assault, no additional cameras were installed.  Id. at ¶ 108.

BCDC was however equipped with a monitoring system, specifically a Radio Frequency Identification (RFID) system, known as "Guardian RFID," which tracked the location of detainees and BCSO staff.  Id. at ¶ 110.  Lieutenant James Messer ("Lieutenant Messer"), "was responsible for implementing this security check system but failed to ensure its proper functioning."  Id. at ¶ 111.  The RFID system was defective, allowing detention officers to bypass its functionality.  Id. at ¶¶ 112—14.

At all relevant times Sherriff Rhoden was the Sheriff at the BCSO and the chief custodian of BCDC.  Id. at ¶ 5.  At all relevant times, Baker County funded the BCSO.  Compl. at ¶ 5.  Deputy Randy Crews ("Deputy Crews") was the undersheriff of the BCSO.  Id. at ¶ 6.  Lieutenant Messer was responsible for overseeing detainees in BCDC, including Ms. Doe.  Id. at ¶ 7.  At all times material to this Complaint, Defendant Peyton Prescott ("Deputy Prescott") was a Deputy Sheriff of the BCSO, responsible for overseeing detainees in BCDC, including Ms. Doe.  Id. at ¶ 8.  At all times material to this Complaint, Defendant Brian L. Robinson ("Defendant Robinson") was a Deputy Sheriff of the BCSO, responsible for overseeing detainees in BCDC, including Ms. Doe.  Id. at ¶ 9.

Ms. Doe arrived at BCDC on February 25, 2019. Id. at ¶ 120. She was assigned an ICE immigration officer,[6] who reviewed her case and informed her that deportation was unlikely, but she would still have to appear before a judge. Id. at ¶ 174. The ICE officer explained his role as well as how Ms. Doe could report conditions at BCDC to ICE. Id. at ¶¶ 175—76.

After arriving at BCDC, Ms. Doe developed a sinus infection but was not treated by BCDC staff or any ICE officer. Id. at ¶¶ 178—79. At Ms. Doe's first immigration hearing, upon seeing the severity of her sinus infection, the judge requested medical attention for Ms. Doe, delaying her immigration petition. Id. at ¶ 180.

While at BCDC, Defendant Robinson assaulted Ms. Doe on multiple occasions. Id. at ¶¶ 122—31. Specifically, he digitally penetrated her on three separate occasions, and on one occasion he penetrated vaginally with his penis in a janitor's closet of the law library where no cameras were installed. Id. at ¶¶ 108, 122—28. Ms. Doe alleges that Defendant Robinson sexually assaulted, coerced, and intimidated her using his authority as a BCDC employee. Id. at ¶¶ 123, 127.

After being raped on May 25, 2019, Ms. Doe reported the rape and all prior acts to ICE during an immigration hearing. Id. at ¶ 147. ICE agents did not afford Ms. Doe the proper medical attention, ignoring her written complaints submitted through ICE's own system, as well as in person during ICE visits to BCDC. Id. at ¶¶

---

[6] The ICE officer Ms. Doe alleges she was assigned is not a party to this case. See SAC at ¶ 174.

184—87.  Ms. Doe submitted reports regarding her medical needs, faulty toilets, voyeurism, issues with the showers, conflicts with other detainees, and overall poor living conditions; none of which were addressed by the ICE officer assigned to her case or any other ICE officers at BCDC.  Id. at ¶¶ 189—90.  After reporting the rape and prior assaults, Ms. Doe was placed in solitary confinement until her release on July 30, 2019.  Id. at ¶ 148.

After Ms. Doe was placed into solitary confinement, Defendant Assailant Roes 1-X ("Assailant Defendants"),[7] which includes Lieutenant Messer and Deputy Prescott, denied Ms. Doe necessities including food, water, bedding, freedom of movement, and the ability to shower freely.  Id. at ¶ 149.  Further, Assailant Defendants locked Ms. Doe in the law library, the location of her May 25, 2019, rape, and ignored her pleas for medical assistance.  Id. at ¶¶ 150—52.  Assailant Defendants threatened Ms. Doe with sexual assault near the showers, falsified her shower records, and instructed kitchen staff to tamper with her food.  Id. at ¶¶ 153—55.  Assailant Defendants consistently shook a pepper spray can at Ms. Doe's cell door, limited her access to make phone calls or send emails to her family and attorneys, prevented repairs to her cell toilet, and denied her toilet paper and feminine pads.  Id. at ¶¶ 156—59. Assailant Defendants attempted to coerce Ms. Doe into recanting her accusation of rape against Defendant Robinson, repeatedly

---

[7] The terms "Assailant Roes," "Assailant Does," and "Assailant Defendants" seem to be used interchangeably throughout Ms. Doe's SAC.  See generally SAC.  Ms. Doe also includes Lieutenant Messer and Deputy Prescott under the umbrella of Assailant Does, even though they are named parties in the case caption.

pressuring her into signing papers recanting the report of rape.  Id. at ¶¶ 161—66. Lastly, Assailant Defendants attempted to cut off assistance Ms. Doe received from other BCDC employees.  Id. at ¶¶ 170—73.  Specifically, Ms. Doe was receiving help from two female deputies who assisted her in obtaining food, shower access, and commissary access.  Id. at ¶ 171.  Eventually, one of the deputies assisting Ms. Doe explained that she could no longer assist Ms. Doe due to fear of losing her job, and then the two deputies were reassigned to different areas of the facility.  Id. at ¶¶ 172—73.  After making various reports and inquiries to ICE, Ms. Doe met with the ICE officer assigned to her case and he acknowledged she was wrongfully placed in solitary confinement, but that he was unable to intervene on her behalf due to directions from his boss, Cardell C. Smith ("Defendant Smith").[8]  Id. at ¶¶ 197—98.

Ms. Doe filed her complaint in this action on May 19, 2023.  See generally Compl., May 19, 2023, ECF No. 1.  She subsequently amended her complaint twice, filing the SAC, in dispute here, on May 6, 2024.  See generally Am. Compl., Aug. 11, 2023, ECF No. 32; see also SAC.  Defendant Baker County filed its motion to dismiss for failure to state a claim on Jun. 6, 2024.  See generally Def. Baker Cnty's Mot. to Dismiss SAC and Memo. of Law, Jun. 6, 2024, ECF No. 86 ("Def. Baker Cnty. MTD"). Ms. Doe filed her response opposing Def. Baker Cnty's MTD on Jul. 16, 2024.  See generally Resp. Opp'n [Def. Baker Cnty's MTD SAC], Jul. 16, 2024, ECF No. 98 ("Pl. Resp. [Def. Baker Cnty. MTD]").  Defendant Baker County filed its reply in support

---

[8] Defendant Smith was dismissed from this case on July 18, 2024.  See Order, Jul. 18, 2024, ECF No. 100.

3:23-cv-00609-CRK-LLL

of its motion to dismiss on Jul. 30, 2024.  See generally Def. Baker Cnty's Reply [Pl. Resp. Opp'n Baker Cnty's MTD SAC], Jul. 30, 2024, ECF No. 106 ("Def. Baker Cnty. Reply").  Defendants Sheriff Rhoden and BCCMC filed their motion to dismiss for impermissible shotgun pleading and failure to state a claim on June 11, 2024.  Defs. Sheriff Rhoden and BCCMC's Mot. to Dismiss SAC, Jun. 11, 2024, ECF No. 90 ("Defs. Sherriff Rhoden & BCCMC's MTD").  Ms. Doe filed her response opposing Defs. Sherriff Rhoden and BCCMC's MTD on Jul. 16, 2024.  See generally Resp. Opp'n [Defs. Sherriff Rhoden & BCCMC's] Mot. to Dismiss SAC, Jul. 16, 2024, ECF No. 96 ("Pl. Resp. [Defs. Sherriff Rhoden & BCCMC's MTD]").  Sheriff Rhoden and BCCMC filed their reply in support of their motion to dismiss on Jul. 30, 2024.  See generally Defs. Sherriff Rhoden and BCCMC's Reply [Pl. Resp. Defs. Sheriff Rhoden and BCCMC's MTD SAC], Jul. 30, 2024, ECF No. 104 ("Defs. Sherriff Rhoden & BCCMC's Reply").

## JURISDICTION

This Court has jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  This Court has supplemental jurisdiction "over all claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367.  When a state claim attaches to a federal claim through supplemental jurisdiction, the Court is "constitutionally obligated to apply state laws to state claims."  Felder v. Casey, 487 U.S. 131, 151 (1988).

OPINION AND ORDER - 8

3:23-cv-00609-CRK-LLL

# DISCUSSION

## I.    The Sufficiency of the Pleadings

Defendants Sheriff Rhoden, BCCMC, and Baker County argue Ms. Doe's SAC should be dismissed because it fails to identify which Defendants are responsible for which acts.  Defs. Sheriff Rhoden & BCCMC's MTD at 4—6; Def. Baker Cnty. MTD at 6—8.  Ms. Doe responds that Sheriff Rhoden, BCCMC, and Defendant Baker County's defenses are baseless as her complaint delineates specific allegations against all three Defendants.  Pl. Resp. [Defs. Sherriff Rhoden & BCCMC's MTD] at 2—3; Pl. Resp. [Def. Baker Cnty. MTD] at 2—3.

Rule 8(a)(2) and 10(b) require a pleading to present the claims in a manner which allows the defendant to discern each claim and respond accordingly, and the court to determine whether the pleader has stated a claim upon which relief can be granted.  Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1320 (11th Cir. 2015) (internal citations omitted).

Rule 8(a)(2) requires:

(2) a short and plain statement of the claim showing that the pleader is entitled to relief;

Fed. R. Civ. P. 8(a)(2).

Rule 10(b) requires:

(b) Paragraphs; Separate Statements. A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence--and each defense other than a denial--must be stated in a separate count or defense.

3:23-cv-00609-CRK-LLL

Fed. R. Civ. P. 10(b).  Generally, courts do not require exactness in pleadings, rather they enquire into whether the pleading provides the defendants "'notice of the specific claims against them and the factual allegations that support those claims.'"  <u>Charles v. GEO Grp. Inc.</u>, No. 22-13891, 2024 WL 1619911, at *2 (11th Cir. 2024) (quoting <u>Weiland</u>, 792 F.3d at 1325).  For multiple defendants, plaintiffs need not distinguish between those defendants where two defendants operate together as a single entity. <u>Charles</u>, 2024 WL 1619911, at *4.

Here, Ms. Doe's allegations in the SAC give notice of the specific claims and factual allegations against each Defendant.  Ms. Doe alleges that BCCMC failed to remediate the systemic failures with security at BCDC, SAC at ¶ 115, and that it had an obligation to do so.  <u>Id.</u> at ¶¶ 227—28.  She alleges that BCCMC had a duty to keep the premises safe for detainees and that it did not do so.  <u>Id.</u> at ¶¶ 224—27.  She also alleges that BCCMC knew of the security flaws, evidenced by the BCSO's request for funding to implement additional security measures, <u>Id.</u> at ¶¶ 229—31, and that the failure to remedy these security flaws was the direct and proximate cause of Ms. Doe's sexual assault and damages.  <u>Id.</u> at ¶¶ 234—35.  She further alleges that BCCMC participated in the venture that is BCDC, <u>Id.</u> at ¶ 306, and received value in the form of the ICE contract, sufficient to establish venture liability theory under the TVPRA.  <u>Id.</u> at ¶¶ 310—13.  Lastly, Ms. Doe alleges that there was a policy of inadequate supervision by Sheriff Rhoden, sanctioned by BCCMC to violate her rights under Section 1983.  <u>Id.</u> at ¶¶ 346—47.

Ms. Doe alleges that Sheriff Rhoden failed to remediate the specific security weaknesses at BCDC, Id. at ¶¶ 108—09, 115, and that he failed to adequately hire, train, and supervise BCSO employees.  Id. at ¶ 220.  She further alleges that Sherriff Rhoden was aware of the retaliatory conduct of the BCSO deputies.  Id. at ¶ 160.

Ms. Doe alleges that Baker County participated in the venture that is BCDC, Id. at ¶ 306, and benefitted through the employment of Defendant Robinson, Deputy Crews, and Deputy Prescott, and Lieutenant Messer, as well as through the ICE contract.  Id. at ¶¶ 310—13.  Further, she alleges that Baker County had a de facto policy of inadequately supervising and training BCSO staff, which led to violations of her rights under Section 1983.  Id. at ¶¶ 346—47.  Thus, Ms. Doe's claims against Sheriff Rhoden, BCCMC, and Baker County meet the minimum pleading requirements of Rules 8(a)(2) and 10(b).

## II.    Failure to State a Claim

Defendants Sherriff Rhoden and BCCMC argue Ms. Doe has failed to state a claim for negligence against them.  Defs. Sherriff Rhoden & BCCMC's MTD at 6—10.  Defendants Sherriff Rhoden, BCCMC, and Baker County argue Ms. Doe has failed to state a claim for violations of the TVPRA or violations under 42 U.S.C. § 1983.  Defs. Sherriff Rhoden & BCCMC's MTD at 4—16; Def. Baker Cnty. MTD at 3—16.  Ms. Doe responds (1) she has properly stated a claim for negligence against Sheriff Rhoden and BCCMC, (2) Sheriff Rhoden, BCCMC, and Baker County are all liable under the TVPRA, and (3) Sheriff Rhoden, BCCMC, and Baker County are all liable

under 42 U.S.C. § 1983.  Pl. Resp. [Defs. Sherriff Rhoden & BCCMC's MTD] at 2—3;
Pl. Resp. [Def. Baker Cnty. MTD] at 2—3.

### A.    Negligence

Defendants, Sherriff Rhoden and BCCMC argue the claims against them for
negligence are vague, and in any event precluded as stemming from discretionary
governmental acts under Florida law.  Defs. Sherriff Rhoden & BCCMC's MTD at 7—
9 (citing Fla. Stat. § 768.28(1)).  Further, Sheriff Rhoden argues the SAC fails to
identify with specificity the requisite breaches of duties owed to Ms. Doe in order to
state a claim for vicarious liability.  Defs. Sherriff Rhoden & BCCMC's MTD at 9.
BCCMC argues that it is a distinct entity from the BCSO and there are no facts
relating to any act or omission of BCCMC in the SAC.  Defs. Sherriff Rhoden &
BCCMC's MTD at 9—10.  Ms. Doe responds that she has alleged operational level
negligence against Sheriff Rhoden, and the question of whether conduct is
operational or discretionary cannot be decided on a motion to dismiss.  Pl. Resp. [Defs.
Sheriff Rhoden & BCCMC's MTD] at 8.  Ms. Doe also argues that she has set forth
claims for negligent hiring, retention, and supervision, as well as a claim for vicarious
liability.  Pl. Resp. [Def. Baker Cnty. MTD] at 10—11.  As to BCCMC, Ms. Doe
contends that Florida law provides a cause of action against BCCMC as a property
owner of BCDC.  Pl. Resp. [Defs. Sherriff Rhoden & BCCMC's MTD] at 11—13.  Ms.
Doe argues that under the OMMA, "BCCMC authorized Defendant Rhoden to
manage BCDC, ensuring compliance with laws and the OMMA."  Pl. Resp. [Defs.
Sheriff Rhoden & BCCMC's MTD] at 12 (citing SAC at ¶¶ 31—32).

### 1.    Sheriff Rhoden

Ms. Doe alleges claims against Sheriff Rhoden for (1) vicarious liability, (2) negligent retention and hiring, and (3) negligent supervision.  SAC at ¶ 220.  She also states that she brings her claim against Sherriff Rhoden in both his individual and personal capacity.  Sheriff Rhoden responds that (1) the allegations fail to give him notice of the basis for the claim, (2) even if Sheriff Rhoden did owe a duty to Ms. Doe, sovereign immunity bars suit against him, (3) if Ms. Doe's allegations are brought under a theory of vicarious liability, she has not pled facts beyond conclusory statements to support that claim, and (4) the SAC lacks any facts that support a claim of negligent hiring, retention or supervision.  Defs. Sheriff Rhoden & BCCMC's MTD at 6—9.

A court may dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12 (b)(6).  A plaintiff must provide the grounds of her entitlement to relief with more than "labels and conclusions," and "a formulaic recitation of a cause of action's elements will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 677—78 (2009) (quoting Twombly, 550 U.S. at 570).  The plaintiff "must plead sufficient facts" for the court to draw the "reasonable inference" that the defendant is "liable for the misconduct alleged."  Phoenix Ent. Partners, LLC v. Casey Rd. Food & Beverage, LLC, 728 F. App'x 910, 912 (11th Cir. 2018) (citing Iqbal, 556 U.S. at 678).

Generally, an employer can be held vicariously liable for the tortious or criminal acts of an employee, committed during the course of the employment, done to further a purpose or interest of the employer. <u>Iglesia Cristiana La Casa Del Senor, Inc. v. L.M.</u>, 783 So. 2d 353, 356 (Fla. Dist. Ct. App. 2001). An employee's conduct is within the scope of his employment when (1) the conduct is the type for which the employee was hired, (2) the conduct occurs substantially within the time and space where the employee performs her work, and (3) the conduct is undertook, in part, to serve the employer. <u>Doe v. St. John's Episcopal Par. Day Sch., Inc.</u>, 997 F. Supp. 2d 1279, 1288 (M.D. Fla. 2014) (quoting <u>Iglesia Cristiana La Casa Del Senor, Inc.</u>, 783 So.2d at 357). Sexual assault is generally not considered in the scope of employment; however, where an employee accused of sexual assault was assisted in committing the tort by the existence of the employee-employer relationship, vicarious liability may attach. <u>St. John's Episcopal Par. Day Sch., Inc.</u>, 997 F. Supp. 2d at 1288 (internal citations omitted).

Florida courts have also recognized "'a duty to exercise reasonable care in hiring and retaining safe and competent employees.'" <u>Aspen Am. Ins. Co. v. Landstar Ranger, Inc.</u>, 65 F.4th 1261, 1270 (11th Cir. 2023) (quoting <u>Garcia v. Duffy</u>, 492 So. 2d 435, 439 (Fla. Dist. Ct. App. 1986)). The question of liability depends on whether, knowing what the employer knows or should have known about the employee, it was reasonable for the employer to allow the employee to continue working. <u>Aspen Am. Ins. Co.</u>, 65 F.4th at 1269—70 (quoting <u>Tallahassee Furniture Co. v. Harrison</u>, 583 So. 2d 744, 751 (Fla. Dist. Ct. App. 1991)).

OPINION AND ORDER - 14

Florida recognizes the tort of negligent supervision. <u>Mallory v. O'Neil</u>, 69 So.2d 313, 315 (Fla. 1954). To plead a claim for negligent supervision, the plaintiff must allege (1) the employer was aware, or should have become aware, of issues with an employee's fitness, and (2) the employer failed to take action to correct, remove, or discharge the employee. <u>Matthews v. City of Gulfport</u>, 72 F. Supp. 2d 1328, 1340 (M.D. Fla. 1999).

The State of Florida and its municipalities are generally immune from tort liability. Fla. Const., Art. X, § 13. Florida has waived its immunity from tort liability when a private individual would be liable to the claimant under Florida tort law. Fla. Stat. § 768.28(1), (5)(a). However, discretionary governmental acts retain their sovereign immunity. <u>Lewis v. City of St. Petersburg</u>, 260 F.3d 1260, 1262 (11th Cir. 2001). A discretionary act is one that involves an exercise of executive or legislative power that, if the court were to intervene, it would "entangle" itself in questions of policy and planning. <u>Vaden v. Campbell</u>, No. 409CV12-RH/WCS, 2009 WL 1919474, at *3 (N.D. Fla. 2009). Nonetheless claims of negligent supervision are not barred by sovereign immunity, because a question about what the Sheriff knew or should have known is not a question which would entangle the court in questions of policy and planning. <u>See</u> <u>Vaden</u>, 2009 WL 1919474, at *4 (discussing what the Sheriff knew or should have known about the deputy sheriff's behavior is not a fundamental policy question, and thus not barred by sovereign immunity). Finally, in order to sue a defendant in his individual capacity, the plaintiff must plead facts that the defendant

3:23-cv-00609-CRK-LLL

"personally participated" in the alleged wrongdoing.   Hearth, Inc. v. Dep't of Pub. Welfare, 617 F.2d 381, 382 (5th Cir. 1980).

Here, Ms. Doe has pled sufficient facts to state a claim against Sheriff Rhoden in his official capacity for vicarious liability.[9]  Ms. Doe alleges that Sheriff Rhoden is the chief custodian of BCDC.  SAC at ¶ 5.  She alleges Sheriff Rhoden oversaw BCDC to ensure it was run in accordance with law and the OMMA.  Id. at ¶ 32.  She alleges Defendant Robinson used his authority and power as a guard at BCDC to sexually assault her on the premises of BCDC.  Id. at ¶¶ 123, 127.  Because employers may be held vicariously liable for sexual assault when the employee is empowered by reason of the employer/employee relationship, Ms. Doe has pled sufficient facts to state a claim against Sheriff Rhoden for the actions of Defendant Robinson.  Id. at ¶¶ 127—31; St. John's Episcopal Par. Day Sch., Inc., 997 F. Supp. 2d at 1289 (holding that Plaintiff's claims survive the motion to dismiss stage because Defendants had the opportunity to abuse their victim due to their positions of authority).

However, Ms. Doe has not alleged any facts that would support a claim of negligent hiring or retention or supervision against Sheriff Rhoden.  An employer

---

[9] Ms. Doe claims she has alleged operational level negligence against Sheriff Rhoden, and in any event the question of whether conduct is operational or discretionary cannot be decided on a motion to dismiss.  Pl. Resp. [Defs. Sheriff Rhoden & BCCMC's MTD] at 8.  However, Sheriff Rhoden does not claim immunity for vicarious liability, instead he argues that any alleged failures by Sheriff Rhoden are made in "pure conclusory form" and should be dismissed.  Defs. Sheriff Rhoden & BCCMC's MTD at 9.  In any event, at this stage Ms. Doe has sufficiently pled facts which would support a claim of vicarious liability that would not be precluded by statutory immunity.  See Fla. Const., Art. X, § 13; Fla. Stat. § 768.28.

OPINION AND ORDER - 16

3:23-cv-00609-CRK-LLL

must have notice of the employee's unfitness to continue working.  See, e.g., Matthews, 72 F. Supp. 2d at 1340 (discussing that liability for negligent retention and supervision attaches when an employer "knows or should know about the offending employee's unfitness," and fails to take "appropriate action").  Ms. Doe asserts no facts, which if proven could plausibly establish that Sherriff Rhoden had notice with respect to any issue with an employee's fitness.  Aspen Am. Ins. Co., 65 F.4th at 1270 (explaining that the question in a negligent hiring claim is whether it was reasonable for the employer to allow the employee to continue working in light of information the employer should have known about the employee). Ms. Doe pleads no facts to support a claim of negligent hiring retention or supervision against Sherriff Rhoden in his official capacity, those claims against him are dismissed without prejudice.  However, Ms. Doe has sufficiently pled a claim of vicarious liability against Sherriff Rhoden in his official capacity.

Finally, Ms. Doe alleges no facts to state a claim against Sherriff Rhoden in his individual capacity.[10]   In her complaint she says, "Plaintiff is suing Defendant Rhoden in his official and individual capacities."  SAC at ¶ 5.  She does not delineate the count against him personally as a separate count, in violation of Rule 10(b).  See Fed. R. Civ. P. 10(b).  Moreover, for a claim against a sheriff in his individually

---

[10] Ms. Doe states that Sheriff Rhoden "through his employees, agents, or servants," owed a duty to plaintiff, breached that duty, and caused Ms. Doe's injuries and damages.  SAC at ¶¶ 218—23.  She captions Count I as "Negligence" generally.  SAC at 36.   Reading her pleadings to do justice, see Fed. R. Civ. P. 8(e), her factual allegations in Count I can only arguably be viewed as attempting to set forth claims against Sheriff Rhoden in his official capacity for vicarious liability, negligent hiring and retention, and negligent supervision.

**3:23-cv-00609-CRK-LLL**

capacity, she would need to allege that Sheriff Rhoden "personally participated" in the alleged wrongdoing. See Hearth, Inc., 617 F.2d at 382. Because Ms. Doe pleads no facts to support any claim against Sherriff Rhoden in his individual capacity, the claim against him is dismissed without prejudice.

### 2.    BCCMC

To state a claim for negligence under Florida law, a plaintiff must allege (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) causation,[11] and (4) damages. Virgilio v. Ryland Grp., Inc., 680 F.3d 1329, 1339 (11th Cir. 2012) (citing Curd v. Mosaic Fertilizer, L.L.C., 39 So. 3d 1216, 1227 (Fla.2010)). Whether a duty exists is question of law, which the court determines. See Janis v. Pratt & Whitney Canada, Inc., 370 F. Supp. 2d 1226, 1229 (M.D. Fla. 2005) (citing McCain v. Fla. Power Corp., 593 So. 2d 500, 502 (Fla.1992)). A duty arises whenever an individual's act creates a foreseeable risk that harm may occur to another individual. Lamm v. State St. Bank & Tr., 749 F.3d 938, 947 (11th Cir. 2014) (internal citations omitted).[12]

---

[11] In Florida, courts follow the more likely than not standard, i.e., the defendant's negligence probably caused plaintiff's injuries. Prieto v. Total Renal Care, Inc., 843 F. App'x 218, 224 (11th Cir. 2021) (quoting Cantore v. W. Boca Med. Ctr., Inc., 254 So. 3d 256, 260 (Fla. 2018)). Proximate cause of an injury requires the harm caused by an individual's act be foreseeable. Colon v. Twitter, Inc., 14 F.4th 1213, 1224 (11th Cir. 2021) (quoting Ruiz v. Tenet Hialeah Healthsystem, Inc., 260 So. 3d 977, 982 (Fla. 2018)).

[12] The State of Florida and its municipalities are generally immune from tort liability. Fla. Const., Art. X, § 13. Florida has waived its immunity from tort liability when a private individual would be liable to the claimant under Florida tort law. Fla. Stat. § 768.21(1), (5)(a). However, the waiver of immunity will not apply if the acts by the

To plead a claim for premises liability, the plaintiff must allege all the elements of negligence, with the added element that a defendant had possession or control of the premises when the injury occurred.  Conner v. Marriott Hotel Servs., Inc., 559 F. Supp. 3d 1305, 1308 (M.D. Fla. 2021) (citing Lisanti v. City of Port Richey, 787 So. 2d 36, 37 (Fla. 2d Dist. Ct. App. 2001)).  The level of control over the land is a question of fact to be left to the jury.  See Regency Lake Apartments Assocs., Ltd. v. French, 590 So. 2d 970, 974 (Fla. Dist. Ct. App. 1991).

Under Florida law, a visitor on the property of a possessor falls into one of three categories; trespassers,[13] licensees, or invitees, which dictates the duty of care the possessor owes to the visitor.  Post v. Lunney, 261 So. 2d 146, 147 (Fla. 1972).  The Florida Supreme Court explained that licensees could include licensees by invitation,[14] as well as uninvited licensees.[15]  Wood v. Camp, 284 So. 2d 691, 695 (Fla.

---

state were discretionary governmental acts rather than operational acts.  Lewis, 260 F.3d at 1262.

[13] A trespasser is defined as "one who enters the premises of another without license, invitation, or other right, and intrudes for some definite purpose of his own, or at his convenience, or merely as an idler with no apparent purpose, other than perhaps to satisfy his curiosity."  Post v. Lunney, 261 So. 2d 146, 147 (Fla. 1972) (internal citations and quotations omitted).

[14] A licensee by invitation is either invited by an express or reasonably implied invitation, including social guests as well as business guests.  Norris v. Rodriguez, 378 So. 3d 661, 664, n.3 (Fla. Dist. Ct. App. 2023).  A possessor of land owes a licensee by invitation to duty to exercise reasonable care under the circumstances.  Wood v. Camp, 284 So. 2d 691, 695 (Fla. 1973).

[15] An uninvited licensee is (similar, although not identical to a trespasser) an individual whose presence is not desired or prohibited but instead permitted or tolerated by the possessor of land.  Norris, 378 So. 3d at 665.  The duty a possessor owes to an uninvited licensee is "a duty to refrain from wanton negligence or willful misconduct which would injure him, to refrain from intentionally exposing him to

Case 3:23-cv-00609-CRK-LLL     Document 116     Filed 03/17/25     Page 20 of 32 PageID 1249

3:23-cv-00609-CRK-LLL

1973).  Further, an invitee includes a public invitee, an individual who is invited to enter or remain on land, for a purpose that the land is open to the public for.  Norris v. Rodriguez, 378 So. 3d 661, 664—65 (Fla. Dist. Ct. App. 2023) (internal citations omitted).  A possessor of land owes a public invitee the duty to warn of any known dangers including those caused by operations, activities, or conditions and to maintain reasonably safe premises.  Id. at 665; Conner, 559 F. Supp. 3d at 1308 (citing Rocamonde v. Marshalls of Ma, Inc., 56 So. 3d 863, 865 (Fla. Dist. Ct. App. 2011)).

Other courts have categorized detainees as akin to public invitees. See, e.g., Akins v. Liberty Cnty., No. 1:10-CV-328, 2014 WL 105839, at *25 (E.D. Tex. 2014) (explaining that in Texas, "[w]hen a lawsuit is brought against a government-run prison facility, inmates are statutorily codified as licensees for the purpose of premises liability claims"); Carson v. Corr. Corp. of Am., No. 10-CV-01329-REB-BNB, 2011 WL 1656509, at *3 (D. Colo. 2011) (holding that a prisoner was an invitee of the jail in which he was housed for the purposes of his premises liability claim because he was a member of the public for which the jail was specifically designed and maintained) (collecting cases).  However, Florida has no statute discussing the classification of detainees for the purposes of premises liability and the Eleventh Circuit has not yet ruled on their status.  Nonetheless, the Court need not categorize

---

danger, and to warn him of a defect or condition known to the landowners to be dangerous when such danger is not open to ordinary observation by the licensee." Bishop v. First Nat'l Bank of Fla., Inc., 609 So. 2d 722, 725 (Fla. 5th Dist. Ct. App. 1992).

OPINION AND ORDER - 20

3:23-cv-00609-CRK-LLL

Ms. Doe as either a public invitee or an invited licensee as either requires BCCMC to have exercised reasonable care.  Norris, 378 So. 3d at 665.  Ms. Doe could not be considered either a trespasser or an uninvited licensee, i.e. an individual whose presence is not desired.  Id.

Ms. Doe has pled a claim against BCCMC for premises liability.  Thus, BCCMC would owe Ms. Doe a duty to warn of any known dangers to maintain BCDC as a reasonably safe premises.  See Norris, 378 So. 3d at 665; see also Conner, 559 F. Supp. 3d at 1308 (citing Rocamonde, 56 So. 3d at 865).  First, Ms. Doe has pled facts that plausibly allege BCCMC had control and possession of BCDC.  Specifically, she alleges that BCCMC maintained unlimited access to BCDC, maintained office space at BCDC, and managed all funds for the operation and maintenance of BCDC.  SAC at ¶¶ 36—39.

Second, Ms. Doe alleges that BCCMC knew about the need for additional security measures at BCDC and failed to act, leading to the sexual assault of Ms. Doe by Defendant Robinson.  SAC at ¶¶ 229—32.  Specifically, Ms. Doe alleges that the BCSO requested additional funding from BCCMC to hire more security staff to deter sexual abuse.  Id. at ¶ 229.  Further, Ms. Doe alleges that BCCMC's actions and inactions were the direct and proximate cause of her sexual assault as well as the damages she suffered stemming from the sexual assault, which is enough at the motion to dismiss stage to sustain her claim of premises liability against BCCMC.  Id. at ¶¶ 234—35.  Thus, Ms. Doe has stated a claim for premises liability against BCCMC.

3:23-cv-00609-CRK-LLL

### B.    TVPRA

Defendants Sheriff Rhoden, BCCMC, and Baker County all argue that Ms. Doe's pleadings fail to meet the requirements for venture liability under the TVPRA. Defs. Sherriff Rhoden & BCCMC's MTD at 10—13; Def. Baker Cnty. MTD at 8—15. Ms. Doe responds that Defendants Sheriff Rhoden, BCCMC, and Baker County all violated the TVPRA under a venture liability theory.  Pl. Resp. [Defs. Sherriff Rhoden & BCCMC's MTD] at 13—17; Pl. Resp. [Def. Baker Cnty. MTD] at 9—15.

The TVPRA provides a civil remedy for venture liability,[16] under 18 U.S.C. § 1595, where a defendant knowingly benefits from a common undertaking that forces a person to engage in a commercial sex act in violation of 18 U.S.C. § 1591.  18 U.S.C. § 1591(a); 18 U.S.C. § 1595(a); see also Doe #1 v. Red Roof Inns, Inc., 21 F.4th 714, 726 (11th Cir. 2021).  Specifically, Section 1595(a) provides:

> (a) An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) . . .

18 U.S.C. § 1595(a).  The defendant must have constructive or actual knowledge that the undertaking or enterprise violates TVPRA as to the plaintiff.  Red Roof Inns, 21 F.4th at 726; see also Ricchio v. McLean, 853 F.3d at 553.  "Knowledge" means "[a]n awareness or understanding of a fact or circumstance" or "a state of mind in which a

---

[16] Venture liability is also called beneficiary liability.  See Red Roof Inns, 21 F.4th at 726.  The TVPRA also provides a cause of action for perpetrator liability under 18 U.S.C. § 1591(a), however that form of liability is not relevant here.  See 18 U.S.C. § 1591(a).

OPINION AND ORDER - 22

3:23-cv-00609-CRK-LLL

person has no substantial doubt about the existence of a fact." <u>Knowledge</u>, Black's Law Dictionary (11th ed. 2019). There must be a commercial sex act, i.e., one that exchanges sex for anything of value. <u>Red Roof Inns</u>, 21 F.4th at 724. "Anything of value" captures both tangibles and intangibles. <u>United States v. Nilsen</u>, 967 F.2d 539, 542 (11th Cir. 1992) (discussing frequent use of the term "thing of value"); <u>Weinstein</u>, 335 F. Supp. 3d at 515 ("the remedial provision at issue, Section 1595, which permits civil actions for damages under Section 1591, requires broad interpretation"). The commercial act must be part of the common undertaking. <u>See</u> <u>Red Roof Inns, Inc.</u>, 21 F.4th at 727.

Here, Ms. Doe has not stated a claim for venture liability under the TVPRA against Sheriff Rhoden, BCCMC, or Baker County. Ms. Doe asserts that Sheriff Rhoden, BCCMC, and Baker County were incentivized to keep their contracts with ICE or face insolvency,[17] and this alone suffices as a benefit from the alleged common undertaking involving TVPRA violations at BCDC. SAC at ¶ 313. Even assuming, that the contractual relationships between BCCMC, Sheriff Rhoden, and ICE could form the basis of a common undertaking, Ms. Doe's pleadings are still insufficient. Her conclusory statements do not meet the minimum pleading standard of plausibility to establish that a commercial sex act was part of the alleged common undertaking. She only concludes, without any factual allegations, that Sheriff

---

[17] However, Baker County is not a signatory to the OMMA. <u>See</u> OMMA at 1, 21. Moreover, the IHCA which Ms. Doe attaches to her SAC, provides for payments in connection with detainees awaiting trial or sentenced to serve time in county jail and not ICE detainees. IHCA at Art. I(C).

Rhoden, BCCMC, and Baker County were incentivized to hide Ms. Doe's allegations by pre-existing contracts with ICE. See Iqbal, 556 U.S. at 678. Because Ms. Doe has not pled sufficient facts related to alleged benefits Sheriff Rhoden, BCCMC, and Baker County received for their part in any purported TVPRA violations, Count XII of the SAC is dismissed without prejudice.

###    C.    Section 1983

Sheriff Rhoden, BCCMC, and Baker County argue that Ms. Doe has failed to state a claim for liability under 42 U.S.C. § 1983 because she does not (1) identify the specific constitutional right of which she was allegedly deprived, and (2) adequately plead a policy, practice, or custom of any of the Defendants. Defs. Sheriff Rhoden & BCCMC's MTD at 13—16; Def. Baker Cnty. MTD at 15—16. Ms. Doe responds that she properly (1) alleged a violation of her constitutional rights, and (2) asserted a Monell claim against Sheriff Rhoden, BCCMC, and Baker County for their de facto policy of inadequately training and supervising BCSO employees. Pl. Resp. [Defs. Sheriff Rhoden & BCCMC's MTD] at 17—20; Pl. Resp. [Def. Baker Cnty. MTD] at 16—18.

To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (internal citations omitted). A plaintiff must begin her claim under Section 1983 by identifying a specific constitutional right

3:23-cv-00609-CRK-LLL

that has allegedly been violated.  <u>DeMartini v. Town of Gulf Stream</u>, 942 F.3d 1277, 1288 (11th Cir. 2019) (citing <u>Paez v. Mulvey</u>, 915 F.3d 1276, 1285 (11th Cir. 2019)).

The Due Process Clause of the Fourteenth Amendment protects individuals from deliberate decisions of government officials which deprive that person of life, liberty, or property.  <u>Daniels v. Williams</u>, 474 U.S. 327, 331 (1986) (internal citations omitted).  The Fourteenth Amendment provides for both procedural due process as well as substantive due process, and a violation of either may form the basis for a suit under 42 U.S.C. § 1983.[18]  <u>McKinney v. Pate</u>, 20 F.3d 1550, 1555 (11th Cir. 1994) (citing <u>Zinermon v. Burch</u>, 494 U.S. 113, 125 (1990)).  Substantive due process protects an individual's liberty interest against certain actions of the government no matter the fairness of the procedures used to implement them.  <u>Collins v. City of Harker Heights, Tex.</u>, 503 U.S. 115, 125 (1992).  Conduct by a government actor will

---

[18] Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.

OPINION AND ORDER - 25

**3:23-cv-00609-CRK-LLL**

be a substantive due process violation if it is arbitrary or shocks the conscience. Waddell v. Hendry Cnty. Sheriff's Off., 329 F.3d 1300, 1305 (11th Cir. 2003) (citing Collins, 503 U.S. at 112). To state an individual liability claim under 42 U.S.C. § 1983, a plaintiff must plead that each defendant violated the plaintiff's constitutional rights through his own individual actions. Iqbal, 556 U.S. at 676.

A supervisor is liable under Section 1983 in his individual capacity (1) if he personally participates in the alleged constitutional violation, or (2) if there is a causal connection between actions of the supervisor and the alleged constitutional violation. Myers v. Bowman, 713 F.3d 1319, 1328 (11th Cir. 2013) (internal citations omitted). To establish a causal connection, a plaintiff must plead that

> a history of widespread abuse puts the responsible supervisor on notice
> of the need to correct the alleged deprivation, and he fails to do so.
> Alternatively, the causal connection may be established when a
> supervisor's custom or policy ... result[s] in deliberate indifference to
> constitutional rights or when facts support an inference that the
> supervisor directed the subordinates to act unlawfully or knew that the
> subordinates would act unlawfully and failed to stop them from doing
> so.

Keith v. DeKalb Cnty., Georgia, 749 F.3d 1034, 1048 (11th Cir. 2014) (internal citations omitted). Widespread abuse must be "obvious, flagrant, rampant, and of continued duration." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotations omitted).

Generally, a municipality may not be held liable under Section 1983 simply because it employs a tortfeasor. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694—95 (1978). In Monell, the Supreme Court held that liability of a governmental entity under Section 1983 exists only when the constitutional injury

OPINION AND ORDER - 26

can fairly be said to have been caused by that entity's own policies and customs.  Id. at 694.  The governmental entity's actions must be the moving force behind the constitutional violation.  Id.  Thus, governmental liability for a constitutional violation "attaches where - and only where - the entity makes a deliberate choice to follow a course of action from among various alternatives."  Pembaur v. Cincinnati, 475 U.S. 469, 483 (1986).  To state a plausible Monell claim, a party must show (1) her constitutional rights were violated, (2) the municipality had a custom or policy which constituted deliberate indifference to that violated constitutional right; and (3) the policy or custom was the cause of the violation.  Johnson v. Darnell, 781 F. App'x 961, 964 (11th Cir. 2019) (quoting McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004)).

Here, Ms. Doe fails to assert a claim against Sheriff Rhoden, in his individual capacity, for a violation of Section 1983.  First, Ms. Doe has not pled sufficient facts that Sheriff Rhoden personally participated in the alleged violation of her constitutional rights.  Specifically, Ms. Doe alleges that Sheriff Rhoden "knew or should have known" that Plaintiff was subjected to abusive conduct, and he failed to intervene on her behalf.  SAC at ¶ 339.  She also alleges that Sheriff Rhoden "knew that, by failing to act, as the chief law enforcement official in Baker County and the chief custodian of BCDC, that he was certain to cause physical and mental injury to Plaintiff."  Id. at ¶ 340.  These allegations fail to allege Sheriff Rhoden personally

**3:23-cv-00609-CRK-LLL**

participated in any alleged violation of Ms. Doe's constitutional rights as they are

conclusory and not supported by sufficient facts.[19]  See Iqbal, 556 U.S. at 678.

Second, Ms. Doe has not alleged facts to support the conclusion that there was

widespread abuse at BCDC which would have put Sheriff Rhoden on notice of the

need to correct the alleged deprivation.  Specifically, Ms. Doe alleges that there was

an incident in 2014 when BCSO Deputy Givens sexually assaulted a female detainee,

for which he was criminally charged.  SAC at ¶¶ 100—03.  This allegation of a

singular incident of sexual assault at BCDC, does not rise to the level of "widespread

abuse" which would have put Sheriff Rhoden on notice.  See Hartley, 193 F.3d at

1269.  Third, Ms. Doe pleads no facts to support a conclusion that Sheriff Rhoden

directed his employees to violate Ms. Doe's constitutional rights, or that he knew they

would act in such a manner and failed to stop them.  See generally SAC.  Thus, Count

XVI against Sheriff Rhoden in his individual capacity is dismissed without prejudice.

---

[19] For example, she states:

> Defendant Rhoden knew or should have known that Plaintiff had been
> subject to the aforementioned abusive conduct by Defendants Robinson,
> Crews, Messer, Prescott, and the Assailant Defendants, but failed to
> intervene on behalf of Plaintiff and/or aided Defendant Robinson in his
> effort to conceal the abuse.

SAC at ¶ 339.  This statement is conclusory and supported by no factual allegations.

Additionally, Ms. Doe has not stated a <u>Monell</u> claim against Sheriff Rhoden in his official capacity, BCCMC, or Baker County.[20]  Ms. Doe alleges in the SAC that it was

> a *de facto* policy, practice, and/or custom of the BCCMC and Baker County, through their Sheriff's department personnel and elected and appointed county officials to inadequately supervise and train their Sheriff's Deputies and BCDC staff, including the those specifically identified herein, to appropriately prevent and identify sexual assaults and sexually exploitative conduct occurring to female detainees within BCDC, thereby failing to adequately discourage constitutional violations on the part of the Sheriff's Deputies and staff members.

SAC at ¶ 346.  Ms. Doe's assertion that BCCMC and Baker County, through the BCSO, had a practice or policy of inadequately training and supervising their employees lacks any factual support.[21]  Ms. Doe pleads no facts to support her assertion that a policy of inadequate training and supervision exists or existed at BCDC, and therefore this Court will not accept those allegations as true.  <u>Iqbal</u>, 556 U.S. at 679 ("pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth"); <u>see also</u> <u>Johnson</u>, 781 F. App'x at 964 (holding

---

[20] Indeed, Ms. Doe does not denominate a count in her SAC as a <u>Monell</u> claim against Sheriff Rhoden in his official capacity.  However, for completeness the Court considers the allegations alleged against the Sheriff Rhoden relating to Section 1983 in both his official and unofficial capacity.  <u>See</u> Fed. R. Civ. P. 8 (e).

[21] Ms. Doe argues that where a pattern of constitutional violations exists the need for certain training may be obvious.  Pl. Resp [Def. Baker Cnty. MTD] at 16; Pl. Resp. [Defs. Sheriff Rhoden & BCCMC's MTD] at 20.  <u>Monell</u> liability calls for a custom or policy which constituted deliberate indifference, rather than a pattern of behavior.  <u>Johnson</u>, 781 F. App'x at 964.  Even assuming the law allowed for a pattern of behavior to confer <u>Monell</u> liability, Ms. Doe still has not pled sufficient facts to assert that Sheriff Rhoden, BCCMC, or Baker County were on notice of any pattern of constitutional behavior at BCDC. SAC at ¶¶ 344—51.

that allegations which are too conclusory are not sufficient to state a claim for <u>Monell</u>

liability).  Ms. Doe adds two similar conclusory allegations which this Court will also

not accept as true.[22]  SAC at ¶¶ 347—48.

Ms. Doe contends that because she has "not had the benefit of discovery" into

the policies and practices of Sheriff Rhoden, BCCMC, and Baker County, her SAC is

sufficient at the motion to dismiss stage.  Pl. Resp. [Baker Cnty. MTD at 17; Pl. Resp.

[Defs. Sheriff Rhoden & BCCMC's MTD] at 20.  Discovery is not a vehicle enabling a

plaintiff to make her case when she has failed to state a claim.  <u>Carter v. DeKalb</u>

---

[22] Specifically, Ms. Doe alleges:

> 347. Prior to April 2019, it was a de facto policy, practice, and/or custom of the BCCMC and Baker County, through their Sheriff's department personnel and elected and appointed county officials, to inadequately supervise and train their Sheriff's Deputies and BCDC staff, including the those specifically identified herein, to intervene and/or report constitutional violations and/or misconduct committed by their fellow Sheriff's Deputies and/or BCDC staff.
> 348. BCCMC and Baker County, acting through their Sheriff's department personnel and elected and appointed county officials, have adopted and continue to maintain recognized and accepted policies, customs, and/or practices of systematically failing to prevent and identify sexual assaults and sexually exploitative conduct occurring to female detainees within BCDC, failing to investigative reports of sexual assault and sexually exploitative conduct to occurring to female detainees within BCDC, disregarding and/or devaluing reports of sexual assault and sexually exploitative conduct to occurring to female detainees within BCDC, concealing sexual assaults and sexually exploitative conduct occurring to female detainees within BCDC, and retaliating against those who sought to expose sexual assaults and sexually exploitative conduct occurring to female detainees within BCDC, which has resulted in subjecting other persons, including Plaintiff, to unjustifiable risks of personal injury.

SAC at ¶¶ 347—48.

OPINION AND ORDER - 30

County, Ga., 521 Fed. App'x 725, 728 (11th Cir. 2013).  Thus, Ms. Doe has failed to state a claim for Monell liability under 42 U.S.C. § 1983 against Sheriff Rhoden, BCCMC, and Baker County and Counts XVI and XVII are dismissed without prejudice.

## **CONCLUSION**

Ms. Doe has not pled sufficient facts to state a claim against Sheriff Rhoden in his individual capacity for negligence and violations of 42 U.S.C. § 1983.  Additionally, Ms. Doe has failed to allege sufficient facts to state a claim for negligence or negligent retention, hiring, or supervision against Sheriff Rhoden in his official capacity, violations of the TVPRA against Sheriff Rhoden in his official capacity, BCCMC, and Baker County, and violations of 42 U.S.C. § 1983 against Sheriff Rhoden in his official capacity, BCCMC, and Baker County.  Lastly, Ms. Doe has stated a claim for vicarious liability against Sheriff Rhoden in his official capacity, and premises liability against BCCMC.

Therefore, it is,

**ORDERED** that Defendants Sheriff Rhoden and BCCMC's motion is granted in part and denied in part, and it is further

**ORDERED** that Defendant Baker County's motion is granted; and it is further

**ORDERED** that all claims against Sheriff Rhoden in his individual capacity are dismissed without prejudice; and it is further

**3:23-cv-00609-CRK-LLL**

      **ORDERED** that all claims against Baker County are dismissed without prejudice; and it is further

      **ORDERED** that Sheriff Rhoden and BCCMC shall file an answer to the SAC within 14 days of the issuance of this order; and it is further

      **ORDERED** that entry of final judgments in favor of Defendant Baker County and Defendant Sheriff Rhoden in his individual capacity are deferred until full resolution of this case.

                              /s/ Claire R. Kelly
                              Claire R. Kelly, Judge[*]

Dated:      March 17, 2025
             New York, New York

---

[*] Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.

OPINION AND ORDER - 32