# UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF FLORIDA

## JACKSONVILLE DIVISION

| | |
|---|---|
| **JANE DOE, a pseudonym,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**BAKER COUNTY, BAKER COUNTY CORRECTIONS MANAGEMENT CORPORATION, SCOTT RHODEN, RANDY CREWS, JAMES MESSER, PEYTON PRESCOTT, BRIAN LOUIS ROBINSON, ASSAILANT ROES 1-X, CARDELL C. SMITH and UNITED STATES,**<br><br>    **Defendants.** | **3:23-cv-00609-CRK-LLL** |

## <u>INTRODUCTION</u>

Plaintiff, Jane Doe ("Ms. Doe") brings this action claiming negligence and false imprisonment under the Federal Tort Claims Act ("FTCA"), leading to her "rape, sexual assault, battery, torture, retaliation, and commercial sex trafficking" while at Baker County Detention Center ("BCDC"). Second Am. Compl. at ¶ 1, May 6, 2024, ECF No. 79 ("SAC"). Before the Court is Defendant the United States' ("Defendant United States") Motion to Dismiss for lack of subject matter jurisdiction. Def. United States of America Mot. to Dismiss for Lack of Subject Matter Jurisdiction, Jun. 10,

3:23-cv-00609-CRK-LLL

2024, ECF No. 87 ("Def. US MTD").  Defendant United States seeks to dismiss Counts IX and X of the SAC against it under the FTCA for negligence and false imprisonment, respectively.  See generally Def. US MTD; Resp. Opp'n [Def. United States] Mot. to Dismiss for Lack of Subject Matter Jurisdiction, Jul. 16, 2024, ECF No. 94 ("Pl. Resp. [Def. US MTD]"); Reply in Support [United States'] Mot. to Dismiss, Jul. 29, 2024, ECF No. 102 ("Def. US Reply"); SAC.  Defendant United States argues (1) Ms. Doe failed to exhaust her administrative remedies, (2) Ms. Doe has not alleged a requisite private analog under Florida law, and (3) the discretionary function exception precludes Ms. Doe's negligence claim.  See Def. US MTD at 4—10, 10—14, 14—25.  Ms. Doe responds that (1) her administrative claim provided sufficient notice to United States Immigration and Customs Enforcement ("ICE"), (2) Defendant United States cannot avoid liability under the FTCA by claiming a lack of "exact" state tort analogs, and (3) the United States fails to prove that the discretionary function exception precludes her claims.  Pl. Resp. [Def. US MTD] at 2—4.  For the reasons that follow, the Court grants Defendant United States motion to dismiss Counts IX and X of the SAC.

# BACKGROUND[1]

In 2018, Baker County Corrections Management Corporation ("BCCMC") entered into an Inmate Housing and Care Agreement ("IHCA") with the Board of County Commissioners of Baker County ("Baker County"),[2] to arrange for the detention and care of "persons awaiting trial in state court or sentenced to serve county jail time in Baker County."[3]  IHCA at Art I(A), May 6, 2024, ECF No. 79-1. Under the IHCA, BCCMC would certify to Baker County that any employees were appropriately screened.  IHCA at Art 6(A).  BCCMC maintained an Operation, Management, and Maintenance Agreement with the Baker County Sheriff's Office ("BCSO").[4]  See Operation, Management, and Maintenance Agreement, May 6, 2024,

---

[1] The Background is taken from Ms. Doe's Second Amended Complaint, see SAC, and the documents attached to the SAC, including the Inmate Housing and Care Agreement ("IHCA"), Operation, Management, and Maintenance Agreement ("OMMA"), the 11062.2: Sexual Abuse and Assault Prevention and Intervention ("ICE SAAPI Directive"), and the Solitary Confinement Directive.  On a motion to dismiss, the court considers the complaint and documents it incorporates, and any matters the court decides to judicially notice.  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  The Court assumes the well-pled allegations to be true for the purpose of this Opinion and Order.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Financial Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007).

[2] Throughout the SAC, Ms. Doe refers to the Baker County Sherriff's Office as both the BCSO and the BSCO.  See generally SAC.  The Court understands the references to the BSCO to mean the BCSO and for both of those terms to refer to Sherriff Rhoden, sued in his official capacity.

[3] Ms. Doe refers to the agreement as being one between the BCSO, i.e., Sherriff Rhoden, and the BCCMC.  However, the actual agreement indicates that it is an agreement between Baker County and the BCCMC.  IHCA at 1.

[4] The agreement was previously entered into by the Baker Correctional Department Corporation and the BCSO, but that agreement was assigned to the BCCMC when the BCCMC purchased the Baker Correctional Department Corporation.  OMMA at 1.

3:23-cv-00609-CRK-LLL

ECF No. 79-2 ("OMMA"). Under the OMMA, BCCMC authorized the BCSO to detain, house and control prisoners at BCDC. SAC at ¶ 31. The BCSO was paid a management fee by BCCMC. Id. at ¶ 33.

BCCMC maintained unlimited access to BCDC, had office space at BCDC, and maintained the right to inspect the facility. Id. at ¶¶ 36—37. Defendant BCCMC supervised the Sheriff Deputies of the BCSO at BCDC, as required by the OMMA. Id. at ¶ 4. Revenue collected by the BCSO belonged to BCCMC. Id. at ¶ 38.

Ms. Doe arrived at BCDC on February 25, 2019. Id. at ¶¶ 120. She was assigned an ICE immigration officer,[5] who reviewed her case and informed her that deportation was unlikely, but she would still have to appear before a judge. Id. at ¶ 174. The ICE officer explained his role as well as how she could report conditions at BCDC to ICE. Id. at ¶¶ 175—76.

After arriving at BCDC, Ms. Doe developed a sinus infection but was not treated by BCDC staff or any ICE officer. Id. at ¶¶ 177—79. At Ms. Doe's first immigration hearing, upon seeing the severity of her sinus infection, the judge requested medical attention for Ms. Doe, delaying her immigration petition. Id. at ¶ 180.

Ms. Doe alleges that Defendant Robinson sexually assaulted, coerced, and intimidated her using his authority as a BCDC employee. Id. at ¶¶ 123, 127. Defendant Robinson, a BCDC employee, assaulted Ms. Doe on multiple occasions. Id.

---

[5] The ICE officer Ms. Doe alleges she was assigned is not a party to this case. See SAC at ¶ 174.

OPINION AND ORDER- 4

at ¶¶ 122—31. Specifically, he digitally penetrated her on three separate occasions, and on one occasion he penetrated her vaginally with his penis. Id. at ¶¶ 122—28.

After being raped on May 25, 2019, Ms. Doe reported the rape and all prior acts to ICE during an immigration hearing. Id. at ¶ 147. ICE agents did not afford Ms. Doe the proper medical attention, ignoring her written complaints submitted through ICE's own system, as well as in person during ICE visits to BCDC. Id. at ¶¶ 184—87. Ms. Doe submitted reports regarding her medical needs, faulty toilets, voyeurism, issues with the showers, conflicts with other detainees, and overall poor living conditions; none of which were addressed by any ICE officer at BCDC. Id. at ¶¶ 189—90. After reporting the assaults, Ms. Doe was placed in solitary confinement until her release on July 30, 2019. Id. at ¶ 148.

After Ms. Doe was placed into solitary confinement, Defendant Assailant Roes 1-X ("Assailant Defendants"),[6] denied Plaintiff necessities, including food, water, bedding, freedom of movement, and the ability to shower freely. Id. at ¶ 149. Further, on one occasion Assailant Defendants locked Ms. Doe in the law library, the location of her May 25, 2019, rape, and ignored her pleas for medical assistance. Id. at ¶¶ 150—51. Assailant Defendants threatened Ms. Doe with sexual assault near the showers, falsified her shower records, and instructed kitchen staff to tamper with her food. Id. at ¶¶ 153—55. Further, Assailant Defendants consistently shook a

---

[6] The terms "Assailant Roes," "Assailant Does," and "Assailant Defendants" seem to be used interchangeably throughout Ms. Doe's SAC. See generally SAC. Ms. Doe also includes Lieutenant Messer and Deputy Prescott under the umbrella of Assailant Does, even though they are named parties in the case caption.

3:23-cv-00609-CRK-LLL

pepper spray can at Ms. Doe's cell door, limited her access to call or email her family and attorneys, prevented repairs to her cell toilet, and denied her toilet paper and feminine pads. Id. at ¶¶ 156—59. Assailant Defendants attempted to coerce Ms. Doe into recanting her accusation of rape against Defendant Robinson, repeatedly pressuring her into signing papers recanting her report. Id. at ¶¶ 161—66. Lastly, Assailant Defendants attempted to cut off assistance Ms. Doe was receiving from other BCDC employees. Id. at ¶¶ 170—73. Specifically, Ms. Doe was receiving help from two female deputies who assisted her in obtaining food, showering, and commissary access. Id. at ¶ 171. Eventually, one of the deputies assisting Ms. Doe explained that she could no longer assist Ms. Doe for fear of losing her job and later the two deputies were reassigned to different areas of the facility. Id. at ¶¶ 172—73. After making various reports and inquiries to ICE, Ms. Doe met with the ICE officer assigned to her case and he acknowledged she was wrongfully placed in solitary confinement, but that he was unable to intervene on her behalf due to directions from his boss, Cardell C. Smith ("Defendant Smith").[7] Id. at ¶¶ 197—98.

Ms. Doe filed her complaint in this action on May 19, 2023. See generally Compl., May 19, 2023, ECF No. 1. Ms. Doe subsequently amended her complaint twice, filing the SAC, in dispute here, on May 6, 2024. See generally Am. Compl., Aug. 11, 2023, ECF No. 32; see also SAC. Defendant United States filed its motion to dismiss for lack of jurisdiction on June 10, 2024. See generally Def. US MTD. Ms.

---

[7] Defendant Smith is no longer a party to this case, as his second motion to dismiss was granted on July 18, 2024. See Order, Jul. 18, 2024, ECF No. 100.

3:23-cv-00609-CRK-LLL

Doe filed her response opposing Def. US MTD on July 16, 2024.  <u>See generally</u> Pl. Resp. [Def. US MTD].  Defendant United States filed its reply in support of its motion to dismiss on July 29, 2024.  <u>See generally</u> Def. US Reply.

## JURISDICTION

This Court has jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  This Court has supplemental jurisdiction "over all claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367. When a state claim attaches to a federal claim through supplemental jurisdiction, the Court is "constitutionally obligated to apply state laws to state claims."  <u>Felder v. Casey</u>, 487 U.S. 131, 151 (1988).

## DISCUSSION

Ms. Doe asserts claims for negligence and false imprisonment under the FTCA against Defendant United States.  SAC at ¶¶ 278—97.  First, Ms. Doe alleges Defendant United States violated the FTCA through the "negligent or wrongful acts or omissions of employees, agents, and/or servants of the United States government, including but not limited to employees, agents, and/or servants of the ICE, the DHS [Department of Homeland Security]," which were the proximate cause of her injuries, and a breach of the duty owed to Ms. Doe by the United States through its agents. <u>Id.</u> at ¶¶ 278—86 (Count IX).  Second, Ms. Doe alleges Defendant United States violated the FTCA by placing her in solitary confinement for "nearly two months"

OPINION AND ORDER- 7

3:23-cv-00609-CRK-LLL

after she reported her rape, amounting to false imprisonment of Ms. Doe.  Id. at ¶¶ 287—97 (Count X).  Defendant United States responds (1) Ms. Doe failed to exhaust her administrative remedies and therefore this Court may not review her claims, (2) Ms. Doe has not alleged a requisite private analog under Florida law for either claim, and (3) the discretionary function exception precludes Ms. Doe's negligence claim. Def. US MTD at 4—10, 10—14, 14—25.  For the reasons that follow, Ms. Doe's claims of negligence and false imprisonment under the FTCA against Defendant United States are dismissed without prejudice.[8]

## I.    Exhaustion of Administrative Remedies

Defendant United States contends Ms. Doe failed to exhaust her administrative remedies for both her negligence and false imprisonment claims because she "failed to give ICE sufficient information" to investigate her claims.  Def. US MTD at 5.  Ms. Doe responds that the exhaustion requirement imposes a "minimal" burden and her administrative claim adequately detailed a "severe and ongoing harm."  Pl. Resp [Def. US MTD] at 11, 13.  A review of Ms. Doe's administrative claim reveals that it identified sufficient facts to allow ICE to investigate her negligence claim, but it provided no information concerning her false imprisonment claim.

---

[8] A dismissal for lack of subject matter jurisdiction is without prejudice as it is not a judgment on the merits.  Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008) (citing Crotwell v. Hockman–Lewis Ltd., 734 F.2d 767, 769 (11th Cir. 1984)).

3:23-cv-00609-CRK-LLL

### A.    Negligence

To pursue a claim under the FTCA, a plaintiff must exhaust her administrative remedies.  28 U.S.C. §2675(a).  Section 2675(a) provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).  Section 2675(a) requires the claimant (1) give the appropriate agency written notice of the tort claim so the agency may investigate; and (2) place a value on her claim.[9]  Orlando Helicopter Airways v. United States, 75 F.3d 622, 625 (11th Cir. 1996) (citing Free v. United States, 885 F.2d 840, 842 (11th Cir. 1989); see also Burchfield v. United States, 168 F.3d 1252, 1255 (11th Cir. 1999) (internal citations omitted).  Congress enacted Section 2675(a) to facilitate early disposition of claims, not to place procedural hurdles before potential litigants.  Burchfield, 168 F.3d at 1255 (citing Lopez v. United States, 758 F.2d 806, 809 (1st Cir. 1985)).  The claimant need only show a minimal amount of information and is not required to recite every possible theory of recovery or every relevant factual detail.  Burchfield, 168 F.3d at 1255 (citing Brown v. United States, 838 F.2d 1157, 1160—61 (11th Cir. 1988); Adams v. United States, 615 F.2d 284, 291—92 (5th Cir. 1980)).

---

[9] Defendant United States concedes that Plaintiff has appropriately placed a value on her claim.  Def. US MTD at 5.

3:23-cv-00609-CRK-LLL

Ms. Doe's administrative claim and supporting attachments assert a claim of

negligence by Defendant United States for failing to protect her from the rape by

Defendant Robinson. Standard Form 95 Submission, Jun. 10, 2024, ECF No. 87-1

("Standard Form 95").[10]  In her Standard Form 95, Ms. Doe states the factual basis

for her claim as well as the harm she suffered:

> Brian L. Robinson, Baker County Sheriff Office deputy, MacClenny,
> Florida, sexually abused a female alien detainee on multiple occasions
> beginning 3/23/2019 while she was in the custody of the BCSO as a
> detainee. BCSO was under contract with ICE to house detainees
> including [Plaintiff]. DNA and testimonial evidence confirms the rapes
> in violation of contract, state and federal law. The offender was also
> acting as a federal agent and ICE inadequately trained, monitored and
> supervised BCSO and aided 42 U.S.C. § 1983 viol. Victim is a former
> model and head of her household with dependents. . . . Claimant was
> tortured mentally and physically over an extended period of time in
> order to sexually gratify her jailor. The rapes were committed orally,
> vaginally and digitally on multiple occasions, eventually resulting in
> claimant preserving DNA evidence of one of these attacks. Contrary to
> PREA and her rights, she was manipulated, coerced, and forced to

---

[10]  The Standard Form 95 was not attached to the SAC.  Typically, the Court may only consider the pleadings and documents attached to the pleadings. Financial Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007).  However, the Court may also consider matters of which it takes judicial notice. Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010); Fed. R. Evid. 201. The Court may take judicial notice at the motion to dismiss stage, without converting the motion to dismiss into a motion for summary judgment, when the document is central to the plaintiff's claim and undisputed. Horne, 392 F. App'x at 802 (citing Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005)).  Here, the Standard Form 95 is central to Ms. Doe's FTCA claims as it necessarily establishes whether she exhausted her claims at the administrative level as required by the FTCA.  28 U.S.C. § 2675(a).  Further, the document and its contents are undisputed as both parties acknowledge the form's existence, its contents, and cite to the same content in their briefs. Def. US MTD at 5—6; Pl. Resp. [Def. US MTD] at 13.  Therefore, the Court takes judicial notice of the Standard Form 95.

3:23-cv-00609-CRK-LLL

>commit sex acts against her will with threats to herself, her family, and
>her immigration status in myriad ways.[11]

See Standard Form 95 at 2.  These allegations put Defendant United States on notice of her negligence claim and allowed ICE to investigate.  See Burchfield, 168 F.3d at 1255 (explaining that an agency is not only on notice of the theories of recovery in the claim, but also any theories of recovery that a reasonable investigation of the allegations should reveal); see also Brown, 838 F.2d at 1160 ("The notice requirement does not require a claimant to enumerate each theory of liability in the claim").  As discussed below Ms. Doe's claim is analogous to a claim for negligent supervision.  Ms. Doe stated sufficient facts for ICE to begin an investigation concerning a claim of negligent supervision.  Thus, Ms. Doe exhausted her administrative remedies with respect to her negligence claim.

### B.    False Imprisonment

Ms. Doe did not exhaust her claim of false imprisonment.  Although Ms. Doe's account in her Standard Form 95 recounted the sexual assaults she endured, she did not make any reference to her time in solitary confinement or her treatment following the sexual assault or alleged false imprisonment.  See Standard Form 95 at 2.  In the SAC, she alleges she was placed in solitary confinement for nearly two months following the rape, and locked in the law library against her will.  SAC at ¶¶ 150—

---

[11] Ms. Doe's complaint before this Court alleges that she suffered "personal injury and incurred damages proximately caused by the negligent or wrongful acts or omissions of employees, agents, and/or servants of the United States government, including but not limited to employees, agents, and/or servants of the ICE, the DHS." SAC at ¶ 281.

3:23-cv-00609-CRK-LLL

51, 290. She also claims that Defendant Robinson intimidated and coerced her, and the Assailant Defendants and Defendant Crews attempted to coerce her to recant. Id. at ¶¶ 127, 161, 166. She alleges her prolonged solitary confinement was intentional and caused her long-lasting damages. Id. at ¶¶ 291, 296—97. However, the Standard Form 95 gave no notice of this claim, or the facts underlying it, such that ICE could begin an investigation. See generally Standard Form 95. Even though the Standard Form 95 was filed long after the alleged false imprisonment,[12] the claim only discusses facts relating to rape by Robinson. See Standard Form 95. Ms. Doe argues in her brief before this Court that the facts pled in the administrative claim regarding the sexual assault are "foundational" as they "triggered subsequent harms." Pl. Resp. [Def. US MTD] at 13. Although the rape may have been foundational to the subsequent events, Ms. Doe alleges those events involve a separate set of facts of which ICE was given no notice such that it could commence an investigation. See SAC at ¶¶147—206 (explaining the series of events occurring after Ms. Doe reported the rape to ICE, including her placement in solitary confinement); see Burchfield, 168 F.3d at 1255. Thus, Ms. Doe did not exhaust her administrative remedies with respect to her false imprisonment claim and her claim from false imprisonment under the FTCA is dismissed without prejudice.

---

[12] The Standard Form 95 was completed on March 18, 2021, but Ms. Doe was released from BCDC on July 30, 2019. Standard Form 95 at 2; SAC at ¶ 148.

3:23-cv-00609-CRK-LLL

## II.   Private Analog

Defendant United States argues that even if Ms. Doe has exhausted her administrative remedies, she has not alleged a private state law analog required to maintain a claim under the FTCA.  Def. US MTD at 10—11.  Ms. Doe claims the private law analog requirement "must be interpreted broadly[,]"  Pl. Resp. [Def. US MTD] at 15—16 (citing <u>Indian Towing Co. v. United States</u>, 350 U.S. 61, 67 (1955)), and that her claims align with state law torts, (i.e., negligence and false imprisonment).  Pl. Resp. [Def. US MTD] at 17.[13]

Under the FTCA, claims may be brought against the United States "if a private person, would be liable to the claimant in accordance with the law of the place where the [allegedly tortious] act or omission occurred."  28 U.S.C. § 1346(b)(1); <u>see</u> <u>Fisher v. United States</u>, 995 F.3d 1266, 1269 (11th Cir. 2021) ("Accordingly, [the Court] may exercise jurisdiction over this suit if—and only if—it could be brought against a private person under Florida tort law"); <u>see also</u> <u>Ochran v. United States</u>, 273 F.3d 1315, 1317 (11th Cir. 2001) (finding that FTCA claims are governed by the law of the state where the alleged tortious activity occurred).  Where the conduct at issue involves a uniquely governmental function, the court may need to search more broadly for a private law analog.  <u>Indian Towing Co.</u>, 350 U.S. at 67.  However, a federal statute cannot constitute the "law of the place" because "[t]he FTCA was not

---

[13] Because Ms. Doe failed to exhaust remedies with respect to her false imprisonment claim, the Court need not reach the issue of whether she has identified a private state laws analog for her claim of false imprisonment.

3:23-cv-00609-CRK-LLL

intended to redress breaches of federal statutory duties." Sellfors v. United States,
697 F.2d 1362, 1365 (11th Cir. 1983).[14]

Here, Ms. Doe has not pled facts that are analogous to a state law claim for
negligence. The wrongful acts alleged by Ms. Doe occurred in Florida; therefore, she
must identify a Florida state law analog. Ms. Doe avers that her facts are analogous
to a state action for negligence, without further elaboration. Pl. Resp. [Def. US MTD]
at 3. In her response to Def. US MTD, Ms. Doe relies on the argument that the state
law tort of negligence aligns with her claim without further elaboration. Pl. Resp.
[Def. US MTD] at 17. Nonetheless, construing the pleadings to do justice and
independently assessing subject matter jurisdiction, the Court has searched for
possible state law analogs and the only possible state law tort that could serve as an
analog would be negligent supervision. See Fed. R. Civ. P. 8(e); see also Mallory v.
O'Neil, 69 So. 2d 313, 315 (Fla. 1954); Aspen Am. Ins. Co. v. Landstar Ranger, Inc.,
65 F.4th 1261, 1270 (11th Cir. 2023) (quoting Garcia v. Duffy, 492 So. 2d 435, 439
(Fla. Dist. Ct. App. 1986)). To plead a claim for negligent supervision, the plaintiff
must allege (1) the employer was aware, or should have become aware, of issues with
an employee's fitness, and (2) the employer failed to take action to correct, remove, or

---

[14] Although federal statutes and regulations that impose duties on government
officials are insufficient to support an FTCA claim, they may nevertheless be
important in determining whether the government may be liable for negligence under
the FTCA, "but only if there are analogous duties under local tort law." Zelaya v.
United States, 781 F.3d 1315, 1324 (2015) ("[W]hile a federal employee's breach of a
federally imposed duty may bolster a FTCA claim, it cannot, on its own, create the
duty that gives rise to that claim"). Further, the Supreme Court has repeatedly held
that there is no exception from FTCA liability solely because the conduct at issue
involved a "uniquely governmental function." Indian Towing Co., 350 U.S. at 64.

OPINION AND ORDER- 14

**3:23-cv-00609-CRK-LLL**

discharge the employee. Matthews v. City of Gulfport, 72 F. Supp. 2d 1328, 1340 (M.D. Fla. 1999).

Here, Ms. Doe was sexually assaulted by Defendant Robinson, an employee of BCDC; and BCDC was under contract with ICE. SAC at ¶¶ 40, 118. However, she alleges no facts to support an inference that BCDC employees, and therefore ICE,[15] was aware of problems with Defendant Robinson's or any employee's fitness. SAC at ¶¶ 99—108. Therefore, based upon her allegations, Ms. Doe lacks a private state law analog for her negligence claim under the FTCA and her negligence claim is dismissed without prejudice.

## III. Discretionary Function Exception

Even if Ms. Doe's negligence claim was not barred for lack of a private state law analog, the discretionary function exception precludes a waiver of sovereign immunity in this case. 28 U.S.C. § 2680(a); see Ochran, 117 F.3d 495; see also 28 U.S.C. § 1346(b); Cohen v. United States, 151 F.3d 1338, 1341 (11th Cir. 1998) ("If the discretionary function exception applies, the FTCA claim must be dismissed for lack of subject matter jurisdiction"). Here, the conduct forming the basis of the claim,

---

[15] It is not at all clear that even if the BCDC employees had knowledge of Defendant Robinson's lack of fitness, such knowledge could be imputed to ICE. The Court does not need to reach that question because Ms. Doe fails to plead any facts that could support an inference that BCDC employee had knowledge concerning Defendant Robinson's lack of fitness.

OPINION AND ORDER- 15

3:23-cv-00609-CRK-LLL

the negligent supervision of BCDC employees, falls squarely within the discretionary function doctrine.[16]

As an exception to the FTCA's waiver of sovereign immunity, the discretionary function exception prevents judicial "second-guessing" of legislative and administrative decisions and policy choices by presuming that a government agent acts consistent with those choices. United States v. Gaubert, 499 U.S. 315, 323 (1991); Cohen, 151 F.3d at 1341 (internal citations omitted). Generally, the burden falls on the plaintiff to "prove that the discretionary function exception does not apply."[17] Cuadrado-Concepcion v. United States, 851 F. App'x 985, 990 (11th Cir. 2021) (quoting OSI, Inc. v. United States, 285 F.3d 947, 951 (11th Cir. 2002) (holding that "since the government has asserted lack of subject matter jurisdiction, OSI must prove that the discretionary function exception does not apply to the disposal of the landfill material")); see also St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt. Agency, 556 F.3d 307, 315 (5th Cir. 2009) (holding that the party asserting the jurisdiction of a federal court, "bears the burden of showing [the Government's] unequivocal waiver of sovereign immunity"); Gaubert, 499 U.S. at 324–25 ("For a

---

[16] Because Ms. Doe has not exhausted her false imprisonment claim, the Court does not address whether that claim would have a private state law analog or fall under the discretionary function exception.

[17] The case Ms. Doe cites for the proposition that it is the Defendant's burden to prove the discretionary function exception applies does not support her position. See Prescott v. United States, 973 F.2d 696, 701 (9th Cir. 1992) ("We first note that plaintiff bears the burden of persuading the court that it has subject matter jurisdiction under the FTCA's general waiver of immunity") (citing 28 U.S.C. § 1346(b)).

3:23-cv-00609-CRK-LLL

complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime").

As a preliminary matter, courts first identify "exactly what the conduct is at issue." Autery v. United States, 992 F.2d 1523, 1527 (11th Cir. 1993). In Autery, a driver was killed when a tree fell on his car while he was driving through a national park. Id. at 1524. The district court entered judgment for the plaintiff, but the Court of Appeals took issue with the district court's conclusion that the relevant conduct was "the park's failure to carry out the mandates of its then existing policy of identifying and eliminating known hazardous trees." Id. at 1527. Rather, the Court of Appeals concluded that it was "the governing administrative policy ... that determines whether certain conduct is mandatory for purposes of the discretionary function exception." Id. at 1528.

Once the relevant governmental conduct is identified, the court applies a two-part inquiry. Gaubert, 499 U.S. at 322; see e.g., Ochran, 117 F.3d at 499; Douglas v. United States, 814 F.3d 1268, 1273 (11th Cir. 2016); Douglas v. United States, 796 F. Supp. 2d 1354, 1369 (M.D. Fla. 2011). First, the court must consider whether conduct "involves 'an element of judgment or choice.'" Ochran, 117 F.3d at 499 (quoting Gaubert, 499 U.S. at 322). Thus, courts consider, for example, whether a federal statute or regulation "specifically prescribes a course of action." Gaubert, 499 U.S. at 322; see also Powers v. United States, 996 F.2d 1121, 1124 (11th Cir. 1993); see, e.g., Hart v. United States, 894 F.2d 1539, 1546 n.8 (11th Cir. 1990), cert. denied, 498 U.S.

980 (1990) (finding the discretionary function exception applied where there were no specific mandatory guidelines for the government's identification of the remains of servicemen). Where government actors have a general duty of care, they retain discretion on how to fulfill that duty triggering the exception. Cohen, 151 F.3d at 1342; see also Hogan v. U.S. Postmaster Gen., 492 F. App'x 33, 36 (11th Cir. 2012). Thus, decisions about accepting a contractor's work or decisions about how to supervise a contractor are discretionary decisions unless the law or a contract specifies how the government must supervise the contractor. Andrews v. United States, 121 F.3d 1430, 1440–41 (11th Cir. 1997).

Second, if the conduct involves the exercise of judgment the court must determine whether the challenged conduct involves a permissible policy judgment. The question is whether the challenged actions are "the kind of conduct that can be said to be grounded in the policy of the regulatory regime." Gaubert, 499 U.S. at 325.[18] As explained in Gaubert:

> There are obviously discretionary acts performed by a Government agent that are within the scope of his employment but not within the discretionary function exception because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish. If one of the officials involved in this case drove an automobile on a mission connected with his official duties and negligently collided with another car, the exception would not apply. Although driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy.

---

[18] This inquiry does not focus on "the subjective intent of the government employee," nor does it consider, "whether the employee actually weighed social, economic, and political policy considerations before acting." Ochran, 117 F.3d at 500.

Gaubert, 499 U.S. at 325, n.7. Thus, the second prong requires courts to identify permissible policy decisions under the relevant law and then ask whether the challenged conduct involved such a policy decision. Gaubert, 499 U.S. at 321; Berkovitz by Berkovitz v. United States, 486 U.S. 531, 537—38 (1988)).

Here, Ms. Doe claims that ICE, through its supervision of BCDC employees, failed to protect her from Defendant Robinson. SAC at ¶ 284. As in Autery, the Court must identify the relevant governmental conduct. See Autery, 992 F.2d at 1527. Here, the conduct at issue is the governing administrative policy concerning ICE's supervision of its contractors BCSO and BCDC employees. SAC at ¶¶ 53—54.

Applying the first prong of Gaubert to the governing administrative policy regarding the supervision of the BCSO and BCDC employees, the Court examines whether the conduct involved an element of judgment or choice. Here, the conduct is governmental decisions about how to supervise the safety procedures of independent contractors, and such decisions involve elements of judgment and policy. See Andrews, 121 F.3d at 1440 ("the government may delegate its safety responsibilities to independent contractors in the absence of federal laws or policies restricting it from doing so"). Ms. Doe attempts to argue that the Government's choice was restricted, and she points to two directives, the 11062.2: Sexual Abuse and Assault Prevention and Intervention ("ICE SAAPI Directive"), and Solitary Confinement Directives, which "prescribe specific procedures for ICE agents overseeing reports of sexual assault and treatment of detainees with special vulnerabilities." Pl. Resp. Br. at 19. As a preliminary matter, the ICE SAAPI Directive does not appear to speak to ICE's

supervision of its contractors.  See generally ICE SAAPI Directive.  However, even

applying the ICE SAAPI Directive to ICE's conduct in supervising its contractors, it

would fail to restrain the agency's discretion regarding its supervision of the BCSO

or BCDC employees.  Andrews, 121 F.3d at 1440–41.  Although the ICE SAAPI

Directive aims to implement various safeguards and procedures, none of the

directives constitute a mandate as they all leave the implementation to the discretion

of different agency heads and employees.  See ICE SAAPI Directive.  For example,

the ICE SAAPI Directive states:

> All ICE personnel who may have contact with individuals in ICE
> custody, including all ERO officers and HSI special agents, shall receive
> training on, among other items: a) ICE's zero-tolerance policy for all
> forms of sexual abuse and assault; b) The right of detainees and staff to
> be free from sexual abuse or assault; c) Definitions and examples of
> prohibited and illegal behavior; d) Dynamics of sexual abuse and assault
> in confinement; e) Prohibitions on retaliation against individuals who
> report sexual abuse or assault; f) Recognition of physical, behavioral,
> and emotional signs of sexual abuse or assault, situations in which
> sexual abuse or assault may occur, and ways of preventing and
> responding to such occurrences, including: i) Common reactions of
> sexual abuse and assault victims; ii) How to detect and respond to signs
> of threatened and actual sexual abuse or assault; iii) Prevention,
> recognition, and appropriate response to allegations or suspicions of
> sexual abuse and assault involving detainees with mental or physical
> disabilities; and iv) How to communicate effectively and professionally
> with victims and individuals reporting sexual abuse or assault; g) How
> to avoid inappropriate relationships with detainees; h) Accommodating
> limited English proficient individuals and individuals with mental or
> physical disabilities; i) Communicating effectively and professionally
> with lesbian, gay, bisexual, transgender, intersex, or gender
> nonconforming individuals, and members of other vulnerable
> populations; j) Procedures for fulfilling notification and reporting
> requirements under this Directive; k) The investigation process; and l)
> The requirement to limit reporting of sexual abuse or assault to
> personnel with a need-to-know in order to make decisions concerning
> the victim's welfare and for law enforcement or investigative purposes.

3:23-cv-00609-CRK-LLL

ICE SAAPI Directive at 8—9. Even assuming that directives related to the training of ICE personnel applies to ICE contractors,[19] this language requires that training occur, there is no mandate of what must be included in the training or how the training is to be conducted. Compare Douglas, 814 F.3d at 1277 (inmates action for withheld wages was not precluded by the discretionary function exception because by regulation "once a supervisor evaluated [the inmate's] work and computed his pay, the decision to pay [the inmate] the computed amount was not discretionary" but was "mandated by the [Bureau of Prison's] own regulations"); Miles v. Naval Aviation Museum Foundation, 289 F.3d 715, 721—22 (11th Cir. 2002) (government's failure to train mechanics was not subject to the discretionary function exception where federal regulations specify the training of mechanics performing certain testing); Dickerson, Inc v. United States, 875 F.2d 1577, 1581—82 (11th Cir. 1989) (government's failure to ensure that contractors, hired to dispose of PCB oil from military installations, did

---

[19] Although Ms. Doe frames her claim as a claim against the United States by claiming that ICE failed to provide for her safety, see SAC at ¶ 284, the SAC also identifies the relevant actors as BCDC employees and not employees of ICE. SAC at ¶ 284(b). Under 28 U.S.C. § 1346(b)(1) the waiver of sovereign immunity only applies to actions of government employees. See 28 U.S.C. § 1346(b)(1); see, e.g., Del Valle v. Sanchez, 170 F. Supp. 2d 1254, 1268 (S.D. Fla. 2001) (explaining that the FTCA does not waive sovereign immunity for the actions of independent contractors). Defendant United States cites the Intergovernmental Service Agreement ("IGSA") as support for its position that the BCSO, not ICE, was responsible for detainees, see Def. US MTD at 16—17, and asks the Court to take judicial notice of the agreement. Def. US MTD at 16, n.5. However, the IGSA was not attached to the complaint and the Court must confine itself to the complaint and what is attached. See Financial Sec. Assur., Inc., 500 F.3d at 1284. Further, the Court does not find it necessary to take judicial notice of the IGSA because, even if the acts involved were those of ICE employees, the conduct would still fall under the discretionary function exception.

OPINION AND ORDER- 21

3:23-cv-00609-CRK-LLL

so properly was not subject to the discretionary function exception).  The ICE SAAPI Directive proscribes guidelines to be followed, but requires no specific courses of action, leading it to be discretionary in nature rather than a mandate.[20]  Ms. Doe identifies no statute, or regulation that prescribes a course of conduct for BCDC employees to follow.  See generally SAC; Pl. Resp. [Def. US MTD].

The second prong of Gaubert asks whether ICE's decisions regarding its supervision of the BCSO and BCDC employees were permissible policy decisions, i.e., "the kind of policy judgment that the discretionary function exception was designed to shield."  Gaubert, 499 U.S. at 322.  There is a presumption that when the government exercises its discretion, its actions will be "grounded in policy."  Gaubert, 499 U.S. at 324.  Here, ICE's procedure and practice for supervising the BCSO and BCDC employees necessarily involves weighing social, economic, and political goals.  "Decisions regarding the exercise of supervisory authority are of the sort the discretionary function exception was designed to encompass."  Andrews, 121 F.3d at 1441.  Therefore, the conduct at issue in this case is the type of conduct that falls within the discretionary function exception.

Finally, Ms. Doe's argument that the discretionary function exception cannot block her constitutional claims fails for two reasons.  First, Ms. Doe states, with no

---

[20]  The Solitary Confinement Directive is relevant only to Ms. Doe's false imprisonment claim which Ms. Doe failed to exhaust.  Nonetheless, it too contains standards regarding confinement which grant discretion to the agency.  See Solitary Confinement Directive at 5—6 (explaining that when a detainee is placed in solitary confinement related to status as a victim of sexual assault, "an individualized assessment must be made in each case").

3:23-cv-00609-CRK-LLL

further explanation, that Defendant United States has failed to show the discretionary function exception bars her claims "especially against conduct that plausibly violates constitutional rights." Pl. Resp. Br. at 2—3. Ms. Doe does not elaborate why the discretionary function exception would not apply to her constitutional claims. Undeveloped arguments are abandoned. Cont'l Tech. Servs., Inc. v. Rockwell Int'l Corp., 927 F.2d 1198 (11th Cir. 1991). Second, the Court of Appeals has explained that "there is no 'constitutional-claims exclusion' to the statutory discretionary function exception (to the FTCA's waiver of sovereign immunity)." Shivers v. United States, 1 F.4th 924, 931—32 (11th Cir. 2021).[21]

## CONCLUSION

Ms. Doe has failed to exhaust her administrative remedies with respect to her false imprisonment claim, and although she has exhausted her claim for negligence, she has failed to put forth a state law analog and her claim is, in any event, barred by the discretionary function exception. Thus, Defendant United States' Motion to

---

[21] The Supreme Court has granted certiorari in Martin v. United States, No. 23-10062, 2024 WL 1716235, at *7 (11th Cir. Apr. 22, 2024), cert. granted in part, No. 24-362, 2025 WL 301915 (U.S. Jan. 27, 2025) which relies on Shivers to determine 1) Whether the Constitution's Supremacy Clause bars claims under the Federal Tort Claims Act when the negligent or wrongful acts of federal employees have some nexus with furthering federal policy and can reasonably be characterized as complying with the full range of federal law, and 2) Whether the discretionary-function exception is categorically inapplicable to claims arising under the law enforcement provision to the intentional torts exception. Martin v. United States, No. 24-362, 2025 WL 301915, at *1 (U.S. Jan. 27, 2025). The questions framed by the grant of certiorari would not appear to be implicated in this case.

OPINION AND ORDER- 23

**3:23-cv-00609-CRK-LLL**

Dismiss Count IX and Count X of Ms. Doe's SAC is granted and Counts IX and X of the SAC are dismissed without prejudice.

Therefore, it is

**ORDERED** that Defendant United States' Motion to Dismiss Count IX and Count X of Ms. Doe's SAC is granted; and it is further

**ORDERED** that Count IX and Count X of the SAC are dismissed without prejudice; and it is further

**ORDERED** that entry of final judgment in Defendant United States' favor is deferred until full resolution of this case.

/s/ Claire R. Kelly
Claire R. Kelly, Judge*

Dated:       March 17, 2025
             New York, New York

---

* Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.

OPINION AND ORDER- 24