## UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF FLORIDA

## JACKSONVILLE DIVISION

| | |
|---|---|
| **JANE DOE, a pseudonym,** | |
| **Plaintiff,** | |
| **v.** | **3:23-cv-00609-CRK-LLL** |
| **BAKER COUNTY, BAKER COUNTY CORRECTIONS MANAGEMENT CORPORATION, SCOTT RHODEN, RANDY CREWS, JAMES MESSER, PEYTON PRESCOTT, BRIAN LOUIS ROBINSON, ASSAILANT ROES 1-X, CARDELL C. SMITH and UNITED STATES,** | |
| **Defendants.** | |

## <u>INTRODUCTION</u>

Before the Court are two motions to dismiss the Second Amended Complaint ("SAC") of Plaintiff, Ms. Jane Doe ("Ms. Doe"); the first by Defendants, Assailant Roes 1-X[1] ("Assailant Defendants"), and the second by Defendants Randy Crews

---

[1] The terms "Assailant Roes," "Assailant Does," and "Assailant Defendants" seem to be used interchangeably throughout Ms. Doe's SAC, and it is reasonably discernable that all three terms refer to the same Defendants. <u>See generally</u> SAC. Further, Ms. Doe numbers the Assailant Defendants as 1-X, and it is reasonably discernible that this refers to ten total "Assailant Defendants." <u>See generally</u> SAC. The Court will identify the Defendants in this action as "Assailant Defendants."

**3:23-cv-00609-CRK-LLL**

("Undersheriff Crews"), James Messer ("Lieutenant Messer"), and Payton Prescott ("Deputy Prescott").[2]  Def. Assailant Roes 1-X Mot. to Dismiss Second Am. Compl., Jun. 11, 2024, ECF No. 92 ("Assailant Def. MTD"); Defs. Crews, Messer, and Prescott's Mot. to Dismiss Second Am. Compl., Jun. 11, 2024, ECF No. 91 (Def. Crews, et al. MTD"); Second Am. Compl., May 6, 2024, ECF No. 79 ("SAC").  Ms. Doe's SAC claims against Assailant Defendants and Undersheriff Crews, Lieutenant Messer, and Deputy Prescott include (1) assault and battery against Lieutenant Messer and Deputy Prescott, (2) false imprisonment against Lieutenant Messer and Deputy Prescott, (3) intentional infliction of emotional distress ("IIED") against Undersheriff Crews, Lieutenant Messer, and Deputy Prescott, (4) violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA") against Undersheriff Crews, Lieutenant Messer, and Deputy Prescott, and (5) substantive due process violations under 42 U.S.C. § 1983 against Undersheriff Crews, Lieutenant Messer, and Deputy Prescott.  SAC at ¶¶ 244—51, 257—61, 270—77, 317—21, 329—35.

---

[2] Deputy Prescott's first name is spelled "Payton," not "Peyton" as the case caption and SAC state.  See Def. Prescott's Answer and Aff. Defenses to SAC, Jun. 11, 2024, ECF No. 93 ("Deputy Prescott Answer").

OPINION AND ORDER - 2

3:23-cv-00609-CRK-LLL

# BACKGROUND[3]

Ms. Doe brings this action against Undersheriff Crews, Lieutenant Messer, and Deputy Prescott, as well as the Assailant Defendants, all in their individual capacities.[4] Id. at 1—2. She seeks damages from Assailant Defendants, including Lieutenant Messer and Deputy Prescott, and Undersheriff Crews for breaches of her constitutional rights, assault and battery, false imprisonment, IIED, and violations of the TVPRA in connection with her "rape, sexual assault, battery, torture, retaliation, and commercial sex trafficking" while at Baker County Detention Center ("BCDC"). Id. at ¶ 1.

In 2018, Baker County Corrections Management Corporation ("BCCMC") entered into an Inmate Housing and Care Agreement with the Board of County

---

[3] The Background is taken from Ms. Doe's Second Amended Complaint, see SAC, and the documents attached to the SAC, including the Inmate Housing and Care Agreement ("IHCA"), Operation, Management, and Maintenance Agreement ("OMMA"), the 11062.2: Sexual Abuse and Assault Prevention and Intervention ("ICE SAAPI Directive"), and the Solitary Confinement Directive. On a motion to dismiss, the court considers the complaint and documents it incorporates, and any matters the court decides to judicially notice. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). The Court assumes the well-pled allegations to be true for the purpose of this Opinion and Order. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Financial Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007).

[4] Ms. Doe also sues other defendants, including Baker County, Baker County Corrections Management Corporation ("BCCMC"), Sheriff Scotty Rhoden (Sheriff Rhoden"), Brian Louis Robinson ("Defendant Robinson"), Cardell C. Smith ("Defendant Smith"), and the United States of America ("Defendant United States"). SAC at 1—2. The Court deals with the motions to dismiss filed by Baker County, BCCMC, Sheriff Rhoden, and Defendant United States in separate opinions. Defendant Smith was dismissed from this case on July 18, 2024. See Order, Jul. 18, 2024, ECF No. 100.

3:23-cv-00609-CRK-LLL

Commissioners of Baker County ("Baker County"),[5] to arrange for the detention and care of "persons awaiting trial in state court or sentenced to serve county jail time in Baker County."[6]  Inmate Housing and Care Agreement at Art I(A), May 6, 2024, ECF No. 79-1 ("IHCA").  Under the IHCA, BCCMC would certify to Baker County that employees were appropriately screened.  IHCA at Art 6(A).  BCCMC maintained unlimited access to BCDC, had office space at BCDC, and maintained the right to inspect the facility.  SAC at ¶¶ 36—37.

BCCMC in turn had an Operation, Management, and Maintenance Agreement with the Baker County Sheriff's Office ("BCSO").[7]  See Operation, Management, and Maintenance Agreement, May 6, 2024, ECF No. 79-2 ("OMMA").  Under the OMMA, BCCMC authorized the BCSO to detain, house and control prisoners at BCDC.  SAC at ¶ 31.  BCCMC paid the BCSO a management fee.  SAC at ¶ 33.  Defendant BCCMC supervised the Sheriff Deputies of the BCSO at BCDC, as required by the OMMA.  Id. at ¶ 4.  Revenue collected by the BCSO belonged to BCCMC.  Id. at ¶ 38.

---

[5] Throughout the SAC, Ms. Doe refers to the Baker County Sherriff's Office as both the BCSO and the BSCO.  See generally SAC.  The Court understands the references the BSCO to mean the BCSO and for both of those terms to refer to Sherriff Rhoden, sued in his official capacity.

[6] Ms. Doe refers to the agreement as being one between the BCSO, i.e., Sherriff Rhoden, and the BCCMC.  However, the actual agreement, which Ms. Doe attached to the SAC, indicates that it is an agreement between Baker County and the BCCMC. IHCA at 1.

[7] The agreement was previously entered into by the Baker Correctional Department Corporation and the BCSO, but that agreement was assigned to the BCCMC when the BCCMC purchased the Baker Correctional Department Corporation.  OMMA at 1.

Ms. Doe arrived at BCDC on February 25, 2019. Id. at ¶ 120. After arriving at BCDC, Ms. Doe developed a sinus infection but was not treated by BCDC staff or any ICE officer. Id. at ¶¶ 177—79. At Ms. Doe's first immigration hearing, upon seeing the severity of her sinus infection, the judge requested medical attention for Ms. Doe, delaying her immigration petition. Id. at ¶ 180.

Further, Ms. Doe was assaulted on multiple occasions by Defendant Robinson, a BCDC employee. Id. at ¶¶ 121—31. Specifically, he digitally penetrated her on three separate occasions, and on one occasion he penetrated her vaginally with his penis. Id. at ¶¶ 122—28. Defendant Robinson sexually assaulted, coerced, and intimidated Ms. Doe using his authority as a BCDC employee. Id. at ¶¶ 123, 127.

Ms. Doe alleges that after reporting the rape and prior assaults, she was placed in solitary confinement until her release on July 30, 2019. Id. at ¶ 148. Assailant Defendants, including Lieutenant Messer and Deputy Prescott, denied Ms. Doe necessities, including food, water, bedding, freedom of movement, and the ability to shower freely. Id. at ¶ 149. Further, Assailant Defendants, including Lieutenant Messer and Deputy Prescott, locked Ms. Doe in the law library, the location of her May 25, 2019, rape, and ignored her pleas for medical assistance, instead mocking her over the intercom. Id. at ¶¶ 150—52. Assailant Defendants, including Lieutenant Messer and Deputy Prescott, threatened Ms. Doe with sexual assault near the showers, falsified her shower records, and instructed kitchen staff to tamper with her food. Id. at ¶¶ 153—55. Further, Assailant Defendants, including Lieutenant Messer and Deputy Prescott, consistently shook a pepper spray can at

Ms. Doe's cell door, limited her access to make phone calls or send emails to her family and attorneys, prevented repairs to her cell toilet, and denied her toilet paper and feminine pads. <u>Id.</u> at ¶¶ 156—59.  Assailant Defendants, including Lieutenant Messer and Deputy Prescott, along with Undersheriff Crews, repeatedly attempted to coerce Ms. Doe into signing papers recanting her accusation of rape against Defendant Robinson. <u>Id.</u> at ¶¶ 161—66.  Lastly, Assailant Defendants, including Lieutenant Messer and Deputy Prescott, attempted to cut off assistance Ms. Doe was receiving from other BCDC employees. <u>Id.</u> at ¶¶ 170—73.  Specifically, two female deputies assisted Ms. Doe in obtaining food, showering, and accessing the commissary. <u>Id.</u> at ¶ 171.  Eventually, one of the deputies assisting Ms. Doe explained that she could no longer assist her in fear of losing her job and later the two deputies were reassigned to different areas of the facility. <u>Id.</u> at ¶¶ 172—73.  After making various reports and inquiries to ICE, Ms. Doe met with the ICE officer assigned to her case.[8] <u>Id.</u> at ¶ 197.  He acknowledged she was wrongfully placed in solitary confinement but stated he was unable to intervene on her behalf due to directions from his boss, Defendant Smith. <u>Id.</u> at ¶ 198.

Ms. Doe filed her complaint in this action on May 19, 2023. <u>See generally</u> Compl., May 19, 2023, ECF No. 1.  Ms. Doe amended her complaint twice, filing the SAC, in dispute here, on May 6, 2024. <u>See generally</u> Am. Compl., Aug. 11, 2023, ECF No. 32 ("Am. Compl."); <u>see also</u> SAC.  Ms. Doe asserts five separate claims against

---

[8] The ICE officer Ms. Doe alleges she was assigned is not a party to this case. <u>See</u> SAC at ¶ 174.

**3:23-cv-00609-CRK-LLL**

Assailant Defendants. First, Ms. Doe alleges Assailant Defendants acted in concert to physically attack and put her in immediate apprehension of bodily harm. SAC at ¶¶ 244—51. Second, Ms. Doe asserts that Assailant Defendants falsely imprisoned her by detaining her in the law library, the same place where she had been raped by Defendant Robinson, and by placing her in solitary confinement after she reported the rape. Id. at ¶¶ 257—61. Third, Ms. Doe argues that Assailant Defendants retaliated against her for reporting her rape by intentionally inflicting emotional distress on her by denying her basic needs, threatening her with sexual assault, instructing kitchen staff to tamper with her food, and a myriad of other actions. Id. at ¶¶ 149, 153, 155, 270—77. Fourth, Ms. Doe alleges Assailant Defendants "obstructed and attempted to obstruct enforcement efforts against Defendant Robinson for conduct which violated the TVPA," and participated and aided in Defendant Robinson's TVPRA violations. Id. at ¶¶ 317—21. Lastly, Ms. Doe alleges Assailant Defendants acted together to conceal Defendant Robinson's conduct by pressuring her to recant her accusations against Defendant Robinson, violating her substantive due process rights under 42 U.S.C. § 1983. Id. at ¶¶ 161—73, 329—35.

Assailant Defendants filed their motion to dismiss for lack of personal jurisdiction and insufficient service of process on Jun. 11, 2024.[9] See generally Assailant Def. MTD. Ms. Doe filed her response opposing Assailant Def. MTD on Jul.

---

[9] On April 15, 2024, Assailant Defendants filed their first motion to dismiss Ms. Doe's Amended Complaint for improper fictitious party pleading and failure to serve. Defs. Assailant Roes I–X MTD Am. Compl., Apr. 15, 2024, ECF No. 72. Ms. Doe amended her Amended Complaint, which mooted that motion. See SAC.

16, 2024.  See generally Resp. Opp'n [Def. Assailant Roes 1-X] Mot. to Dismiss Second Am. Compl., Jul. 16, 2024, ECF No. 97 ("Pl. Resp. [Assailant Def. MTD]").  Assailant Defendants filed their reply in support of their motion to dismiss on Jul. 30, 2024.  See generally Def. Assailant Roes 1-X Reply [Pl. Resp. Def. Assailant Roes 1-X Mot. to Dismiss Second Am. Compl.], Jul. 30, 2024, ECF No. 103 ("Assailant Def. Reply").  Undersheriff Crews, Lieutenant Messer, and Deputy Prescott filed their motion to dismiss the SAC on June 11, 2024.  See generally Def. Crews, et al. MTD.  Ms. Doe filed her response in opposition to Undersheriff Crews, Lieutenant Messer, and Deputy Prescott's motion to dismiss on July 16, 2024.  Resp. Opp'n [Defs. Crews, Messer, and Prescott's] Mot. to Dismiss Second Am. Compl., Jul. 16, 2024, ECF No. 99 ("Pl. Resp. [Def. Crews, et al. MTD]").  Undersheriff Crews, Lieutenant Messer, and Deputy Prescott filed their reply on July 30, 2024.  Def. Crews, Messer, and Prescott's Reply [Pl. Resp. Defs. Crews, Messer, and Prescott's Mot. to Dismiss Second Am. Compl.], Jul. 30, 2024, ECF No. 105 ("Defs. Crews, et al. Reply").

## JURISDICTION

This Court has jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  This Court has supplemental jurisdiction "over all claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367.  When a state claim attaches to a federal claim through supplemental jurisdiction, the

3:23-cv-00609-CRK-LLL

Court is "constitutionally obligated to apply state laws to state claims." <u>Felder v. Casey</u>, 487 U.S. 131, 151 (1988).

## **<u>DISCUSSION</u>**

Assailant Defendants argue they should be dismissed from this action because (1) the court lacks personal jurisdiction over them; and (2) fictitious party pleading is prohibited. Assailant Def. MTD at 4—5. Ms. Doe argues Assailant Defendants have waived any argument that the court lacks personal jurisdiction, and she has sufficiently pled information to easily identify the Assailant Defendants through discovery, such that the fictitious party pleading bar does not apply. Pl. Resp. [Assailant Def. MTD] at 7—8, 11.

## I.    **Lack of Personal Jurisdiction**

Assailant Defendants argue this Court lacks personal jurisdiction over them because the pleadings do not set forth a basis for personal jurisdiction and Ms. Doe has failed to serve the Assailant Defendants. Assailant Def. MTD at 3—5. Assailant Defendants challenge personal jurisdiction for lack of basis under Rule 12(b)(2), arguing that Ms. Doe's SAC included the phrase "upon information and belief," in reference to the Assailant Defendants, and allegations made upon information and belief are not enough to confer personal jurisdiction. Assailant Def. Reply at 4—5. Ms. Doe claims the Assailant Defendants have waived the defense of lack of personal jurisdiction under Rule 12(b)(2), as they did not raise it in their first Rule 12 motion in this case, and she fails to meaningfully respond to Assailant Defendants' challenge

regarding service.[10]   Pl. Resp. [Assailant Def. MTD] at 6—7, 10.   Assailant Defendants argue they did not waive any challenge to personal jurisdiction as they were only first identified in the SAC.   Assailant Def. Reply at 3—4.   Further, Assailant Defendants argue Ms. Doe's claims against the rest of the Assailant Defendants should be dismissed because they have not been sufficiently identified, and to the extent they have been identified, they have not been named in the caption as required by Rule 10(a).  Assailant Def. Reply at 5—6.

## A.     Personal Jurisdiction

A court has personal jurisdiction over a defendant when there is (1) a basis for personal jurisdiction, and (2) service on defendants.   Don't Look Media LLC v. Fly Victor Ltd., 999 F.3d 1284, 1294 (11th Cir. 2021).  Basis and service are both required. Prewitt Enterprises, Inc. v. Org. of Petroleum Exporting Countries, 353 F.3d 916, 924—25 (11th Cir. 2003) (citing Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987)).

### 1.     Waiver

Ms. Doe alleges Assailant Defendants have waived any objection to personal jurisdiction.  Pl. Resp. [Assailant Def. MTD] at 6—7, 10.  Assailant Defendants raised their objections to personal jurisdiction at the earliest possible time and therefore have not waived their objections.

---

[10] As to service, Ms. Doe states that her description of the involvement of the named Assailant Defendants "should address any issues regarding specificity and service of process."  Pl. Resp. [Assailant Def. MTD] at 6—7, 10.

An objection to personal jurisdiction, whether for lack of basis or insufficient service, is waived if it is not raised in the defendant's first response to the complaint. Fed. R. Civ. P. 12(b); Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs., 553 F.3d 1351, 1360 (11th Cir. 2008). Rule 12(g) governs limitations on further motions under Rule 12 and states in relevant part:

> [A] party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

Fed. R. Civ. P. 12(g)(2). Further, Rule 12(h) clarifies when defenses are waived:

> (1) When Some Are Waived. A party waives any defense listed in Rule 12(b)(2)-(5) by:
>     (A) omitting it from a motion in the circumstances described in Rule 12(g)(2); or
>     (B) failing to either:
>         (i) make it by motion under this rule; or
>         (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.

Fed. R. Civ. P. 12(h)(1). Thus, any challenge to personal jurisdiction under Rule 12(b)(2) or service of process under Rule 12(b)(5) is waived if the party fails to include it in its first Rule 12 dismissal motion, assuming that defense was available to the party at the time of its prior motion. Lipofsky v. New York State Workers Comp. Bd., 861 F.2d 1257, 1258 (11th Cir. 1988); see, e.g., BPI Sports, LLC v. ThermoLife Int'l, LLC, No. 19-CV-60505, 2021 WL 966011, at *3 (S.D. Fla. Mar. 5, 2021), report and recommendation adopted, No. 19-60505-CIV, 2021 WL 965746 (S.D. Fla. Mar. 15, 2021) (holding that the defendants waived their right to assert a FRCP 12(b)(2) motion to dismiss for lack of personal jurisdiction when they failed to raise it in their first Rule 12 motion, even after the complaint was amended).

A defense is unavailable for purposes of Rule 12(g)(2) if its legal basis did not exist at the time of the first Rule 12 motion so that it was practically impossible to raise the defense at that time. <u>Adacel, Inc. v. Adsync Techs., Inc.</u>, No. 618CV1176ORL40TBS, 2019 WL 12382479, at *2 (M.D. Fla. Jan. 28, 2019) (internal citations omitted). A previously unavailable defense must be raised as soon as it becomes apparent to the party, which may be after the party has already filed its first Rule 12 motion. <u>See</u> <u>Holzsager v. Valley Hosp.</u>, 646 F.2d 792, 796 (2d Cir. 1981) (citing <u>Curtis Publishing Co. v. Butts</u>, 388 U.S. 130, 143, 145 (1967)); Wright & Miller, 5A Fed. Prac. & Proc. Civ. § 1388 (3d ed.).

Here, Ms. Doe's SAC, for the first time, references three individuals as Assailant Defendants; "BSCO Deputy Kirkland," "BSCO Deputy Curry[,]" and "BSCO Deputy Young Rhoden[.]" SAC at ¶ 12.[11] Although these individuals are not named as Defendants in the caption, her allegations describe Kirkland as someone who was "close friends with Defendant Robinson" and Young Rhoden as a "younger relative" of Sheriff Rhoden. <u>Id.</u> Assailant Defendants object to personal jurisdiction for both lack of basis and lack of service with respect to Kirkland, Curry and Young Rhoden, and they have done so at the earliest time possible. Only in the SAC were Assailant Defendants alerted to the availability of a defense with respect to Kirkland, Curry, and Young Rhoden because it was only with the SAC that these individuals

---

[11] Ms. Doe also includes Lieutenant Messer and Deputy Prescott under the umbrella of Assailant Does, but as they are already named parties in the caption, the Court will address them separately from Kirkland, Curry, and Young Rhoden. To the extent Ms. Doe still considers Lieutenant Messer and Deputy Prescott Assailant Defendants, they should be dismissed.

were referenced in relation to this action.  That unnamed Assailant Defendants

responded to Ms. Doe's amended complaint is of no moment.  <u>See</u> Pl. Resp. [Assailant

Def. MTD] at 6—7.  Logic dictates a defense cannot be "available" to an unnamed and

unidentified defendant within the meaning of FRCP 12(g).  Therefore, neither

objections to personal jurisdiction under Rule 12(b)(2), nor service of process under

Rule 12(b)(5) for any of the Assailant Defendants have been waived.

### 2.    Basis

Personal jurisdiction requires both compliance with due process and a

statutory basis.  <u>Don't Look Media LLC</u>, 999 F.3d at 1292.  A plaintiff must allege

facts for which the Florida long-arm statute authorizes personal jurisdiction and the

exercise of personal jurisdiction over the defendant must not offend "'traditional

notions of fair play and substantial justice.'"  <u>Mut. Serv. Ins. Co. v. Frit Indus., Inc.</u>,

358 F.3d 1312, 1319 (11th Cir. 2004) (quoting <u>Int'l Shoe Co. v. Washington</u>, 326 U.S.

310, 316 (1945)).  Generally, a plaintiff must plead sufficient facts in the complaint

to make out a "prima facie" case of jurisdiction.  <u>Est. of Scutieri v. Chambers</u>, 386 F.

App'x 951, 956 (11th Cir. 2010) (quoting <u>United Techs. Corp. v. Mazer</u>, 556 F.3d 1260,

1274 (11th Cir. 2009)).[12]  Where facts alleged are "peculiarly within the possession

and control of the defendant," a plaintiff may plead upon information and belief.  <u>See</u>

<u>Arista Recs., LLC v. Doe 3</u>, 604 F.3d 110, 120 (2d Cir. 2010).  A party may object to

lack of personal jurisdiction based on Rule 12(b)(2).  Fed. R. Civ. P. 12(b)(2).

---

[12] The law of the state in which the court sits provides a long arm statute dictating
which parties are subject to personal jurisdiction in that state.  Fed. R. Civ. P.
4(k)(1)(A).

3:23-cv-00609-CRK-LLL

There is no dispute that Ms. Doe upon information and belief alleged facts which would satisfy basis for purposes of the Florida long arm statute.  SAC at ¶ 21; Fla. Stat. § 48.193.  However, Assailant Defendants' argument that Plaintiff's allegations fail to allege a basis for personal jurisdiction because they are made "on information and belief" is without merit.  Assailant Def. MTD at 4 ("First, '[a]llegations made 'upon information and belief' are not sufficient to support jurisdictional allegations…'") (quoting Payne v. Ivy, No. 6:18-CV-3-ORL-18KRS, 2018 WL 1155987, at *1 (M.D. Fla. 2018), report and recommendation adopted, No. 6:18-CV-3-ORL-18KRS, 2018 WL 1136609 (M.D. Fla. 2018)).  Ms. Doe alleges upon information and belief that the key members of the Assailant Defendants included Kirkland, Curry, and Young Rhoden.  SAC at ¶ 12.  Because Ms. Doe does not know the full names of the Assailant Defendants and that information would logically be "peculiarly within the possession and control of the defendant," Ms. Doe may plead these allegations upon information and belief.  See Arista Recs., LLC, 604 F.3d at 120 (explaining that the plausibility standard set forth in Iqbal "does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant") (internal citations and quotations omitted).

Assailant Defendants' citation to Payne, a case involving a challenge to subject matter jurisdiction, is inapposite.  Assailant Defendants cite Payne for the proposition that allegations made upon information and belief are "'not sufficient to support jurisdictional allegations…'" Assailant Def. MTD at 4 (quoting Payne, 2018

OPINION AND ORDER - 14

3:23-cv-00609-CRK-LLL

WL 1155987, at *1, <u>report and recommendation adopted,</u> 2018 WL 1136609). However, in <u>Payne</u> the court was examining whether allegations made upon information and belief were enough to correct deficient allegations related to the defendants' citizenship to support allegations of diversity jurisdiction. <u>Payne</u>, 2018 WL 1155987, at *1, <u>report and recommendation adopted,</u> 2018 WL 1136609. The court went on to hold that the allegations in the complaint were insufficient to establish that the court may exercise diversity jurisdiction, not personal jurisdiction. <u>Id.</u>[13]

### 3.    Service

Assailant Defendants argue that this court lacks personal jurisdiction over them because they have not been served. Ms. Doe does not respond to their argument. Assailant Def. MTD at 4; <u>see generally</u> Pl. Resp. [Assailant Def. MTD].

A court lacks jurisdiction over a defendant when that defendant has not been served. <u>Pouyeh v. Pub. Health Tr. of Jackson Health Sys.</u>, 718 F. App'x 786, 789—90 (11th Cir. 2017). Service may be effectuated in accordance with Rule 4:

> (c) Service.
> (1) In General. A summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service.

---

[13] Here, this Court has jurisdiction over this case by way of federal question jurisdiction under 28 U.S.C. § 1331, not diversity jurisdiction under 28 U.S.C. § 1332. Further, Assailant Defendants are challenging this Court's exercise of personal jurisdiction, not subject matter jurisdiction, as the court in <u>Payne</u> discussed. <u>See</u> Assailant Def. MTD at 4; Assailant Def. Reply at 4—5.

OPINION AND ORDER - 15

Fed. R. Civ. P. 4(c)(1).[14]   A party may object to personal jurisdiction based on insufficient service of process pursuant to Rule 12(b)(5).  Fed. R. Civ. P. 12(b)(5).

Plaintiff's failure to serve Kirkland, Curry, or Young Rhoden means this Court lacks personal jurisdiction over them.  It is undisputed that Kirkland, Curry, and Young Rhoden have not been served.  Assailant Def. MTD at 4; Pl. Resp. [Assailant Def. MTD] at 7.  Therefore, claims against Kirkland, Curry, and Young Rhoden are dismissed, without prejudice,[15] for failure to serve.

---

[14] In addition, Rule 4(e) proscribes the process for serving an individual within a judicial district of the United States:

> (e) Serving an Individual Within a Judicial District of the United States. Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served in a judicial district of the United States by:
> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> (2) doing any of the following:
> (A) delivering a copy of the summons and of the complaint to the individual personally;
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

[15] A dismissal for lack of personal jurisdiction or insufficient service of process is without prejudice.  Jackson v. Warden, FCC Coleman-USP, 259 F. App'x 181, 182—83 (11th Cir. 2007); see, e.g., Somerson v. McMahon, 956 F. Supp. 2d 1345, 1350 (N.D. Ga. 2012).

OPINION AND ORDER - 16

3:23-cv-00609-CRK-LLL

## B.    Fictitious Party Pleading

Assailant Defendants argue that although Ms. Doe described three of the Assailant Defendants, she failed to name Kirkland, Curry, or Young Rhoden in this matter.  Assailant Def. MTD at 4.  Ms. Doe responds that her description of the Assailant Defendants is "temporarily appropriate" because it satisfies the exception of fictitiously named defendants in federal court.  Pl. Resp. [Assailant Def. MTD] at 7—11.

Fictitious party pleading is generally not permitted in federal court.  Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010) (citing New v. Sports & Recreation, Inc., 114 F.3d 1092, 1094 n.1 (11th Cir. 1997)).  Fictitious party pleading involves a pleading where a party's name is either not known and therefore not used, or known, but nevertheless not used because of a particular concern with naming the individual.  Dean v. Barber, 951 F.2d 1210, 1215–16 (11th Cir.1992) (internal citations omitted).  As to the first type of fictitious pleading,[16] an exception to the bar exists where plaintiff's description of the defendant is "so specific as to be 'at the very worst, surplusage.'"  Richardson, 598 F.3d at 738 (quoting Dean, 951 F.2d at 1215–16).  Where information concerning a party is specific to identify that party, the

---

[16] "There may be times when ... the plaintiff is unwilling or unable to use a party's real name." Dean, 951 F.2d at 1210, 1215–16.  There is no allegation in this case that Ms. Doe is either unwilling or unable to use any of the Assailant Defendants real names.

**3:23-cv-00609-CRK-LLL**

proper course is to seek limited discovery, obtain the information and amend the pleading.  See Wright & Miller, 5A Fed. Prac. & Proc. Civ. § 1321 (4th ed.).[17]

Rule 10(a) of the Federal Rules of Civil Procedure provides that "every pleading" in federal court "must name all the parties."  See Fed. R. Civ. P. 10(a).  "The rule does not merely further administrative convenience—'[i]t protects the public's legitimate interest in knowing all of the facts involved, including the identities of the parties.'"  In re: Chiquita Brands Int'l, Inc., 965 F.3d 1238, 1247 (11th Cir. 2020) (quoting Plaintiff B v. Francis, 631 F.3d 1310, 1315 (11th Cir. 2011)).

The claims against any unnamed Assailant Defendants are also dismissed without prejudice due to improper fictitious party pleading.  Assailant Defendants argue that Ms. Doe failed to sufficiently identify the unnamed Assailant Defendants and therefore they must be dismissed.  Assailant Def. MTD at 2.  Although Ms. Doe references Kirkland, Curry, and Young Rhoden as "Roes" in her brief, Pl Resp. [Assailant Def. MTD] at 7, she failed to amend the case caption to include them as required by the Federal Rules of Civil Procedure.  See Assailant Def. Reply at 5 (quoting Vielma, 347 F.Supp.3d 1122 (M.D. Fla. 2018), aff'd, 808 Fed. Appx. 872 (11th Cir. 2020)); Fed. R. Civ. P. 10(a).  Further, the case caption lists "Assailant Roes 1-X," meaning that there are purportedly ten Assailant Defendants which Ms. Doe

---

[17] Thus, whether discovery would uncover a defendant's identity is a relevant consideration when determining whether a plaintiff may pursue a claim against an unnamed defendant.  Vielma, 808 F. App'x 872, 880 (11th Cir. 2020) (quoting Dean v. Barber, 951 F.2d 1216 (11th Cir. 1992)).  Additionally, a plaintiff must provide an unambiguous description, which would enable service of process on the unnamed defendant, for her claim to proceed.  Vielma, 808 F. App'x at 880—81.

3:23-cv-00609-CRK-LLL

wishes to include as parties to this case.  See SAC at 1.  Three of the Assailant
Defendants would appear to be Kirkland, Curry, and Young Rhoden, who are now
dismissed.  SAC at ¶ 12.  Lieutenant Messer and Deputy Prescott, appear to have
been included in the Assailant Defendants, but they have been named, added to the
caption, and filed their own motion to dismiss.  Id.; Def. Crews, et al. MTD.  Ms. Doe
has not named, identified, or sought discovery to identify the remaining five Assailant
Defendants.  Because Ms. Doe only names and describes five individuals as Assailant
Defendants in her SAC, she has not named or sufficiently described the five other
Assailant Defendants she wishes to maintain claims against.  Thus, Assailant Roes
6—10 are dismissed without prejudice.

## II.    Defenses of Undersheriff Crews, Lieutenant Messer, and Deputy Prescott

Ms. Doe asserts various claims against Undersheriff Crews, Lieutenant
Messer, and Deputy Prescott.  See generally SAC.  Specifically, Ms. Doe alleges: (1)
assault and battery against Lieutenant Messer and Deputy Prescott, (2) false
imprisonment against Lieutenant Messer and Deputy Prescott, (3) IIED against
Undersheriff Crews, Lieutenant Messer, and Deputy Prescott, (4) violations of the
TVPRA against Undersheriff Crews, Lieutenant Messer, and Deputy Prescott, and
(5) substantive due process violations under 42 U.S.C. § 1983 against Undersheriff
Crews, Lieutenant Messer, and Deputy Prescott.  SAC at ¶ 244—51, 257—61, 270—
77, 317—21, 329—35; Pl. Resp. [Def. Crews, et al. MTD].  Undersheriff Crews,
Lieutenant Messer, and Deputy Prescott respond that the allegations against them
should be dismissed because (1) the SAC is an impermissible shotgun pleading, and

3:23-cv-00609-CRK-LLL

(2) Ms. Doe has failed to state a claim for assault and battery against Lieutenant
Messer, false imprisonment against Lieutenant Messer and Deputy Prescott, IIED
against Undersheriff Crews and Lieutenant Messer, TVPRA violations against
Undersheriff Crews, Lieutenant Messer, and Deputy Prescott, and substantive due
process claims against Undersheriff Crews, Lieutenant Messer, and Deputy Prescott.
Def. Crews, et al. MTD at 4—15.[18]

### A.    Adequacy of Pleadings Under FRCPs 8(a) and 10(b)

Undersheriff Crews, Lieutenant Messer, and Deputy Prescott argue that Ms.
Doe's SAC fails to provide them with "adequate notice as to the claims against them
and the grounds upon which each claim rests," therefore the SAC should be dismissed
as an impermissible shotgun pleading.[19]    Def. Crews, et al. MTD at 5.    Ms. Doe
responds that her complaint "clearly states claims against Defendants Crews,
Messer, and Prescott for their retaliatory actions after she reported being raped by

---

[18] Since both the unnamed and unidentified Assailant Defendants are dismissed, the
Court does not address their inadequate pleading or failure to state a claim argument.
[19] A pleading may be considered a shotgun pleading when the complaint: (1) contains
multiple counts, each adopting the allegations of the preceding account, (2) contains
only conclusory and vague facts not connected to the causes of action, (3) fails to
separate each cause of action or claim for relief, and (4) asserts multiple claims
against various defendants, without making clear which defendants committed which
acts and which defendants each claim is brough against.    Weiland v. Palm Beach
Cnty. Sheriff's Off., 792 F.3d 1313, 1321—23 (11th Cir. 2015) (internal citations
omitted).    Dismissal of a shotgun pleading is nonetheless not appropriate if the
defendants have adequate notice as to the claims against them and the facts that
support each claim.    Charles v. GEO Grp. Inc., No. 22-13891, 2024 WL 1619911, at
*3 (11th Cir. Apr. 15, 2024) (quoting Weiland, 792 F.3d at 1325) (holding that even
though Plaintiff's pleadings bear characteristics of shotgun pleadings, the district
court erred in dismissing the claims because the defendants still had adequate notice
of the claims, and factual allegations to support those claims, against them).

3:23-cv-00609-CRK-LLL

Defendant Robinson[,]" and thus the SAC is not an improper shotgun pleading.  Pl.

Resp. [Def. Crews, et al. MTD] at 2, 7—9.

Federal Rules of Civil Procedure 8(a)(2) and 10(b) require a pleading to present

the claims in a manner that (1) allows the defendant to discern each claim made

against her and respond accordingly, and (2) allows the court to determine whether

the pleader has stated a claim upon which relief can be granted.  Weiland v. Palm

Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1320 (11th Cir. 2015) (internal citations

omitted).

Rule 8(a)(2) requires

(2) a short and plain statement of the claim showing that the pleader is
entitled to relief;

Fed. R. Civ. P. 8(a)(2).

Rule 10(b) requires

(b) Paragraphs; Separate Statements. A party must state its claims or
defenses in numbered paragraphs, each limited as far as practicable to
a single set of circumstances. A later pleading may refer by number to a
paragraph in an earlier pleading. If doing so would promote clarity, each
claim founded on a separate transaction or occurrence--and each defense
other than a denial--must be stated in a separate count or defense.

Fed. R. Civ. P. 10(b).  Generally, courts do not require exactness in pleading, rather

they enquire into whether the pleading provides the defendant "notice of the specific

claims against them and the factual allegations that support those claims."  Charles

v. GEO Grp. Inc., No. 22-13891, 2024 WL 1619911, at *2 (11th Cir. 2024) (citing

Weiland, 792 F.3d at 1325).  Where there are multiple defendants, plaintiffs need not

**3:23-cv-00609-CRK-LLL**

distinguish between those defendants if two defendants operate together as a single

entity.  <u>Charles</u>, 2024 WL 1619911, at *4.

Here, Ms. Doe alleges that Undersheriff Crews, Lieutenant Messer, and

Deputy Prescott worked in concert to harm Ms. Doe.[20]  SAC at ¶ 244—51, 257—61,

270—77, 317—21, 329—35.  Specifically, Ms. Doe alleges that Lieutenant Messer and

Deputy Prescott "physically forced" her and locked her in the law library against her

will, causing her to have heart palpitations and trouble breathing.  <u>Id.</u> at ¶¶ 150—51.

Further, Ms. Doe alleges that she was placed in solitary confinement after reporting

her rape and assault.  <u>Id.</u> at ¶148.  She also alleges that Lieutenant Messer and

Deputy Prescott threatened her with sexual assault in the shower areas and that

Undersheriff Crews "attempted to coerce" her into signing papers recanting her

---

[20] Defendants argue that the allegations against "Assailant Defendants" should not
be understood to be allegations against Lieutenant Messer and Deputy Prescott:

> Many of Plaintiff's allegations refer to conduct by the "Assailant
> Defendants." Plaintiff refers to the "Assailant Defendants" and
> "Assailant Roes 1-X" interchangeably. (Doc. 79, ¶ 10). On the other
> hand, Plaintiff alleges the Assailant Defendants include Messer,
> Prescott, Kirkland, Curry, and "Young Rhoden." (Id. at ¶ 12). Moreover,
> elsewhere in the Second Amended Complaint, Plaintiff separates
> Defendants Messer and Prescott from the "Assailant Defendants" or
> specifically mentions them. <u>See Id.</u> at ¶¶ 151, 153. Indeed, they are
> clearly not an "Assailant Roe"/"Assailant Defendant" since they are
> named as Defendants in the case. Thus, if Plaintiff was alleging
> Lieutenant Messer committed any act or word which plausibly
> amounted to assault or battery, surely, Plaintiff would have specifically
> alleged the conduct which Lieutenant Messer committed.

Def. Crews, et al. MTD at 6, n.1.  However, at the motion to dismiss stage the court
will draw any inferences in the Plaintiff's favor.  <u>See</u> <u>Iqbal</u>, 556 U.S. at 678 (2009).

OPINION AND ORDER - 22

accusation of rape against Defendant Robinson.  Id. at ¶¶ 153, 166.  Ms. Doe also alleges that Undersheriff Crews, Lieutenant Messer, and Deputy Prescott benefitted from "protecting, participating, and aiding" TVPRA violations while working at BCDC.  Id. at ¶ 318.  Lastly, she alleges that Undersheriff Crews, Lieutenant Messer, and Deputy Prescott deprived her of her right to "intimate bodily integrity" and violated her substantive due process rights under the Fourteenth Amendment.  SAC at ¶ 335.  Within these allegations, Ms. Doe asserts conduct by each Defendant tied to each allegation, giving Undersheriff Crews, Lieutenant Messer, and Deputy Prescott "adequate notice of the claims against them and the factual allegations that support those claims."  Weiland, 792 F.3d at 1325.  Thus, Ms. Doe's SAC is not an impermissible shotgun pleading.

## B.    Failure to State a Claim

Ms. Doe asserts claims for (1) assault and battery against Lieutenant Messer and Deputy Prescott, (2) false imprisonment against Lieutenant Messer and Deputy Prescott, (3) IIED against Undersheriff Crews, Lieutenant Messer, and Deputy Prescott, (4) violations of the TVPRA against Undersheriff Crews, Lieutenant Messer, and Deputy Prescott, and (5) substantive due process violations under 42 U.S.C. § 1983 against Undersheriff Crews, Lieutenant Messer, and Deputy Prescott. SAC at ¶¶ 244—51, 257—61, 270—77, 317—21, 329—35.  Undersheriff Crews, Lieutenant Messer, and Deputy Prescott argue that Ms. Doe's SAC fails to state a

3:23-cv-00609-CRK-LLL

claim against (1) Lieutenant Messer for assault and battery (Count IV),[21] (2) Lieutenant Messer and Deputy Prescott for false imprisonment (Count VI), (3) Undersheriff Crews and Lieutenant Messer for IIED (Count VIII),[22] (4) Undersheriff Crews, Lieutenant Messer, and Deputy Prescott for violation of the TVPRA (Count XIII), and (5) Undersheriff Crews, Lieutenant Messer, and Deputy Prescott for violation of 42 U.S.C. § 1983 (Count XV). Def. Crews, et al. MTD at 2—3. Ms. Doe responds that she has properly stated a claim for each count listed above, and Undersheriff Crews, Lieutenant Messer, and Deputy Prescott are not entitled to statutory immunity. See Pl. Resp. [Def. Crews, et al. MTD].

### 1.    Statutory Immunity

Lieutenant Messer and Deputy Prescott argue that they are entitled to statutory immunity under Florida Statutes Section 768.28(9)(a) for Ms. Doe's false imprisonment claim. Def. Crews, et al. MTD at 8. Specifically, they assert that Ms. Doe has failed to allege the requisite state of mind for each Defendant to deprive them of statutory immunity. Def. Crews, et al. MTD at 8. Ms. Doe responds that Lieutenant Messer and Deputy Prescott are not entitled to statutory immunity

---

[21] Ms. Doe pleads assault and battery against both Lieutenant Messer and Deputy Prescott, see SAC at ¶¶ 244—251, however Lieutenant Messer is the only Defendant who has moved to dismiss the assault and battery claim. See Def. Crews, et al. MTD at 5—6. Deputy Prescott has filed a separate answer to Ms. Doe's SAC. See Deputy Prescott Answer.

[22] Ms. Doe pleads IIED against Undersheriff Crews, Lieutenant Messer, and Deputy Prescott, see SAC at ¶¶ 270—77. However, only Undersheriff Crews and Lieutenant Messer move to dismiss the IIED claims. See Def. Crews, et al. MTD at 10. Deputy Prescott has filed a separate answer to Ms. Doe's SAC. See Deputy Prescott Answer.

**3:23-cv-00609-CRK-LLL**

because she properly alleges bad faith actions.[23]  Pl. Resp. [Def. Crews, et al. MTD]

at 12—14.

> Florida Statute § 768.28 provides in relevant part:
>
> An officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a).  For an officer, employee, or agent of the state to be held

liable in a tort action, it must be shown that the officer acted (1) in bad faith, (2) with

a malicious purpose, or (3) with wanton and willful disregard of human rights, safety,

or property.  Id.  Although the Florida Statutes do not define the three exceptions to

statutory immunity for tort violations, courts have defined each exception.  See

Peterson v. Pollack, 290 So. 3d 102, 109 (Fla. 4th Dist. Ct. App. 2020).  Florida courts

have noted that the term "bad faith" is equivalent to the actual malice standard;

malicious purpose means committed with ill will, hatred, spite, or an evil intent, and

wanton and willful disregard is defined as conduct more unacceptable than purely

intentional conduct.  Butler v. Gualtieri, 41 F.4th 1329, 1336 (11th Cir. 2022)

(internal citations and quotations omitted).

---

[23] Although Ms. Doe responds to Lieutenant Messer and Deputy Prescott's claim of statutory immunity as if it were asserted for all claims, the Court will only address whether it applies to Ms. Doe's claim for false imprisonment, as that is the only claim for which Defendants claim immunity.  Def. Crews, et al. MTD at 6—9; Def. Crews, et al. Reply at 4—5.

Here, Ms. Doe has alleged enough to plausibly assert that Lieutenant Messer and Deputy Prescott acted with wanton and willful disregard. Specifically, Ms. Doe alleges that she was placed in solitary confinement in response to her reporting her rape by Defendant Robinson. SAC at ¶ 148. She alleges Lieutenant Messer and Deputy Prescott denied her drinking water, bedding, food and the ability to shower freely. Id. at ¶ 149. An allegation that a deputy placed a detainee in solitary confinement, by itself, likely would not support an inference of willful or wanton conduct on the part of the deputy. But here Ms. Doe's allegations that not only did Lieutenant Messer and Deputy Prescott place her in solitary confinement, but they locked her in the law library, where she had been recently raped, and denied her basic needs, is enough to support the inference that Lieutenant Messer and Deputy Prescott's actions were done in bad faith. Id. at ¶ 150—51. Thus, Lieutenant Messer and Deputy Prescott are not entitled to statutory immunity for Ms. Doe's false imprisonment claim.

### 2.    False Imprisonment

A court may dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6). A plaintiff must provide the grounds of her entitlement to relief with more than "labels and conclusions," and "a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007). The pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. 544, 570 (2007)). The plaintiff "must

3:23-cv-00609-CRK-LLL

plead sufficient facts" for the court to draw the "reasonable inference" that the defendant is "liable for the misconduct alleged." <u>Phoenix Ent. Partners, LLC v. Casey Rd. Food & Beverage, LLC</u>, 728 F. App'x 910, 912 (11th Cir. 2018) (citing <u>Iqbal</u>, 556 U.S. at 678).

In Florida, false imprisonment is the unlawful restraint of a person, against her will, which deprives the individual of her liberty. <u>Archer v. City of Winter Haven</u>, 846 F. App'x 759, 763 (11th Cir. 2021) (quoting <u>Johnson v. Weiner</u>, 19 So. 2d 699, 700 (Fla. 1944)). A plaintiff must plead 1) unlawful detention, 2) against that person's will, 3) without color of authority, 4) which is unreasonable and unwarranted under the circumstances. <u>Archer</u>, 846 F. App'x at 763 (internal quotations and citations omitted).[24]

Here, Ms. Doe has properly stated a claim for false imprisonment against Lieutenant Messer and Deputy Prescott for locking her in the law library. First, Ms. Doe alleges she was locked in the law library "against her will." SAC at ¶ 150. Second, she alleges Lieutenant Messer and Deputy Prescott's actions were "punitive" because they sought to mock her and coerce her into recanting, knowing it would be traumatic for her, as it was the scene of her recent rape. <u>Id.</u> at ¶¶ 150—52. Therefore, Lieutenant Messer and Deputy Prescott's Motion to Dismiss Count VI of the SAC is denied.

---

[24] Even though Ms. Doe was lawfully detained within BCDC, it is still possible for her to allege a claim for false imprisonment within BCDC. <u>See, e.g.</u>, <u>Willey v. Kirkpatrick</u>, 801 F.3d 51, 70—71 (2d Cir. 2015) (holding that an inmate alleged the elements for a claim of false imprisonment within solitary confinement).

### 3. Assault & Battery

Assault and Battery are separate claims, each with its own distinct elements.

Under Florida law, the elements of assault are:

> [A]n intentional threat by an act, coupled with an apparent ability to carry out the threat, that creates a fear of imminent violence; the required intent is to do the act, not the intent to do violence to the victim.

Rothenberg v. Knight Swift Transportation, No. 3:21-CV-1213-HLA-LLL, 2023 WL 3511271, at *2 (M.D. Fla. Feb. 7, 2023) (citing Cambell v. State, 37 So. 3d 948, 950 (Fla. Dist. Ct. App. 2010)).

To properly assert a claim for battery under Florida law, the plaintiff must allege "'(1) the intent to cause a harmful or offensive contact with another person, and (2) an offensive contact that directly or indirectly results.'" Rubio v. Lopez, 445 F. App'x 170, 175 (11th Cir. 2011) (citing Chorak v. Naughton, 409 So.2d 35, 39 (Fla. 2d Dist. Ct. App. 1981)). A battery requires an intent to do the act, not to cause the resulting harm. Geovera Specialty Ins. Co. v. Hutchins, 831 F.Supp.2d 1306, 1312— 13 (M.D. Fla. 2011), aff'd, 504 F. App'x 851 (11th Cir. 2013). Once contact has been established, the defendant becomes liable for any contact which is offensive or insulting. Paul v. Holbrook, 696 So. 2d 1311, 1312 (Fla. Dist. Ct. App. 1997) (citing W. Page Keeton, et al., Prosser and Keeton on Torts § 9 (5th ed.1984)). Contact may be offensive depending upon the circumstances under which it occurs as well as the relationship of the parties involved. Paul, 696 So. 2d at 1312 (citing W. Page Keeton, et al., Prosser and Keeton on Torts § 9 (5th ed.1984)). To be held personally liable for a tort, an officer, employee, or agent of the State of Florida must either act outside

the scope of his employment or act in bad faith, with a malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. Fla. Stat. § 768.28(9)(a); see Mendez v. Alvarez, 390 So. 3d 251, 253 (Fla. Dist. Ct. App. 2024).

Here, Ms. Doe properly states a claim against Lieutenant Messer for assault. In the SAC, Ms. Doe states:

> the Assailant Defendants retaliated by taking Plaintiff against her will to the law library, which housed the location of her May 25, 2019 rape, and locked her in the law library, causing her to have a mental breakdown, heart palpitations, and difficulty breathing.

SAC at ¶ 150. Ms. Doe states sufficient facts, allowing the Court to draw a reasonable inference that her being locked in the law library was intentionally done by the Assailant Defendants, including Lieutenant Messer. See Rothenberg, No. 3:21-CV-1213-HLA-LLL, 2023 WL 3511271, at *2; Iqbal, 556 U.S. at 678. Further, as Lieutenant Messer held a position of power over detainees, and Ms. Doe could reasonably believe he could and would carry out any threats made while he was "mocking her over the intercom[,]" she has pled facts, which if proven true, a jury could conclude she was in fear of imminent violence. See SAC at ¶152; Rothenberg, No. 3:21-CV-1213-HLA-LLL, 2023 WL 3511271, at *2. Thus, Ms. Doe has stated a claim for assault against Lieutenant Messer.

Additionally, Ms. Doe has properly stated a claim in her SAC against Lieutenant Messer for battery. Ms. Doe states that the Assailant Defendants, "at Defendant Messer's direction … physically forced Plaintiff into the law library." SAC at ¶ 151. The assertion that Ms. Doe was physically forced into the law library

OPINION AND ORDER - 29

plausibly states a claim that Lieutenant Messer retaliated against Ms. Doe by forcing her into the location where she was raped. See id.; Rubio, 445 F. App'x at 175. Further, given that the Assailant Defendants and Lieutenant Messer were officers where Ms. Doe was detained and where she was being forced into was the scene of her recent rape, this contact rises to the level of harmful and offensive. See Paul, 696 So. 2d at 1312. For the foregoing reasons, Ms. Doe has adequately stated a claim for battery against Lieutenant Messer. Therefore, Lieutenant Messer's Motion to Dismiss Count IV is denied.

### 4.    Intentional Infliction of Emotional Distress

Undersheriff Crews and Lieutenant Messer argue that Ms. Doe's factual allegations are insufficient to support a claim for IIED. Def. Crews, et al. MTD at 9—10. Ms. Doe responds that her allegations, if taken as true, "unequivocally" establish a claim for IIED against Undersheriff Crews and Lieutenant Messer. Pl. Resp. [Def. Crews, et al. MTD] at 15—16.

Florida recognizes the tort of intentional infliction of emotional distress. Metro. Life Ins. Co. v. McCarson, 467 So. 2d 277, 278 (Fla. 1985). To assert a claim for IIED, a plaintiff must plead: (1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous, which goes beyond all bounds of decency; (3) the conduct caused the emotional distress; and (4) the emotional distress was severe. Dominguez v. Equitable Life Assur. Soc. of U.S., 438 So. 2d 58, 59 (Fla. Dist. Ct. App. 1983), approved sub nom. Crawford & Co. v. Dominguez, 467 So. 2d 281 (Fla. 1985).

Here, Ms. Doe pleads that Undersheriff Crews and Lieutenant Messer engaged in conduct that tortured, harassed, and retaliated against her, causing her severe mental distress. SAC at ¶¶ 147—173. The actions, as alleged by Ms. Doe in the SAC, of Undersheriff Crews and Lieutenant Messer are enough to satisfy the intentional and outrageous standard at this stage of the proceedings. Ms. Doe alleges that Lieutenant Messer intentionally had her locked in the law library, then mocked her over the intercom with other guards, showing their intent to cause her severe emotional distress by taking her to the scene of her rape, then mocking her. Id. at ¶¶ 150—51. Further, she alleges Lieutenant Messer instructed the kitchen staff to tamper with her food, which is another example of conduct that satisfies the outrageous and intentional standard. Id. at ¶ 155. Further, her allegation that Lieutenant Messer denied her toilet paper and feminine pads, causing her to bleed on herself, alleges conduct that is plausibly intentional and outrageous. Id. at ¶ 159; see, e.g., Gallogly v. Rodriguez, 970 So. 2d 470, 473 (Fla. Dist. Ct. App. 2007) (holding that where a relationship of authority exists, a campaign of extortion by police officers, if proven true, meets the outrageous standard for an IIED claim). Ms. Doe alleges Undersheriff Crews knew about and participated in her tormenting. SAC at ¶¶ 160, 166. Specifically, she alleges he visited her cell and pressured her to recant her statement against Defendant Robinson, conduct which was alleged to have been done with Undersheriff Crews' knowledge of the other incidents, and thus can be said to meet the outrageous and intentional standard for pleading an IIED claim. Id. Ms. Doe states a claim for intentional infliction of emotional distress against Undersheriff

Crews and Lieutenant Messer. Thus, Undersheriff Crews and Lieutenant Messer's Motion to Dismiss Count VIII of the SAC is denied.

### 5. Trafficking Victims Protection Reauthorization Act

Undersheriff Crews, Lieutenant Messer, and Deputy Prescott argue that (1) Ms. Doe is not a victim of sex trafficking, as defined under the TVPRA, (2) no facts allege that Undersheriff Crews, Lieutenant Messer, or Deputy Prescott are "perpetrators" under the TVPRA, (3) no facts support the conclusion that any Defendant received any financial or valuable benefit from the alleged sex acts, and (4) Ms. Doe has not alleged that Defendant Robinson and Undersheriff Crews, Lieutenant Messer, and Deputy Prescott took part in a common undertaking. Def. Crews, et al. MTD at 11—14. Ms. Doe concedes that she did not properly state a claim for perpetrator liability under the TVPRA by failing to respond to Undersheriff Crews, Lieutenant Messer, and Deputy Prescott's argument that she did not state a claim for perpetrator liability. See Def. Crews, et al. MTD; Pl. Resp. [Def. Crews, et al. MTD] at 17—20. However, Ms. Doe responds that she properly alleges (1) she was a victim of sex trafficking by Defendant Robinson, (2) Defendants received professional benefits and maintained their employment by facilitating and covering up the alleged venture, (3) Defendants participated in a common undertaking with Defendant Robinson, and (4) the Defendants had actual and constructive knowledge of the trafficking activities. Pl. Resp. [Def. Crews, et al. MTD] at 17—20.

The TVPRA provides a civil remedy for venture liability,[25] under 18 U.S.C. § 1595 where a defendant knowingly benefits from a common undertaking that forces a person to engage in a commercial sex act in violation of 18 U.S.C. § 1591. 18 U.S.C. § 1591(a); 18 U.S.C. § 1595(a); see also Doe #1 v. Red Roof Inns, Inc., 21 F.4th 714, 726 (11th Cir. 2021). Specifically, Section 1595(a) provides:

> (a) An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) . . .

18 U.S.C. § 1595(a). The defendant must have constructive or actual knowledge that the undertaking or enterprise violates TVPRA as to the plaintiff. Red Roof Inns, 21 F.4th at 726; see also Ricchio v. McLean, 853 F.3d at 553. "Knowledge" means "[a]n awareness or understanding of a fact or circumstance" or "a state of mind in which a person has no substantial doubt about the existence of a fact." Knowledge, Black's Law Dictionary (11th ed. 2019). There must be a commercial sex act, i.e., one that exchanges sex for anything of value. Red Roof Inns, 21 F.4th at 724. "Anything of value" captures both tangibles and intangibles. United States v. Nilsen, 967 F.2d 539, 542 (11th Cir. 1992) (discussing frequent use of the term "thing of value"); Weinstein, 335 F.Supp.3d at 515 ("the remedial provision at issue, Section 1595,

---

[25] Venture liability is also called beneficiary liability. See Doe #1 v. Red Roof Inns, Inc., 21 F.4th 714, 726 (11th Cir. 2021). The TVPRA also provides a cause of action for perpetrator liability under 18 U.S.C. § 1591(a), however that form of liability is not relevant here. See 18 U.S.C. § 1591(a).

**3:23-cv-00609-CRK-LLL**

which permits civil actions for damages under Section 1591, requires broad interpretation").

Here, Ms. Doe fails to state a claim for violations of the TVPRA against Undersheriff Crews, Lieutenant Messer, and Deputy Prescott.   First, Ms. Doe concedes that she did not state a claim against Undersheriff Crews, Lieutenant Messer, and Deputy Prescott under a theory of perpetrator liability by failing to address the argument in her response brief.   See Pl. Resp. [Def. Crews, et al. MTD] at 17—20; Jones v. Bank of Am., N.A., 564 F. App'x 432, 434 (11th Cir. 2014) (concluding the failure of a party to respond to an argument in opposition to a claim renders the claim abandoned).   Second, Ms. Doe asserts that Undersheriff Crews, Lieutenant Messer, and Deputy Prescott "gained numerous financial and valuable benefits" from participating in and aiding TVPRA violations, including maintaining their employment with the BCSO.   SAC at ¶ 318.   This conclusory statement does not meet the minimum pleading standard of plausibility as it assumes that Undersheriff Crews, Lieutenant Messer, and Deputy Prescott kept their jobs because they assisted in TVPRA violations, without alleging any facts to support that conclusion.   See Iqbal, 556 U.S. at 678.   Because Ms. Doe has not pled sufficient facts related to alleged benefits Undersheriff Crews, Lieutenant Messer, and Deputy Prescott received for their part in any purported TVPRA violations, Count XIII of the SAC is dismissed without prejudice.[26]

---

[26] Unless the dismissal states otherwise, a dismissal under Rule 12(b)(6) operates an adjudication on the merits.   See Fed. R. Civ. P. 41(b); 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2373 (4th ed. Apr. 2021 update).

3:23-cv-00609-CRK-LLL

### 6.    Substantive Due Process

Undersheriff Crews, Lieutenant Messer, and Deputy Prescott argue that the substantive due process claims against them should be dismissed because (1) Ms. Doe failed to "identify the alleged deprivation she suffered at the hands of Defendants Crews, Messer, Prescott," and (2) it is unclear whether Ms. Doe alleges separate and distinct acts by each Defendant or whether she "improperly" lumps instances of conduct together.  Def. Crews, et al. MTD at 15.  Ms. Doe responds that she properly alleges Undersheriff Crews, Lieutenant Messer, and Deputy Prescott violated her substantive due process rights.  Pl. Resp. [Def. Crews, et al. MTD] at 9—14.

To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must plead that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).  A plaintiff must begin her claim under Section 1983 by identifying a specific constitutional right that has allegedly been violated.  DeMartini v. Town of Gulf Stream, 942 F.3d 1277, 1288 (11th Cir. 2019) (citing Paez v. Mulvey, 915 F.3d 1276, 1285 (11th Cir. 2019)).

The Due Process Clause of the Fourteenth Amendment protects individuals from deliberate decisions of government officials which deprive that person of life, liberty, or property.  Daniels v. Williams, 474 U.S. 327, 331 (1986) (internal citations omitted).  The Fourteenth Amendment provides for both procedural due process as well as substantive due process, and a violation of either may form the basis for a suit

3:23-cv-00609-CRK-LLL

under 42 U.S.C. § 1983.[27]  McKinney v. Pate, 20 F.3d 1550, 1555 (11th Cir. 1994) (citing Zinerman v. Burch, 494 U.S. 113, 125 (1990)).  Substantive due process protects an individual's liberty interest against certain actions of the government no matter the fairness of the procedures used to implement them.  Collins v. City of Harker Heights, Tex., 503 U.S. 115, 125 (1992).  Conduct by a government actor violates substantive due process if it is arbitrary or shocks the conscience.  Waddell v. Hendry Cnty. Sheriff's Off., 329 F.3d 1300, 1305 (11th Cir. 2003) (citing Collins, 503 U.S. at 112.  There is no bright-line rule of what conduct shocks the conscience.  Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 (1998).  Conduct intended to "injure in some way unjustifiable by any government interest" is the type of conduct that can be said to shock the conscience.  Lewis, 523 U.S. at 849 (citing Daniels v. Williams, 474 U.S. 327, 331 (1986)).

---

[27] Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.

OPINION AND ORDER - 36

3:23-cv-00609-CRK-LLL

Here, Ms. Doe alleges Undersheriff Crews, Lieutenant Messer, and Deputy Prescott violated her substantive due process rights.  Specifically, Ms. Doe alleges Lieutenant Messer and Deputy Prescott locked her in the law library, the site of her rape, and mocked her over the intercom causing her to have a breakdown and heart palpitations.  SAC at ¶¶ 150—52.  Further, Ms. Doe alleges that Lieutenant Messer and Deputy Prescott denied her "basic needs" such as "drinking water, food, bedding, freedom of movement, and the ability to shower freely."  Id. at ¶ 149.  These allegations plausibly shock the conscience, as locking Ms. Doe in the location where she was raped and mocking her, as well as denying her basic needs can be interpreted to be intended to injure Ms. Doe in some way, not justifiable by any governmental interest.  See Lewis, 523 U.S. at 849.  Finally, Undersheriff Crews' alleged knowledge of and participation in the continued pressuring of Ms. Doe to recant her accusations against Defendant Robinson also shocks the conscience and violates her substantive due process rights.  SAC at ¶¶ 160—66.  Specifically, Ms. Doe alleges Undersheriff Crews acquiesced in the retaliatory conduct against Ms. Doe, as well as actively coerced her into recanting by visiting her cell and trying to get her to sign a recanting statement.  Id. at ¶ 166.  These allegations shock the conscience because it is plausible that Undersheriff Crews utilized his power in an oppressive manner when attempting to coerce Ms. Doe to recant her accusations against Defendant Robinson.  See Lewis, 523 U.S. at 846 (internal citations omitted).  Accepting these allegations as true and drawing all inferences in Ms. Doe's favor, she has alleged facts which support conduct that shocks the conscience, deprives Ms. Doe of her liberty rights, and violates her

3:23-cv-00609-CRK-LLL

substantive due process rights. SAC at ¶¶ 160, 166; Iqbal, 556 U.S. at 678 (A pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'"). Thus, Ms. Doe has stated a claim for violations of her constitutional rights under 42 U.S.C. § 1983 against Undersheriff Crews, Lieutenant Messer, and Deputy Prescott. Therefore, Undersheriff Crews, Lieutenant Messer, and Deputy Prescott's Motion to Dismiss Count XV of the SAC is denied.

## CONCLUSION

The claims against Defendants BCSO Deputies Kirkland, Curry, and Young Rhoden and Assailant Roes 6-10 are dismissed without prejudice because Ms. Doe failed to serve Kirkland, Curry, and Young Rhoden and sufficiently describe or name Assailant Roes 6-10.

Further, because Ms. Doe alleges plausible claims for (1) assault and battery against Lieutenant Messer, (2) False imprisonment against Lieutenant Messer and Deputy Prescott, (3) IIED against Undersheriff Crews and Lieutenant Messer, and (4) substantive due process violations against Undersheriff Crews, Lieutenant Messer, and Deputy Prescott, their motion to dismiss Counts IV, VI, VIII, and XV of the SAC are denied. Additionally, because Ms. Doe has failed to state a claim for violations of the TVPRA against Undersheriff Crews, Lieutenant Messer, and Deputy Prescott, Count XIII of the SAC is dismissed without prejudice.

Therefore, it is,

**ORDERED** that Defendants' Motion is granted in part and denied in part, and it is further

OPINION AND ORDER - 38

3:23-cv-00609-CRK-LLL

**ORDERED** that all claims against "BCSO Deputy Curry," "BCSO Deputy Kirkland," and "BCSO Deputy Young Rhoden" are dismissed without prejudice; and it is further

**ORDERED** that all claims against Assailant Roes 6-10 are dismissed without prejudice; and it is further

**ORDERED** that Count XIII for violations of the TVPRA against Undersheriff Crews, Lieutenant Messer, and Deputy Prescott is dismissed without prejudice; and it is further

**ORDERED** that Undersheriff Crews and Lieutenant Messer shall file an answer to the SAC within 14 days of the issuance of this order; and it is further

**ORDERED** that Deputy Prescott is to file an amended answer to the SAC within 14 days of the issuance of this order; and it is further

**ORDERED** that entry of final judgment in favor of Assailant Defendants is deferred until full resolution of this case.


/s/ Claire R. Kelly
Claire R. Kelly, Judge*

Dated:        March 17, 2025
              New York, New York

---

* Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.

OPINION AND ORDER - 39